# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF INDIANA
### INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| NERDS ON CALL, INC., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | CASE NO. 1:07-cv-0535-DFH-TAB |
| | ) | |
| INTERNET BILLING SERVICES, INC., | ) | |
| and RYAN ELDRIDGE, Individually, | ) | |
| | ) | |
| Defendants. | ) | |

## RESPONSE TO DEFENDANTS' MOTION TO DISMISS

Comes now NERDS ON CALL, INC., Plaintiff (hereinafter "NoC"), by counsel, Theodore J. Minch, and, for and in support of its response to INTERNET BILLING SERVICES, INC.'S (hereinafter "IBS") and RYAN ELDRIDGE'S, Individually, (hereinafter "RE") (IBS and RE may be hereinafter collectively referred to as "Defendants") Motion to Dismiss (hereinafter the "Motion"), hereby respectfully says and avers as follows:

## I.     PROCEDURAL HISTORY.

On April 27, 2007, NoC filed its Complaint for Damages (hereinafter the "Complaint"). In its Complaint, NoC asserted nine (9) causes of action, including six (6) causes of action under which NoC requests relief under Indiana law (i.e. Counts II (Indiana statutory unfair competition), IV (Indiana common law unfair competition), VI (tortious interference with contract), VII (conversion), VIII (false advertising), and IX (fraud)), all of which arise out of Defendants' knowing and intentional misuse of the trademark "NERDS ON CALL" (hereinafter the "Mark").  Complaint 48-55, ¶¶ 70-85.

The Complaint was served on IBS, personally and by counsel, on or about August 16, 2007 and on RE on or about August 21, 2007.

On October 15, 2007, Defendants filed their Motion to Dismiss under the Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(5). Contrary to Defendants' later pleadings (specifically, Defendants' Response to Plaintiff's Request for Extension of Time in which to Respond to Defendants' Motion to Dismiss filed in this Case by Defendants on December 28, 2007), by the plain meaning of the Motion, both by title thereof and in the prayer for relief contained therein, Defendants have requested that the Complaint be dismissed, not transferred to the Central District of California. Dkt. 34, Pgs. 1, 6. As noted above, the requested relief as stated in the Motion and in the prayer for relief requests that "… This action must therefore be dismissed as provided by Federal Rules of Civil Procedure 12(b)(2), 12(b)(3), and 12(b)(5)." Dkt. 16, Pgs. 2, 12. In short, Defendants' prayer for relief essentially asks this Court to unilaterally (a) ignore controlling Seventh Circuit precedent with regard to questions of personal jurisdiction, (b) review the merits of the case by way of the Motion with regard to Defendants' contention that the Complaint, alone, is an attempt to thwart Defendants' trademark application currently pending with the United States Patent and Trademark Office, (c) ignore Defendants' knowing and intentional tortuous activity within this forum (the State of Indiana, Southern District) and (d) ignore the irreparable and significant harm caused in this District to a lifelong domiciliary of this District. Contrary to Defendants' contentions as contained in the Motion, the prevailing Seventh Circuit precedent coupled with Defendants' contacts with the Southern District of Indiana and Defendants' knowing and intentional infliction of substantial and irreparable harm to NoC, subject Defendants to the personal jurisdiction of the Southern District of Indiana.

Under Seventh Circuit precedent and contrary to Defendants' arguments, personal jurisdiction over an out-of-state Defendant is appropriate when said defendant's tortious conduct outside of the state causes injury to a plaintiff within the forum state. The sole fact that Defendants' knowing and intentional tortious actions have substantially and irreparably harmed NoC, a life-long Indiana corporation, and its Indiana business partner(s) within the State of Indiana, Southern District, is alone sufficient to subject Defendants to the exercise of jurisdiction in this venue under prevailing Seventh Circuit precedent.

The foregoing notwithstanding, however, in addition to the use of the Mark by Defendants, which use has proximately resulted in irreparable and significant harm to NoC in Indiana, Southern District, which factor may alone support the retention of jurisdiction in this venue, Defendants have knowingly availed themselves of this jurisdiction as a result of the services offered by Defendants via it's Internet site www.callnerds.com (hereinafter the "Site"), in Indiana. While counsel for Defendants maintains that Defendants' use of the Mark is confined to a region of Northern California including the metropolitan areas of Chico, Fresno, Redding, Sacramento, Stockton, Vacaville, and Yuba City, in support of Defendants' Federal trademark application no. 77/231,974 currently pending in the United States Patent and Trademark Office, trademark counsel for Defendants executed a Declaration, under penalties for perjury, stating that Defendants' use of the Mark was in "interstate commerce;" interstate commerce is defined under United States law as "commerce regulated by the United States (i.e. – commerce between states and / or commerce between the United States and a foreign country). Exhibit A at ¶ 4, Declaration of Theodore J. Minch; Exhibit A-1, copy of Defendants' Federal Trademark Application No. 77/231,974; 37 C.F.R. §2.33; 15 U.S.C. § 1051(a).

Assuming local counsel's statements with regard to Defendants' business being confined to the foregoing California markets was, simply, incorrect and not an attempt by counsel to posture in support of Defendants' argument against jurisdiction in Indiana, Southern District, then the declaration, under penalties of perjury, as contained in the Application must be taken as accurate. That being so, an examination of Defendants' business operations as existing on the Site demonstrate that Defendants, contrary to Defendants' position vis-à-vis jurisdiction, have availed themselves of Indiana, Southern District. Furthermore, wholly contrary to Defendants' statements with regard to the inability of consumers outside the State of California to access Defendants' services, a potential consumer from anywhere in the United States, including Indiana, Southern District, can, in fact, purchase and / or utilize Defendants' services simply by seeking on-line help via the "self help" or "commonly asked questions" section of the Site and / or by requesting service via the "request service" or "contact us" sections of the Site. Dkt. 16, Pg. 2, fn. 3; Exhibit B at ¶ 8, Declaration of Kevin Bouchonnet; Exhibit B-1, copy of the Site.

## II.   FACTUAL HISTORY / HARM TO NOC / DEFENDANTS' CONTACT WITH INDIANA, SOUTHERN DISTRICT.

NoC is a corporation duly existing and incorporated under the laws of the State of Indiana with its principal office at 9430 Los Robles Road, Fishers, Indiana 46038, United States of America. Complaint for Damages (hereinafter the "Complaint") at ¶ 1. NoC was incorporated in the State of Indiana on September 12, 2005 and, via a predecessor entity, also an Indiana, Southern District concern, has used the Mark since at least as January 1, 1995. Exhibit B at ¶¶ 3, 5, Declaration of Kevin Bouchonnet.

NoC has, at all times since its incorporation, maintained its primary offices in Indiana, Southern District. NoC's primary outside legal representative for trademark prosecution, enforcement, and / or licensing is Sovich Minch, LLP (hereinafter "SM"), which entity maintains

its principal place of business in Indiana, Southern District. Any and all business conducted by and / or on behalf of NoC is done so from the direction of NoC's corporate headquarters as located in Indiana, Southern District. Exhibit B at ¶¶ 3, 7, Declaration of Kevin Bouchonnet.

At the time the Complaint was filed herein, IBS was the registered owner of United States Trademark Application No. 78/521,149 for the Mark in International Class 037 for the installation, repair, and maintenance of computers for homes and businesses. Exhibit A-2, copy of Trademark Application No. 78/521,149. At least as of July 30, 2007, IBS was located at 215 Lake Boulevard, #494 Redding, California 96003. *Id.* On July 17, 2007, prior to the date that the Complaint was served on Defendants by counsel for NoC, Defendants filed a second application, Application No. 77/231,974 ("Second Application"); however the Second Application was filed under the corporate name Nerds on Call, Inc., alleged in the Second Application to be located at 1733 Oregon Street, Suite B, Redding California 96003. [1] Exhibit A-1, copy of Defendants' Federal Trademark Application No. 77/231,974.

The Site as owned and maintained by Defendants is not simply a "passive" Internet portal and is easily accessible by (potential) consumers from Indiana, Southern District; (potential) consumers must "click" through Defendants' site in order to engage Defendants' services, to obtain assistance for computer related matters, to receive "self-help," answers to "frequently asked" computer repair related questions, and / or to be contacted by a service technician. Exhibit B at ¶¶ 3, 7, Declaration of Kevin Bouchonnet; Exhibit B-1, Copy of the Site. Contrary to Defendants' statements as contained in the Motion, while there is a mechanism by which

---

[1] While counsel for Plaintiff has conducted no discovery, formal or otherwise, in this Case, counsel for Plaintiff received a letter from trademark counsel for Defendants dated December 31, 2007 in which correspondence Defendants' trademark counsel stated that Nerds on Call, Inc. (CA) formerly engaged in business as IBS, an entity which, according to counsel, no longer exists. Nerds on Call, Inc. (CA) was since incorporated in California. It is expected that a Stipulation of Substitution of Parties will be filed in this matter naming Nerds on Call, Inc. (CA) as defendant.

"write – in" consumers may choose the area code from which they are inquiring and the area codes contained therein seem to be restricted to California, (potential) consumers from outside those designated area codes are not prohibited from seeking (and obtaining) Defendants' services. Exhibit B at ¶ 8, Declaration of Kevin Bouchonnet; Exhibit B-1, Copy of the Site.

NoC has continuously utilized and / or protected the Mark since at least as early as January 1, 1995 and, NoC has expended countless resources in advertising and / or protecting the Mark since at least as early as that date. Complaint 3, ¶¶ 12, 13; Exhibit B at ¶ 5, Declaration of Kevin Bouchonnet. NOC has filed two (2) Federal trademark applications, application nos. 77/241,528 and 77/241,523, for the Mark in the United States Patent and Trademark Office in association with, among other services, providing services in the area of technology solutions and management to individuals and corporations in International Classes 037 and 042, which applications are currently pending. *Id*. at ¶ 6; Complaint 3, ¶ 14;

In March, 2004, over eight (8) years following NoC's first use of the Mark, and, after being exposed to the Mark as a result of NoC's first use of the Mark in Interstate commerce, Defendants began using the Mark without approval of or authorization by NoC. Complaint 5, ¶ 23, 24; Exhibit B at ¶ 9, Declaration of Kevin Bouchonnet; Exhibit A at ¶ 5. Declaration of Theodore J. Minch; Exhibit A-1, copy of Defendants' Federal Trademark Application No. 77/231,974. On or about October 9, 2004, counsel for NoC sent a cease and desist letter to Defendants at the direction and request of NoC; NoC had become aware of Defendants' unauthorized use of the Mark through information NoC had received by NoC consumers located in Indiana, Southern District. Complaint 5, ¶ 26; Exhibit B at ¶ 9, Declaration of Kevin Bouchonnet. Approximately forty-three days after receiving NoC's cease and desist letter, and, upon information and belief, despite having no use of the Mark in interstate commerce,

Defendants filed the Application. Complaint 5, ¶ 26; Exhibit B at ¶ 9, Declaration of Kevin Bouchonnet; Exhibit A-1, copy of Defendants' Federal Trademark Application No. 77/231,974. Defendants' unauthorized and infringing use of the Mark in Indiana, Southern District by virtue of its Site has irreparably and significantly harmed NoC's business in Indiana, Southern District. Exhibit B at ¶ 10, Declaration of Kevin Bouchonnet.

## III. PERSONAL JURISDICTION IN INDIANA, SOUTHERN DISTRICT, IS PROPER.

### A. NoC need only make a *prima facie* showing Defendants are subject to personal jurisdiction in Indiana, Southern District.

Under the prevailing law of this jurisdiction, because the question of this venue's personal jurisdiction over Defendants is raised by way of Defendants' Motion to Dismiss and without benefit of a hearing, the Court must accept the uncontroverted allegations contained in the Complaint as true and resolve any factual conflicts as presented by the parties' supporting declarations and other evidence in NoC's favor. *Purdue Research Found. v. Sanofi-Synthelabo, S.A.,* 338 F.3d 773, 782 (7th Cir. 2003); *Hyatt Int'l Corp. v. Coca,* 302 F.3d 707, 713 (7th Cir. 2002). To that end, and as in this Case by virtue of the four corners of the Motion, because the issue of personal jurisdiction will be determined in the absence of an evidentiary hearing, NoC must only make a *prima facie* showing that Defendants are subject to personal jurisdiction in Indiana, Southern District. *Purdue Research Found.*, 338 F.3d at 782.

Determination of proper venue as related to matters of personal jurisdiction consists of a two (2) step analysis: (1) whether a particular defendant falls within Indiana's "long-arm" statute, and (2) whether the exercise of jurisdiction over said defendant comports with the requirements of Federal due process. Indiana's long-arm statute is one (1) of the most broadly interpreted jurisdictional statutes in the United States. Having "been expanded to the full extent of the law;" Indiana's "long arm statute" now allows "a court of this state [to] …exercise

jurisdiction on any basis not inconsistent with the Constitutions of this State or the United States." *Id*. at 779; *Richards and O'Neil, LLP v. Conk,* 774 N.E.2d 540, 550 n.6 (Ind. Ct. App. 2002) (Najam, J., concurring); and Ind. Trial R. 4.4(A). As a result of the foregoing, under current Seventh Circuit precedent with regard to questions of proper venue, the only remaining inquiry in determining whether Indiana, Southern District is the proper venue in this Case is whether the exercise of jurisdiction over Defendants complies with Federal due process principles. *Litmer v. PDQUSA.com,* 326 F. Supp. 2d 952, 955 (N.D.Ind. 2004).

      B.    The Exercise of Personal Jurisdiction over Defendants in Indiana, Southern District Complies with Principles of Federal Due Process.

Federal principles of due process under the United States Constitution require that a defendant have certain "minimum contacts" with the forum state such that the exercise of personal jurisdiction over the defendant does not offend "traditional notions of fair play and substantial justice." *International Shoe Co. v. State of Washington, Office of Unemployment Compensation and Placement,* 326 U.S. 310, 316 (1945). A defendant is subject to a state's specific jurisdiction if the suit arises out of, or is related to, the defendant's minimum contacts with the forum state. *Hyatt Int'l,* 302 F.3d at 716; *RAR, Inc., v. Turner Diesel, Ltd.,* 107 F.3d 1272, 1277 (7th Cir. 1997). Based upon the foregoing, a court confronted with questions of Federal due process must determine whether the defendant "purposely established 'minimum contacts' in the forum State" such that they "should reasonably anticipate being haled into court" in that state. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 474 *(1985); World-Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297 (1980).

Simply stated, the question at bar is whether Defendants' contacts with Indiana, Southern District, are directly related to the harm that NoC has suffered in Indiana, Southern District. In this Case and as stated herein above, Defendants' attempt to characterize their Internet site as

having certain protective mechanisms by which no consumer from Indiana, Southern District could retain Defendants' services is false. To the contrary, Defendants' Internet site is fully interactive and consumers from Indiana may easily access and / or retain Defendants' services despite the so-called "control" mechanisms that Defendants have claimed to put in place. Exhibit B at ¶ 8, Declaration of Kevin Bouchonnet; Exhibit B-1, Copy of the Site. Certainly, any (potential) consumer can access the Site, receive phone assistance, assistance on-line, or, Defendants' could have an independent contractor from Indiana, Southern District dispatched to address whatever issues said (potential) consumer from Indiana, Southern District may have with their personal or business computer. *Id.* As evidenced by the manner in which NoC originally became aware of Defendants' unauthorized and infringing use of the Mark, consumers in Indiana, Southern District have accessed the Site and, presumably, have become confused as to the source or origin of NoC's services. *Id.* at ¶ 9.

The foregoing is just the sort of activity that unique Indiana statutes such as Indiana's law on conversion and the companion Indiana crime victim's act are designed to arrest. Furthermore, Indiana, by virtue of its so-called "Right of Publicity Statute," which is the broadest most far reaching Act of its kind, together with the long-arm provision associated with said legislation, demonstrates that Indiana maintains the strongest of positions with regard to the protection of the intellectual property rights of its residents. Ind. Code § 32-36-1-1, *et. seq.*; I.C. § 32-36-1-9 Specifically, the Indiana "Right of Publicity" statute provides that jurisdiction in Indiana shall be proper where an infringer "knowingly causes advertising or promotional material created or used in violation of section 8 of this chapter to be published, distributed, exhibited, or disseminated in Indiana ..." In such an instance, an infringer "… submits to jurisdiction in Indiana." *Id.*

NoC is an Indiana, Southern District corporation which has been harmed in Indiana by the actions of Defendants. Specifically, the Site is easily and readily accessible by Indiana consumers, the site is interactive (not passive) and is not specifically designed to keep (potential)

consumers from Indiana, Southern District from accessing, utilizing, and / or retaining Defendants' services. Exhibit B at ¶ 8, Declaration of Kevin Bouchonnet; Exhibit B-1. Likewise, nothing contained on the Site specifically states that Indiana residents are excluded from utilizing and / or retaining Defendants' services; nothing on Defendants' Site states that they are advertising to all areas except Indiana; and nothing on Defendants' Site specifically disclaims use of the Mark "within a fifty (50) mile radius of Indianapolis, Indiana". *Id.* As such, Defendants have availed and continue to avail themselves of the business opportunities available to them in Indiana, Southern District and accordingly may be held to personal jurisdiction in Indiana under Indiana law and the principles of Federal due process.

Courts have found personal jurisdiction based on a defendant's interactive website alone. *Litmer,* 326 F.Supp.2d at 954.[2] Additional precedent supports the foregoing holding. *See Maritz, Inc. v. Cybergold, Inc.,* 947 F.Supp. 1328, 1333 (E.D.Mo. 1996)(Where Cybergold's Internet site was designed to develop a client database and where, as in the Case at bar, Cybergold "indiscriminately responded to every user" who accessed its site, the court determined that because Cybergold's Internet site was "interactive" in nature, Cybergold's activities amounted to "active solicitation" and "promotional activities" which resulted in the court's exercise of personal jurisdiction over Cybergold.)(*cited Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124-25 (W.D. Pa. 1997)).

---

[2] In *Litmer,* the defendant offered a product on its website that allegedly infringed on Litemer's patent. Internet users from all forums, including Illinois, could request, but not buy, the product at issue. *Id.* Strikingly similar to the case at bar, once a customer requested the product on the defendant's website - and entered some personal information - the defendant then called (or e-mailed) the customer to obtain credit card information and complete the sale. *Id.* The *Litmer* court stated that, by offering the offending products on its website, the defendant "solicit[ed] users from other jurisdictions to engage in a business relationship, creating the contacts necessary for personal jurisdiction." *Id.* at 958.

C.  Personal Jurisdiction over Defendants Pursuant to the "Effects Test" May be Exercised in Indiana, Southern District.

Pursuant to the "effects test," personal jurisdiction over a nonresident defendant, such as in the Case at bar, is proper when the defendant's tortious actions cause harm to the plaintiff in the forum state. *Calder v. Jones, 465* U.S. 783, 788-790 (1984). In *Calder,* the United States Supreme Court held that because a Florida writer made allegedly defamatory statements against a California resident, the California courts had jurisdiction over the defendant because the defendant's "intentional conduct in Florida [was] calculated to cause injury to respondent in California." *Id.* at 791.

The Seventh Circuit even more broadly interprets the "effects test." *Janmark, Inc. v. Reidy,* 132 F.3d 1200 (7th Cir. 1997).[3] Likewise, in *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship,* 34 F.3d 410 (7th Cir. 1994) the Seventh Circuit, as in *Janmark,* broadly applied the "effects test" to a trademark case wherein the Indianapolis Colts sued a new football franchise in Baltimore that was using the Colts' name. *Id.* at 411. Despite the defendants deminimus (if any) contacts with Indiana in that case, the court determined that Indiana was the proper venue because if the trademarks were indeed impaired, as the suit alleged, the injury would necessarily occur in Indiana. Parties such as the Defendants herein that knowingly and intentionally commit a tort in Indiana should not only be amenable to suit in Indiana, but they should expect that a suit in Indiana is likely. *Id.* at 411-412; Complaint 5, ¶ 26.

Several other Seventh Circuit opinions concur with the foregoing broad application of the

---

[3]In *Janmark*, an Illinois corporation sued the defendant, a California resident, over allegations related to the copyright design of a certain shopping cart; both *Janmark* and the Defendant sold their shopping carts around the world. *Id.* at 1202. Though defendant had no other contacts with Illinois, the Seventh Circuit held that Illinois could exercise jurisdiction over the defendants solely because "the injury and thus the tort occurred in Illinois." *Id.* at 1202. The Seventh Circuit found that without an injury there is no tort, and that a wrong does not become a tort until an injury has occurred, so the location of the injury is essential to an understanding of where the tort occurred. *Id.* Because the injury in the *Janmark* case took place in Illinois, the tort occurred in Illinois and was thus actionable in Illinois according to the Seventh Circuit. *Id.*

effects test. *See Riddell, Inc. v. Monica,* 2003 WL 21799935, *3 (ND.Ill., July 25, 2003)(The court determined that the defendants were aware that plaintiff's principal place of business was in Illinois and, consequently that the injury resulting from defendant's actions would be felt most severely in Illinois. Under such circumstances, the court determined that it was foreseeable that defendants would be required to answer for such actions in Illinois and therefore personal jurisdiction over the defendants attached.); *International Molding Manf. Co. v. St. Louis Conveyor Co.,* 2002 WL 1838130, *4 (N.D.Ill. Aug. 12, 2002)(Personal jurisdiction may be proper where the injury occurs in the district in question even if all other conduct relevant to the case took place outside the district.); *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.,* 88 F. Supp. 2d 914, 920 (C.D.Ill. 2000)(Court relied upon the *Janmark* holding (cited herein) in finding that a New York corporation could be held to personal jurisdiction in Illinois in an action for trademark infringement and unfair competition where the Plaintiff is an Illinois corporation and the injury to the Illinois plaintiff takes place in Illinois.).

Despite the fact that these cases have direct application in the Case at bar and their controlling precedent in this area, remarkably, Defendants fail to cite either the *Janmark* or the *Indianapolis Colts* in their Motion to Dismiss. It is nevertheless clear from Defendants' Motion to Dismiss that Defendants attempt to characterize the "effects test" as requiring NoC to do more than simply demonstrate that an injury has occurred in Indiana to an Indiana domicile. This position, as advanced by Defendants herein, was expressly rejected by the Seventh Circuit. *Bunn-O-Matic Corp.* v. *Bunn Coffee Serv.,* No. 97-3259, 1998 U.S. Dist. LEXIS at * 5-6 (C.D.Ill. May 20, 1998)(*emphasis added*).

Defendants also attempt to stake their claim for dismissal on the notion that because Defendants have no assets, offices, or licenses to do business in Indiana and because RE has never "traveled to Indiana," the application of personal jurisdiction in Indiana, Southern District, is somehow precluded. While the *Janmark* case admittedly does not expressly state that a

defendant who never enters a jurisdiction may be held to personal jurisdiction in that venue, the *Janmark* holding, however, is unequivocally based upon the proposition that where the damage occurred as indicative of where the actions complained of consequently occurred will ultimately control where jurisdiction is held. *Janmark, Inc. v. Reidy,* 132 F.3d 1200. However, again, applying Illinois' long arm statute, the *Janmark* court found that a basis for personal jurisdiction existed in Illinois where, as in this Case, a California defendant had never actually entered the jurisdiction nor directed its business activities toward the jurisdiction. *Id.* The defendant in *Janmark* had not "entered" or caused any entry into Illinois; yet because "the injury (and therefore the tort)" occurred in Illinois, the defendant was held to jurisdiction in Illinois. *Id.* *Janmark* leaves little doubt that according to the Seventh Circuit's interpretation of the "effects test" as related to principles of Federal due process, a defendant does not have to actually enter a jurisdiction, maintain an office in a jurisdiction, or maintain assets in a jurisdiction to be held to jurisdiction in the Seventh Circuit. Furthermore, the *Indianapolis Colts* case that Defendants fail to cite likewise did not require that there must be some sort of entry into Indiana to subject a defendant to jurisdiction in the state in which the injury and therefore the tort occurred.

Unequivocally, NoC is headquartered, organized, and exists in Indiana, Southern District. Defendants knowing and intentional unauthorized and illegal commercial use of the Mark in Indiana, Southern District, has injured NoC in Indiana, Southern District. Exhibit B at ¶ 3, Declaration of Kevin Bouchonnet. In summary, Defendants' unauthorized and illegal commercial use of the Mark has caused irreparable and significant injury to the reputation and goodwill that NoC has established in and to the Mark. *Id.* at ¶ 10. *See Bunn-O-Matic Corp. v. Bunn Coffee Serv.,* 1998 WL 207860 (CD. Ill. Apr. 1, 1998)(The Court stated that that if entry into the forum state in question is actually required to hold personal jurisdiction in said forum then the "Bunn Defendant's" actions in establishing a website accessible to residents of Plaintiff's home state would meet the low threshold as to jurisdiction in Illinois, Central District.)

D.      Principles of Fair Play and Substantial Justice Permit the Exercise of Jurisdiction
        in Indiana, Southern District.

After determining that minimum contacts exist, the Court must then determine whether

the exercise of jurisdiction would offend traditional notions of fair play and substantial justice to

exercise personal jurisdiction over Defendants. *Burger King,* 471 U.S. at 477. In making this

determination, the Court:

> [M]ay evaluate the burden on the defendant, the forum State's interest in
> adjudicating the dispute, the plaintiff's interest in obtaining convenient and
> effective relief, the interstate judicial system's interest in obtaining the most
> efficient resolution of [the underlying dispute], and the shared interest of the
> several States in furthering fundamental substantive policies.

*Purdue Research Found.,* 338 F.3d at 781 (quoting *Burger King,* 471 U.S. at 477).

Defendants have not and cannot make any showing that its burden in litigating this case

in Indiana is so great as to amount to a deprivation of due process, nor could it. "[P]rogress in

communications and transportation has made the defense of a lawsuit in a foreign tribunal less

burdensome." *World-Wide Volkswagen,* 444 U.S. at 294.

Furthermore, Indiana has a great interest in protecting the intellectual property rights of

its residents as evidenced by the passage of the broad based so-called Indiana Right of Publicity

statute which itself contains a long-arm clause where acts such as engaging in conduct in Indiana

which conduct is contrary to Indiana law and / or knowingly causing advertising or promotional

material to be distributed, exhibited, or disseminated within Indiana will result in the retention of

personal jurisdiction in Indiana. I.C. § 32-36-1-1, *et. seq.*; I.C. § 32-36-1-9. The State of Indiana

also has a significant interest in the adjudication of this case since NoC is an Indiana company

that has been injured in Indiana by Defendants' knowing and intentional infringement upon

NoC's trademark rights in and to the Mark and the harm to NoC has occurred in Indiana.

Exhibit B at ¶ 10, Declaration of Kevin Bouchonnet.

## IV.    VENUE IS PROPER IN INDIANA, SOUTHERN DISTRICT.

A.    Venue Is Proper in Indiana, Southern District.

Venue is appropriate in the judicial district in which a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 139 1(b)(2). As argued herein, NoC is an Indiana company that has been injured in Indiana by Defendants' knowing and intentional infringement upon NoC's trademark rights in and to the Mark and the harm to NoC has occurred in Indiana. *Id.* Venue is therefore proper in Indiana, Southern District, as well. *Indianapolis Colts,* 34 F.3d at 412.

Defendants' argument that simply because some of the events giving rise to this action *may have* taken place in California means that venue in Indiana, Southern District is improper is erroneous. *Berger Instruments, Inc. v. Northwest Instruments, Inc.,* 1997 WL 159377, * 5 (N.D. Ill. Mar. 28, l997)("Although other events giving rise to this claim took place outside this district, the occurrence of a 'substantial' part of the events in this district is sufficient for proper venue, even if more events took place in another district. Based on the alleged sales and advertisements of the defendants' products in Illinois, there is a *prima facie* case to conclude, at this time, that venue is proper here.")(*citing Vandeveld v. Christoph,* 877 F. Supp. 1160, 1166-67 (ND.Ill. 1995).

In the instant Case, a substantial portion of the relevant events occurred in this district. Plaintiff has suffered the effects of Defendants' tortious conduct in Indiana.  Exhibit B at ¶ 10, Declaration of Kevin Bouchonnet.  These facts establish that venue is proper in the Southern District of Indiana because a substantial part of the events giving rise to the harm occurred here. *See Santa's Best Craft, LLC v. Janning,* 2003 WL 21504522, *2 (N.D.Ill. June 30, 2003)(The court found venue to be proper in the Northern District of Illinois following the publication of two (2) allegedly defamatory letters in the district of which plaintiff was a resident; the injury occurred in the Northern District of Illinois.)

B.     California is not *Clearly* a More Convenient Venue than Indiana, Southern District.

It is well established that the party seeking a transfer "has the burden of establishing, by reference to particular circumstances, that the [proposed] transfer forum is *clearly more convenient.*" *Coffey v. Van Dorn Iron Works,* 796 F.2d 217, 29 1-20 (7th Cir. l986)(emphasis added). In order for a transfer to occur under § 1404(a), venue must be proper in both the transferor and transferee district. *State Farm Mut. Auto Ins. Co. v. Estate of Robert Bussell,* 939 F. Supp. 646, 651 (S.D. Ind. 1996).

As one North Dakota district court explained:

> In evaluating the convenience and fairness of transfer under § 1404(a), a court should consider both the private interests of the parties and the public interests of the court. The private interests that may warrant the transfer of venue include: plaintiff's initial choice of forum; the relative ease of access to the sources of proof: the availability of compulsory process for the attendance of unwilling witnesses and the cost of obtaining the attendance of witnesses; the situs of material events; and convenience of the parties, specifically their respective residencies and abilities to bear the expense of trial in a particular forum. *Syrnons,* 954 F. Supp. at 186. The public interest factors that are relevant under a § 1404(a) analysis include: (a) the relation of the community to the occurrence at issue in the litigation and the desirability of resolving controversies in their locale; (b) the court's familiarity with applicable law; and (c) the congestion of respective court dockets and the prospect for earlier trial. *Id.*

*FEC Credit Corp. v. Eastcorn, Inc.,* 2005 WL 43159, * 2 (ND. Ill. Jan. 7, 2005). "The court should not grant a change in venue if the move will simply shift the inconvenience from one party to another." *Trustmark Ins. Co. v. All Am. Life Ins. Co.,* 2004 WL2967529, * 3 (ND.Ill. Dec. 2, 2004)(citing *Countryman v. Stien, Roe & Farnham,* 681 F. Supp. 479, 482 (ND.Ill. 1987). The Motion, on its face, appears totally devoid of any argument that Indiana, Southern District, is somehow an inconvenient forum; as such, Defendants have not met their (or any) burden under § 1404(a).  Furthermore, though Defendants have made no showing that Indiana, Southern District, is an inconvenient forum, transfer is generally inappropriate if said transfer merely shifts the inconvenience for one party to an inconvenience for the other party" *First*

*Horizon Pharmaceutical,* 2004 WL 1921059, * 2 (citing *Coffey,* 796 F.2d at 219-20). A defendant may not employ § 1404(a) solely in order to shift the burden or inconvenience associated with litigating in a particular venue from itself to the plaintiff who otherwise selected the forum. *Somers v. Flash Tech. Corp of Am.,* 2000 WL 1280314, * 2 (S.D. Ind. 2000).

There can be no plausible argument that Indianapolis is somehow inaccessible to Defendants; certainly, Indianapolis is equipped with an International airport with hundreds of direct flights daily, many of which are to and from the state of California. *See Continental Airlines v. American Airlines, Inc.,* 805 F. Supp. 1392, 1397 (S.D. Tex. 1992)("[I]t is not as if the key witnesses will be asked to travel to the wilds of Alaska or the furthest reaches of the Continental United States."). Also, the seemingly daily improvement in already cutting edge communication technology and this Court's easily accessible electronic filing system, Defendants are in no worse position having to litigate in Indiana than NoC would otherwise be if forced to litigate in California. *See Arena Football League, Inc. v. Roerner,* 947 F. Supp. 337, 341 (N.D. Ill. I996)(The Court denied transfer, in part, because "[d]efendants have not demonstrated that they cannot bring the critical documents to this district. …"). Defendants' Motion to Dismiss is a veiled attempt to merely shift the burden from Defendants to NoC; therefore, dismissal consistent with Defendant's prayer for relief is not appropriate.

1. NoC's interests in having the Case heard in the venue it selected weighs against dismissal.

a. NoC's choice of forum should be given substantial deference.

"[U]nless the balance is strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *In Re Nat'l Presto Indus., Inc.,* 347 F.3d 662, 664 (7th Cir. 2003)(quoting *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 508 (1947)); *see United Sonics, Inc. v. Shock,* 661 F. Supp. 681, 683 (W.D. Tex. 1986)(Wherein it was noted by the court that a plaintiff's choice of forum is "most influential and should rarely be disturbed unless the balance

is strongly in defendant's favor.").

In this Case, NoC's choice of venue is unequivocally the home forum for NoC, its business partners, its agents, and its attorneys. Defendants' unauthorized and illegal commercial use of the Mark has caused irreparable and significant injury in Indiana, Southern District to the reputation and goodwill that NoC has established in and to the Mark; therefore, NoC's choice of venue in the Southern District of Indiana should be given considerable weight and deference. See *Clear Channel Outdoor, Inc. v. Rubloff Oakridge Algonquin LLC,* 2003 WL 22382999, *3 (N.D.Ill. Oct. 16, 2003)(quoting *Vandeveld v. Christoph,* 877 F. Supp. 1160, 1167 (N.D. Ill. l995)("A plaintiff's choice of forum is entitled to substantial weight under Section 1404(a), particularly where it is also the plaintiff's home forum. Indeed, a plaintiff's choice of forum should rarely be disturbed unless the balance weighs *strongly* (emph. added) in the defendant's favor.").

> b. The easy availability by all parties of evidence in this venue weighs in favor of denying Defendants' Motion to Dismiss.

Given the matters at issue in this Case and the respective domiciles of the Parties, there likely will exist no evidence in this Case that is obtained from outside of either Indiana and / or California. While Defendants make no contention that the evidence as may be associated with this Case is somehow more readily available in California as opposed to Indiana, such an argument would fail on its face because the net result of transferring the Case on this basis would merely result in shifting the burden from one party to the other in terms of convenience. It has already been established herein that a case should not be transferred where the result is merely to shift inconvenience from the responding party to the initiating party. *Horizon Pharmaceutical,* 2004 WL 1921059, * 2 (citing *Coffey,* 796 F.2d at 219-20); *Ultimatemeasures, Inc. v. Bohnengel,* 2004 WL 906096, * 6 (N.D. III. Apr. 27, 2004). The foregoing consideration with regard to the availability of the evidence in this Case weighs in favor of maintaining jurisdiction

in Indiana, Southern District.

Furthermore, because the evidence in this Case will likely consist mostly of business documents, records, etc., once again, the technology of the day, which is constantly improving, will allow the ready exchange and / or presentation of said evidence without the necessity of travel by either party. Accordingly, there can be no argument that somehow the evidence in this Case is more readily available in California and that, as such, the Case should be transferred.

c. Convenience to the witnesses weighs against dismissing this action.

Again, while Defendants have failed to raise any argument whatsoever with regard to the convenience of witnesses, some courts consider the factor of availability of witnesses to be the most important factor in determining proper jurisdiction / venue. *See Trustmark Ins.,* 2004 WL 2967529 at *3 (The most important factor in determining proper jurisdiction / venue is the convenience of the witnesses.). The foregoing notwithstanding, however, it is the burden of the party seeking transfer to identify with some specificity both the witnesses who reside in the proposed transferee forum and the significance of their testimony[4]. *Hayes v. Smith,* 1992 WL 225560, *4 (ND.Ill. Sept. 8, 1992). Vague generalizations and failure to clearly specify the key witnesses to be called, along with a statement concerning the nature of their testimony, are an insufficient basis upon which to grant a change of venue under § 1404(a). *Orb Factory, Ltd. v. Design Science Toys, Ltd.,* 6 F. Supp.2d 203, 208-09 (S.D.N.Y. l998)(citing *Heller Financial, Inc.* v. *Midwhey Powder Co. Inc.,* 883 F.2d 1286, 1293 (7th Cir. 1989).

Again, not only have Defendants failed to identify any witnesses outside their control who reside in California, Defendants have failed to name one (1) witness that Defendants intend to call at trial in this Case, much less provide any detail of the so-called witnesses' proffered testimony. This failure, in and of itself, requires denial of the Motion. *Continental Airlines, Inc.*

---

[4] Counsel for NoC once again notes for the record that Defendants have not expressly sought transfer by way of their Motion to Dismiss, yet counsel for NoC still feels compelled to argue as if Defendants are seeking transfer.

*v. American Airlines, Inc.*, 805 F. Supp. 1392, 1396 (S.D. Tex. 1992) ("Where, as here, the moving party has merely made a general allegation that certain witnesses are necessary, without identifying them or the substance of their testimony, the motion must be denied.").

> 2.    The overriding interests of justice weigh in favor of the denial of Defendants' Motion to Dismiss.

"The 'interest of justice' component 'embraces traditional notions of judicial economy', rather than the private interests of the litigants and their witnesses." *Brandon Apparel Group, Inc. v. Quitman Mfg. Co., Inc.,* 42 F. Supp. 2d 821, 834 (N.D.Ill. 1999)(quoting *TJG Ins. Co. v. Brightly Galvanized Prods., Inc.,* 911 F. Supp. 344, 346 (ND.Ill. 1996). Factors of public interest which this Court must weigh in determining whether jurisdiction in this Court is appropriate are: "1) the relationship of the community to the issue of the litigation and the desirability of resolving controversies in their locale; 2) the court's familiarity with applicable law; and 3) the congestion of the respective court dockets and the prospects for an earlier trial." *Chukwu v. Air France,* 218 F. Supp. 2d 979, 989 (ND. Ill. 2002)(citing *Hughes v. Cargihl, Inc.,* 1994 WL 142994, *2 (ND.Ill. April 14, 1994)).

> a.    The relation of the community to Defendants' actions and the harm suffered by NoC weighs in favor of denying Defendants' Motion to Dismiss.

As stated herein ad nausea, NoC's choice of venue is unequivocally the home forum for NoC, its business partners, its agents, and its attorneys. Defendants' unauthorized and illegal commercial use of the Mark has caused irreparable and significant injury in Indiana, Southern District to the reputation and goodwill that NoC has established in and to the Mark; therefore, NoC's choice of venue in the Southern District of Indiana should be given considerable weight and deference. By filing this Case in Indiana, Southern District, NoC has invoked the protection of Indiana law and, as a result of that, plus the additional foregoing factors, Indiana has an interest in the protection of its citizens and in maintaining its public policies. *Flintkote Co. v.*

*General Accident Assur. Co. of Canada,* 2004 WL 1977220, *5 (ND.Cal. Sept. 7, 2004)(The interests of the forum state in the protection of its citizens are substantial.)

> b.    NoC, as a resident of the State of Indiana who has been harmed in the State of Indiana, has the right to have an Indiana Court apply and interpret questions of Indiana law.

As hereinabove argued, six (6) of the nine (9) causes of action alleged in the Complaint require adjudication of issues squarely founded in Indiana law. It is preferable that the courts of Indiana interpret and develop Indiana law. Arguably, Indiana's statute provides an owner of intellectual property rights with the broadest protection. Additionally, Indiana's unique Crime Victims Act (IC. § 34-24-3-1 *et seq.*) provides for the recovery of damages for certain criminal wrongs (i.e. for acts of conversion as claimed by NoC in Count VII of the Complaint).

In this Case, the Complaint is largely based upon questions of Indiana law because NoC is a life long Indiana company which has been irreparably and severely injured in Indiana as a proximate result of the knowing and intentional actions of parties who maintain at least minimum contacts with the State of Indiana. As a result thereof, NoC, the first to file in this dispute, has the right to have an Indiana court apply and interpret Indiana law as well as NoC's other claims. *S.J.G. Enter., Ltd. v. Eikenberry & Assocs., Inc.,* 2004 WL 1794475, *4 (N.D.Ill. Aug 5, 2004) (The Court here denied defendant's motion to transfer on the basis that "… our court is more seasoned and familiar with the law governing this suit - the Illinois Sales Representative Act - than would be a court in Indiana.")

## IV.    <u>SERVICE OF PROCESS ON DEFENDANTS WAS PROPER UNDER INDIANA LAW.</u>

Federal Rule of Civil Procedure 4(e) states that proper service of process may be made upon defendants "pursuant to the law of the state in which the district court is located, or in which service is effected." Fed. R. Civ. P. 4(e). Therefore, whether service on IBS and / or RE under California law was proper is irrelevant and will not be discussed herein; contrary to

Defendants' argument, however, service in this Case was proper on both IBS and RE under Indiana law.

Indiana law strongly prefers disposition of cases on their merits. *Coslett v. Weddle Bros. Constr. Co., Inc.*, 798 N.E.2d 859, 861 (Ind. 2003), *reh'g denied*. Likewise, the Indiana Supreme Court has stated that "… We prefer not to erect procedural obstacles to their [the merits] presentation." *Maldonado v. State*, 355 N.E.2d 843, 848 (1976).

Defendants wholly base their argument as to whether service was proper in this Case on Indiana Trial Rule 4.1(A)(1) (as to RE) which provides, in part, that an individual may be served with the summons and complaint by certified mail to the residence, place of business or employment, where the receipt shows that letter was received and Indiana Trial Rule 4.6 (as to IBS) which provides, in part, that service of a summons and complaint must be made upon an executive officer or appointed agent of an organization. Dkt. 16, Pgs. 9, 10. Defendants' argument with regard to service of process on both IBS and RE fails on its face because it wholly ignores T.R. 4.15(F) which states, in part, "[n]o summons or the service thereof shall be set aside or be adjudged insufficient when either is reasonably calculated to inform the person to be served that an action has been instituted against him, the name of the court, and the time within which he is required to respond."

Again, at the time the Complaint was filed herein, IBS was the registered owner of United States Trademark Application No. 77/231,974. Exhibit A-2, copy of Trademark Application No. 77/231,974. At least as of July 30, 2007, pursuant to the first filed application and the opposition proceedings associated therewith, IBS was located at 215 Lake Boulevard, #494 Redding, California 96003. *Id*. On July 17, 2007, prior to the date that the Complaint was served on Defendants by counsel for NoC, Defendants filed a second application, i.e.

Application No. 78/521,149 (Exhibit A-1); however this second application was filed under the corporate name Nerds on Call, Inc., which was alleged in the second application to be located at 1733 Oregon Street, Suite B, Redding California 96003. [5] Exhibit A-1, copy of Defendants' Federal Trademark Application No. 78/521,149. Further, counsel of record for Defendants as to Defendants' trademark applications (and the corresponding opposition proceeding associated with the first filed application) which are fundamental to this dispute was / is Daniel S. Ballard of the law firm Bullivant Houser Bailey, upon whom service was properly made in this Case. Exhibit A at ¶ 8, Declaration of Theodore J. Minch; Exhibit A-3, copy of the Notice of Opposition as to Defendants' Federal Trademark Application No. 77/231,974.

Furthermore, counsel for NoC had exchanged numerous correspondences with Ballard as to Defendants' unauthorized and infringing use of the Mark since at least as early as January, 2005. *Id.* During this exchange, Mr. Ballard had never asserted that he was not counsel of record for Defendants; in fact, to the contrary, as late as December, 2006, Mr. Ballard confirmed that he, in fact, was counsel for Defendants. *Id.* at ¶8; Exihibit A-4, Ballard letter dated December 15, 2006. Additionally, by way of correspondence dated mid-2007, Ballard asserted, on behalf of Defendants, that Ballard had received notice of the Complaint though the Complaint had not yet been served by NoC. *Id.*

Certainly, service of the summons and complaint in this Case by certified mail addressed to RE, the chief executive of IBS, at IBS' / RE's last known place of business, was reasonably calculated to inform RE that an action had been instituted against him under T.R. 4.15(F).

---

[5] While counsel for Plaintiff has conducted no discovery, formal or otherwise, in this Case, counsel for Plaintiff received a letter from trademark counsel for Defendants dated December 31, 2007 in which correspondence Defendants' trademark counsel stated that Nerds on Call, Inc. (CA) formerly engaged in business as IBS, an entity which, according to counsel, no longer exists. Nerds on Call, Inc. (CA) was since incorporated in California. It is expected that a Stipulation of Substitution of Parties will be filed in this matter naming Nerds on Call, Inc. (CA) as defendant.

*Northwestern National Ins. Co. v. Mapps*, 717 N.E.2d 947, 954 (Ind.Ct.App. 1999)(Any defect in service under T.R. 4.6 may be cured by T.R. 4.15(F) where service was reasonably calculated to inform a defendant that an action had been instituted against it.). Proper service upon Defendants under T.R. 4.15(F) was further supported by providing counsel of record for the past three (3) years as to Defendants' trademark matters with notice of this action. *Lindsey v. De Groot Dairy, LLC*; 2007 INCA 35A04-0608-CV-461 – 060407 (Ind.Ct.App. 2007)(Where finding that service upon attorney of record in a dispute that had been ongoing for at least thirteen (13) months was improper would create a procedural trap for litigants.).

Finally, Defendants have not claimed that they had no actual notice of this Case nor have Defendants claimed that they have, in some way, been prejudiced by what Defendants collectively argue was improper service of process. To the contrary, Defendants have timely retained local counsel and have actively engaged in this litigation by way of response, answer, and counterclaim. Although actual notice alone will not cure defective service, it may be considered in determining whether, as in this Case, the notice was reasonably calculated to inform an organization of the action. *See Glennar Mercury--Lincoln, Inc. v. Riley* (1975) 167 Ind.App. 144, 152, 338 N.E.2d 670, 675 (although actual notice alone will not cure defective service, it may be considered in determining whether service was reasonably calculated to inform organization that action has been instituted against it), *trans. denied. Cited by Northwestern National Ins. Co. v. Mapps*, 717 N.E.2d 947 at 955.

Based upon the foregoing, service on Defendants was proper and therefore, Defendants' Motion to Dismiss for lack of proper service should be denied.

## V.    <u>CONCLUSION.</u>

Defendants' Motion to Dismiss for lack of personal jurisdiction should be denied because this dismissal would (a) ignore controlling Seventh Circuit precedent with regard to questions of personal jurisdiction, (b) ignore Defendants' knowing and intentional tortuous activity within this forum (the State of Indiana, Southern District) and (c) ignore the irreparable and significant harm caused in this District to a lifelong domiciliary of this District.  Likewise, under Indiana law, Defendants were both properly served; in the alternative, no harm nor prejudice has resulted to Defendants from the alleged lack of proper service of process as evidenced by Defendants' timely retention of local counsel and filings of at least two (2) responsive pleadings in this Case. To dismiss this Case for lack of jurisdiction and / or NoC's failure to properly serve Defendants is contrary to long held principles of Indiana and Seventh Circuit precedent wherein the adjudication of cases on their merits are heavily favored.  As such, NoC hereby respectfully requests the Court deny Defendants' Motion to Dismiss.


WHEREFORE, Plaintiff NERDS ON CALL, INC. respectfully requests that the Court deny Defendant's Motion to Dismiss or, in the alternative, transfer venue and for all other just and proper relief in the premises.


Dated:  January 4, 2008                              Respectfully submitted,

                                                      /s/ Theodore J. Minch
                                                     Theodore J. Minch, #18798-49
                                                     Attorney for Plaintiff Nerds on Call, Inc.
                                                     SOVICH MINCH, LLP
                                                     10099 Chesapeake Drive, Suite 100
                                                     McCordsville, Indiana 46055
                                                     (317) 335-3601 (t)
                                                     (317) 335-3602 (f)
                                                     e-mail – tjminch@sovichminch.com

## PROOF OF SERVICE

The undersigned hereby certifies that a true and accurate copy of the foregoing was served upon the following counsel for record this 2nd day of January, 2008 via electronic mail only:

Jonathan G. Polak, #21954-49
SOMMER BARNARD PC
One Indiana Square, Suite 3500
Indianapolis, IN 46204
e-mail:  jpolak@sommerbarnard.com

/s/ Theodore J. Minch
Theodore J. Minch, #18798-49
SOVICH MINCH, LLP
Attorney for Plaintiff Nerds on Call, Inc.
E-Mail:  tjminch@sovichminch.com