UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NERDS ON CALL, INC.,

        Plaintiff,

vs.

INTERNET BILLING SERVICES, INC., and
RYAN ELDRIDGE, Individually,

        Defendants.

Case No.: 1:07-cv-0535-DFH-TAB

## **REPLY IN SUPPORT OF MOTION TO DISMISS**

Defendants Nerds on Call, Inc., and Ryan Eldridge (collectively "Nerds/California") respectfully respond to the opposition filed by Plaintiff Nerds on Call, Inc., ("Nerds/Indiana") to Defendants' motion to dismiss this action.

## **INTRODUCTION**

Nerds/Indiana argues that this Court may assert jurisdiction over Nerds/California because the company has sufficient minimum contacts with this forum such that it could reasonably anticipate being haled into this Court. Dkt. 35 at p.8.[1]

In light of the <u>undisputed</u> fact, however, that Nerds/California has had literally no contact with any person or business of Indiana,[2] Nerds/Indiana has creatively invented the "minimum contacts" Nerds/California allegedly has with this forum. Those purported minimum contacts are (1) its federal trademark registration application for NERDS ON CALL, (2) its callnerds.com website, and (3) the "effects" that the offering and providing of its services are having in Indiana.

---

[1] Nerds/Indiana does <u>not</u> argue that Nerds/California is susceptible to suit in Indiana under general personal jurisdiction rules, only that the exercise of *specific personal jurisdiction* over Nerds/California is appropriate. Dkt. 35 at p.8. Please note that Nerds/California will not distinguish Defendant Ryan Eldridge, an officer and principal shareholder of Defendant Nerds On Call, Inc., from the company in their joint argument against the exercise of specific personal jurisdiction over them both.

[2] Dkt 16-1 at ¶¶6–15 (Eldridge Declaration declaring that Nerds/California has had no contact with any person or business in Indiana). Nerds/Indiana did not seek any discovery of Nerds/California to rebut Eldridge's uncontroverted declaration and has provided literally <u>no</u> evidence of any such contacts.

None suffice as "minimum contacts" with this forum.

## ARGUMENT

At the root of this action—and this jurisdictional dispute—is Nerds/Indiana's frustration with the trademark law rule that two persons can use the same trademark to provide the same services as long as they do so in separate geographical areas.

Nerds/Indiana's claim that its small computer repair business in Indianapolis can prohibit another such business from operating under the same name in California is not only without merit, it offends the fundamental notion that trademark rights arise and subsist solely within the geographic area in which the trademark owner does business. *United Drug Co. v. Rectanus Co.*, 248 U.S. 90, 98-99 (1918); *Simon Property Group L.P. v. mySimon, Inc.*, 104 F. Supp.2d 1033, 1036-38 (S.D. Ind. 2000) ("For example, different companies can use very similar or identical trademarks if they use them in different geographic areas … .").[3]

It is undisputed that the trademark rights Nerds/Indiana has created *in Indianapolis* for its NERDS ON CALL mark for computer repair services are senior to the trademark rights that Nerds/California has created in that mark in California—but those admittedly senior rights are limited to Indianapolis, the sole geographic area where Nerds/Indiana does business.

Nerds/Indiana, however, is attempting to enforce its trademark rights against a remote user thousands of miles away in California. This is particularly egregious because the services the parties offer under the NERDS ON CALL mark—the on-site repair of computers in their customers' homes and businesses—are by their very nature limited to the geographic areas in which those homes and businesses are located. Dkt. 16-1 at ¶¶2-4. Nerds/Indiana, in fact, admits that Nerds/California "is located in Redding, California, and provides the on-sight repair of computers the home and / or office" (sic) and that its use of NERDS ON CALL "***was then and remains restricted*** to an area of Northern California; specifically, Redding, California." Dkt. 1 at ¶¶22, 24, 27 (emphasis added).

---

[3] See also, *Safeway Stores, Inc. v. Safeway Quality Foods*, 433 F.2d 99, 103-05 (7th Cir. 1970); 4 McCarthy on Trademarks and Unfair Competition, §26.2 at 26-6 (4th ed.)

This jurisdictional dispute has arisen because Nerds/Indiana is attempting to enforce its geographically-limited trademark rights against Nerds/California in an Indiana courtroom. But because Nerds/California has no contacts with this forum, it cannot be haled into this Court. *See* Dkt. 16-1 (Nerds/California provides no services in Indiana or to any Indiana resident). While Nerds/Indiana's claims deserve to be heard, it is <u>not</u> because Nerds/California does business in Indiana—it is because *Nerds/Indiana's trademark rights* may extend to California where the alleged wrongs could be occurring.

## I. <u>Specific Personal Jurisdiction</u>

### A. <u>Applicable Law</u>

A minimum contacts inquiry "turns on a particularized assessment of the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977). Specific personal jurisdiction requires not only minimum contacts, but also that the litigation "arise out of" or "be related to" those minimum contacts. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 (1984).[4]

A defendant has minimum contacts with a state if, by some act, it has purposefully availed itself of the privilege of conducting activities within the forum state. *Hanson v. Denckla,* 357 U.S. 235, 253 (1958). If so, the defendant has "fair warning" and can "reasonably anticipate being haled into" the forum state's courts. *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 477-78 (1985).

When personal jurisdiction is challenged under Rule 12(b)(2), the plaintiff must establish that the court may properly exercise jurisdiction over the defendant. *RAR, Inc.* v. *Turner Diesel*, 107 F.3d 1272, 1275 (7th Cir. 1997). In considering whether it has personal jurisdiction, the court may review affidavits submitted by the parties. *Purdue Research Found.* v. *Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). If material facts are in dispute, the court

---

[4] Nerds/California agrees that Indiana's long-arm statute is coextensive with federal due process. *Litmer v. PDQUSA.com,* 326 F. Supp. 2d 952, 955 (N.D.Ind. 2004).

3

must conduct an evidentiary hearing, and the plaintiff must prove its allegations of personal jurisdiction.[5] *Hyatt Int'l Corp.* v. *Coco*, 302 F.3d 707, 713 (7th Cir. 2002).

B.  <u>Nerds/California's Federal Trademark Application</u>

Nerds/Indiana argues that by signing a federal application to register NERDS ON CALL as a trademark, Nerds/California declared that it is using the mark in interstate commerce and, therefore, "availed themselves of Indiana, Southern District." Dkt. 35 at pp. 3-4.

Why this is true is left <u>unsupported</u> and unexplained and, if accepted as true, leads in one short step to the absurd conclusion that all federal trademark registration applicants are susceptible to suit throughout the country because they declare in their applications that they are using the trademark in interstate commerce. This is not the law and improperly conflates a personal jurisdiction analysis with a trademark registrability analysis—and, in any event, does not evidence any "contact" by Nerds/California in this supposedly appropriate forum.

The argument is also <u>wrong</u> under trademark law. The federal statutory requisite relating to the "use" of a mark for registrability purposes provides that "[t]he owner of a trademark *used in commerce* may request registration of its trademark on the principal register … ." 15 U.S.C. §1051(1)(a) (emphasis added). The definitions of "commerce" and "use in commerce" are: "[t]he word 'commerce' means all commerce which may lawfully be regulated by Congress" and "[t]he term 'use in commerce' means the bona fide use of a mark in the ordinary course of trade … when it is used or displayed in the sale or advertising of services and the services are rendered in commerce ... ." 15 U.S.C. §1127.

Because "commerce" is any commerce that can be regulated by Congress, the "use in commerce" registrability requisite does <u>not</u> require that the services in commerce be rendered in more than one state. *Larry Harmon Pictures v. Williams Restaurant*, 929 F.2d 662, 664-66 (Fed. Cir. 1991). Like the single-location restaurant in *Larry Harmon Pictures*, Nerds/California need

---

[5] Nerds/Indiana admits it did not seek any discovery of Nerds/California in support of its personal jurisdictional assertion. Dkt. 35 at p.5, note 1. Eldridge's declaration that Nerds/California does <u>no</u> business in Indiana or with any Indiana residents remains, therefore, uncontroverted. If the Court finds that Nerds/Indiana's declarations create disputed facts, Nerds/California respectfully requests a hearing.

4

not provide its services outside California to federally register the trademark rights it has created in California.[6] In any event, Nerds/California's declaration that it has used NERDS ON CALL *in commerce* is no evidence that it has used the mark *in Indiana*.

In fact, Nerds/California's application to register its trademark rights in NERDS ON CALL is a "concurrent use" application filed pursuant to 15 U.S.C. §1052(d). Dkt. 35-2, at Ex. A-1. A concurrent use application allows trademark owners to apply to register their trademark rights throughout the United States except for those geographic areas in which a senior user has already established rights in that particular mark. *Bellsouth Corp. v. Datanational Corp.*, 60 F.3d 1565, 1568-69 (Fed. Cir. 1995). *See also*, 37 C.F.R. §§2.99, 2.133(c) (concurrent use rules).

Because Nerds/California was aware of Nerds/Indiana's senior rights in Indianapolis for NERDS ON CALL before filing its registration application for the mark, Nerds/California excepted Indianapolis and a 50 mile area around the city from the geographic scope of its sought-after national protection.[7] Such registration of trademark rights is not only appropriate, the law promotes concurrent use registrations. *In re Beatrice Foods Co.,* 429 F.2d 466, 474-76 (C.C.P.A. 1970); *Enterprises Rent-A-Car v. Advan. Rent-A-Car*, 330 F.3d 1333 (Fed. Cir. 2003).

Because Nerds/California expressly excepted Indianapolis from the geographic scope of its registration protection, its application evidences its intent to stay out of this forum, not to be haled into court here. Nerds/California's filing of its application to federally register NERDS ON CALL, therefore, does not evidence (1) a contact in Indiana, (2) an action that would lead it to anticipate being haled into this Court, or (3) any malevolent intent in applying to register the trademark rights it has created in its NERDS ON CALL mark.

---

[6] See also *In re Gastown*, 326 F.2d 780 (C.C.P.A. 1964); *In re Silenus Wines, Inc.*, 557 F.2d 806 (C.C.P.A. 1977). Supreme Court Commerce Clause jurisprudence in other contexts is in accord. See, *Heart of Atlanta Motel, Inc. v. United States*, 379 U.S. 241 (1964) (a single location hotel is engaged in interstate commerce for purposes of the Civil Rights Act).

[7] See, Dkt. 35-2, at Exh. A-1. Not relevant for this dispute is the fact that a third company, "Computer Nerds On Call," is operating a computer repair business in the State of Maryland and the District of Columbia and, as a result, Nerds/California is not seeking registration coverage in those geographic areas either.

### C. The Nerds/California Website

#### (1) Applicable Law

As noted, it is well-settled law that two persons can concurrently use the same trademark for the same services so long as the parties' services are offered in separate geographic areas and no confusion results. *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 415 (1916) ("where two parties independently are employing the same mark upon goods of the same class, but in separate markets wholly remote the one from the other, the question of prior appropriation is legally insignificant ... ."); *General Baking Co. v. Goldblatt Bros.,* 90 F.2d 241, 242 (7th Cir. 1937) (same). It follows that the chore of determining the territorial limitations of those markets has an equally long pedigree. *Hanover Star,* 240 U.S. at 415-16 (a trademark owner cannot "monopolize markets that his trade has never reached and where the mark signifies not his goods but those of another."); *United Drug Co. v. Rectanus Co.,* 248 U.S. 90, 96-99 (1918).

As this Court has observed, "[t]he Internet poses new challenges to trademark law, in large part because it erases geographic boundaries and blurs the boundaries between different products and services." *Simon Property Group,* 104 F. Supp.2d at 1037. One of those challenges arises when considering if a court may properly assert personal jurisdiction over a non-resident trademark user due to that person's internet activity. This Court has adopted the "sliding scale" test of interactivity to determine whether an internet site can justify specific personal jurisdiction over a defendant. *United States Schs. of Golf, Inc., v. Biltmore Golf, Inc.*, 2005 WL 3022005 *6 (S.D. Ind. Nov. 10, 2005) (relying on *Jennings v. AC Hydraulic A/S,* 383 F.3d 546 (7th Cir. 2004)). The touchstone remains—as it must—whether the person has "purposefully availed" himself of the protections afforded under the forum state's laws.[8]

For this test, internet sites fall into three general categories: active, passive, and a hybrid

---

[8] The purposeful availment requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of "random," "fortuitous," or "attenuated" contacts, *Burger King,* 471 U.S. at 475, rather, the defendant must have "solicited the transaction in question" with the forum state. *Federated Rural Elec. Ins. Corp. v. Inland Power and Light Co.,* 18 F.3d 389, 394 (7th Cir. 1994).

of the two. *F. McConnell & Sons, Inc. v. Target Data Systems*, 84 F. Supp. 2d 961, 971 (N.D. Ind. 1999). A website through which the defendant directly sells its products is "active" and justifies the exercise of personal jurisdiction. *Litmer,* 326 F. Supp. 2d at 957. A "passive" website is one that does not enable customers to order products online but which contains product information or other informational content. *Id.* A passive website does <u>not</u> justify the exercise of personal jurisdiction because the defendant is not directing its business activities toward consumers in the forum state in particular. *Jennings,* 383 F.3d at 549-50. A "hybrid" website allows visitors to exchange information with the defendant but does not enable the sale of products. *Litmer,* 326 F. Supp. 2d at 957. The exercise of jurisdiction based on a hybrid website "is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs" through the website. *Id.* (internal quotation omitted).[9]

       (2)    Nerds/California's Website

Regarding Nerds/California's website, Nerds/Indiana plead in its complaint that "via the internet at Defendants' internet site www.callnerds.com, actual and potential consumers from Indiana – Southern District jurisdiction, can utilize Defendants' service," Nerds/California is "engaging in false advertising on its Internet site," and that Nerds/Indiana maintains electronic evidence "from NOC consumers of actual confusion as to the owner of the Mark." Dkt. 1 at ¶¶30, 34, 35.

Unsatisfied with these conclusory allegations, Nerds/Indiana submitted more specific allegations in a declaration in opposition to the instant motion alleging that "a potential consumer from anywhere in the United States (including but certainly not limited to Indiana) can purchase and / or utilize Defendants' services simply by seeking on-line help via the 'self help' or 'commonly asked questions' section of the Site and / or by requesting service via the 'request service' or 'contact us' sections of the Site." Dkt. 35-2 at ¶8. The declaration further alleges that the owner of Nerds/Indiana became aware of Nerds/California's website "from consumers of

---

[9] The Seventh Circuit has left open the question of what level of interactivity is sufficient to establish personal jurisdiction. *Jennings,* 383 F.3d at 549.

our services located in Central Indiana." *Id.* at ¶9.  These allegations form the <u>entire</u> support for the argument that Nerds/California's website is "fully interactive and consumers from Indiana may easily access and / or retain Defendants' services... ." Dkt. 35 at p.9.

Nerds/Indiana does not allege that any Indiana resident is, or has ever actually been, a Nerds/California's customer or that any Indiana resident has ever received—or sought—any "services" through Nerds/California's website.  Also unalleged are any facts to support the <u>conclusions</u> that Nerds/California is soliciting transactions in Indiana, is purposefully availing itself of the privilege of conducting activities within Indiana, or is performing any activity that would lead it to reasonably anticipate being haled into this Court.

Nerds/Indiana's position and argument, instead, is that by virtue of its website, Nerds/California has "potential" customers in Indiana and that "nothing contained on the Site specifically states that Indiana residents are *excluded from* utilizing and / or retaining Defendants' services." Dkt. 35 at pp. 9-10 (emphasis added).  Nerds/California, therefore, can be haled into an Indiana court.

The argument is unsound.  The Nerds/Indiana "rule," apparently, is that a person who publishes information on the internet must expressly *disclaim* that he engages in business in a particular place or else face the consequence that a court in one of the places *not* disclaimed will find that he actually does business there. How absurd. This "disclaimer" approach to jurisdictional analyses directly contradicts the well-trodden rule—cited by Nerds/Indiana—that a person must purposefully avail himself of the protections afforded by a place, i.e., take some action directed at the place, before a court in that place can assert personal jurisdiction.  The Nerds/Indiana "rule" would require every person publishing information of a commercial nature on the internet to list on their websites all the places throughout the United States where they *do not do* business.  That is not the law and Nerds/California has no obligation to declare on its internet site that its services are unavailable to residents in Indiana.

Nerds/Indiana also asserts that the Indiana Right of Publicity Statute, read together with its long-arm statute, "demonstrates that Indiana maintains the strongest of positions with regard

8

to the protection of the intellectual property rights of its residents." Dkt. 35 at p.9. Nerds/Indiana then quotes the jurisdictional provision in Indiana's Right of Publicity Statute inferring that the provision either does or should control in this trademark case. *Id.* The Right of Publicity Statute and its jurisdictional provision, however, are wholly irrelevant because (1) as a corporation, Nerds/Indiana is not a "personality" protected under the Statute and, (2) Nerds/Indiana has not, in any event, alleged any violation of the Statute. *See* Ind. Code §§ 32-36-1-8 and 32-32-1-6.

Nerds/Indiana's assessment of Nerds/California's allegedly "fully interactive" website is also poorly-reasoned. The allegations are that Indiana residents "can purchase and / or utilize Defendants' services simply by seeking on-line help via the 'self help' or 'commonly asked questions' section of the Site and / or by requesting service via the 'request service' or 'contact us' sections of the Site." Dkt. 35-2 at ¶8.[10] An assessment of each of those website sections, and of them as a whole, however, reveals a passive or—at most—minimally interactive website.

        (i)       The "Self-Help" section

Visitors to Nerds/California's website can access a "Self-Help" page. Dkt. 35-2, at p. 5 of Exh. B-1. On that page are hypertext links providing access to certain *free* downloadable software: an antivirus protector, a spyware remover, an adware remover, and a spyware blocker. *Id.* Visitors to the page can also access a "Nerd Translator" that provides definitions of computer terminology and visitors can click on a hypertext link to a third-party online virus scan. *Id.* At no time must visitors insert any information or interact with any Nerds/California representative. Anyone, anywhere in the world, can access the "Self-Help" page and—without any assistance from Nerds/California—freely view the information and download the software that Nerds/California has made available.

This one-way provision of information and software from Nerds/California to its website visitors is the very definition of a passive website. *See, e.g., Med-Tec Iowa, Inc. v. Computerized*

---

[10]     Nerds/California admits that the webpages attached to the Bouchonnet Declaration (Dkt. 35-2) are accurate representations of some of the webpages located on Nerds/California's website. For ease of reference, the five webpages that comprise Exh. B-1 to the Bouchonnet Declaration will be referred to, as needed, as pages 1 through 8 of Exh. B-1.

*Imaging Reference Sys., Inc.,* 223 F. Supp. 2d 1034, 1038 (S.D. Iowa 2002) (website permitting download of product catalog, instructions to place orders for products, and describing products "passive" because it did not permit online placement of orders or any other exchange of information).

       (ii)  The "Common Questions" section

Visitors to Nerds/California's website can access a "Common Questions" page. Dkt. 35-2, at pp. 3-4 of Exh. B-1. On that page are hypertext links providing access to information about computer-related concerns: "Viruses, trogan horses, and worms oh my!," "Which computer is best for college?," "What's the deal with digital cameras?" and "How much should I pay for a computer?," among many others. *Id.* Once again, anyone, anywhere in the world, can access this webpage and can —without submitting any information or receiving any assistance from Nerds/California—read the published information. This one-way provision of information, once again, is the hallmark of a passive website. *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp. 1119, 1124 (W.D. Pa. 1997) (simply posting information accessible to users in a foreign jurisdiction is a "passive" website).

       (iii)  The "Request Service" section

Visitors to Nerds/California's website can access a "Request Service" page. Dkt. 35-2, at p. 7 of Exh. B-1. This page permits visitors to send information about themselves to Nerds/California and to request assistance from Nerds/California. *Id.* To do so, the visitor <u>must</u> disclose certain information about themselves, identified by the "*" symbol next to that information: first name, last name, and day-time phone number. *Id.* When the visitor attempts to insert the area code for the required telephone number, a drop down menu appears and offers area codes that are only used in California. Dkt. 16-1 at ¶7; Dkt. 35-2 at ¶8.

The website as a whole, therefore, permits visitors asserting California-specific contact information to *both* download information and to send information, and request assistance from,

Nerds/California. To that extent only, the website is arguably "interactive."[11] To all other visitors, however, the Request Service webpage is useless and so cannot elevate the website from a passive provider of information to an interactive provider. Specifically, the Request Service webpage is useless to all Indiana residents because they cannot (truthfully) submit their contact information. There is, in any event, no evidence that any have done so and Nerds/California cannot provide them with any on-site services if they did. Dkt. 16-1 at ¶¶6–15 (Nerds/California does not and cannot provide service in Indiana).[12]

On the interactivity spectrum, therefore, the website is—at most—minimally interactive. *Carefirst of Md., v. Carefirst Pregnancy*, 334 F.3d 390, 394-95, 400-01 (4th Cir. 2003) (website through which visitors could submit their addresses and names along with a credit card donation and then receive advertising materials is "semi-interactive."); *Christian Science Bd. of Directors of First Church of Christ, Scientist v. Nolan*, 259 F.3d 209, 218 n. 11 (4th Cir. 2001) (observing that a website "invit[ing] visitors to the site to e-mail questions and information requests" is not passive, but is "minimally interactive").[13]

    (iv)  The "Contact Us" section

---

[11] The facts and analysis in *Mink v. AAAA Development LLC*, 190 F.3d 333, 336-37 (5th Cir. 1999) are very similar to the instant case and would lead to the conclusion that Nerds/California's website is <u>passive</u>. *Id.* (website listing a contact e-mail address, a printable order form, and the defendant's toll-free telephone number deemed passive in the absence of some interactive feature such as the ability of consumers to order products *even though the defendant could reply to e-mail inquiries*). It is not necessary, however, to define whether Nerds/California's website is passive or minimally interactive because neither justifies the exercise of personal jurisdiction over Nerds/California.

[12] Nerds/Indiana's assertion that Nerds/California *could* hire workers in Indiana to provide on-site service is not the same as alleging that it has hired those workers (which would not be true) and is mere speculation that could be made by any would-be plaintiff in any state. Dkt. 35 at p.9. Speculation about what could be is no evidence that Nerds/California *has* directed its activities toward Indiana.

[13] There is a general rule that an e-mail link on a website to the defendant does not, by itself, make that website interactive. *See, e.g., Haggerty Enterprises, Inc. v. Lipan Indus. Co.,* 2001 WL 968592, *6 (N.D. Ill. Aug. 23, 2001) (website that allowed users to contact defendant through its website for more information did not support jurisdiction); *Trost v. Bauer,* 2001 WL 845477, *11 (N.D. Ill. July 24, 2001) (same); *Edelson v. Ch'ien,* 352 F. Supp. 2d 861, 868-69 (N.D. Ill. 2005) (website posting press release with e-mail link to contact company was not sufficiently interactive to support specific jurisdiction). The Seventh Circuit is equally reluctant to exercise jurisdiction in analogous situations. See, *Young v. Colgate-Palmolive Co.*, 790 F.2d 567, 570 (7th Cir. 1986) ("[Mailings] simply are not the type of purposeful contacts recognized as the transaction of business" in order to sustain personal jurisdiction over directors of a corporation).

Visitors to Nerds/California's website can access a "Contact Us" page. Dkt. 35-2, at p. 8 of Exh. B-1. The page provides a toll free telephone number and prominently proclaims that Nerds/California is "Now Serving Northern and Southern California." *Id.* The page then lists the seven "Nerds On Call Locations"—all within California—and warns that "Service areas vary by store, please call for details." *Id.* There is no opportunity on the webpage for a visitor to input any information. *Id.*

There is nothing interactive about the "Contact Us" page. While the toll free number <u>does</u> facilitate inquiries to Nerds/California it is clear on the face of the page that the company's on-site services are limited to very specific places within California. There is, moreover, nothing on the page that solicits visitors (from Indiana or anywhere else) to seek through the toll free number any computer troubleshooting services and there is nothing on any of the pages that suggests Nerds/California provides any services other than its *on-site* computer maintenance and repair services—such as telephone-only services.

In sum, Nerds/Indiana has failed to make a prima facie case that Nerds/California's website is sufficiently interactive to justify the exercise of specific personal jurisdiction over Nerds/California.

        D.      <u>The "Effects Test"</u>

        (1)      No facts are alleged to establish any "effect" on Nerds/Indiana

The *Calder* effects test argument made by Nerds/Indiana is missing a key element: the allegation of <u>any</u> facts to establish any effect on the company due to Nerds/California's use of the NERDS ON CALL trademark. Dkt. 35 at pp. 11-13.

Instead, Nerds/Indiana argues, in conclusory fashion, that "Defendants knowing and intentional unauthorized and illegal commercial use of the Mark in Indiana, Southern District, has injured NoC in Indiana, Southern District (cite). In summary, Defendants' unauthorized and illegal commercial use of the Mark has caused irreparable and significant injury to the reputation and goodwill that NoC has established in and to the Mark." Dkt. 35 at p.13.

These two rote <u>conclusions</u>—that Nerds/California has used NERDS ON CALL in

Indiana and that such use injured Nerds/Indiana—comprise the entirety of Nerds/Indiana "argument" that it has been effected by Nerds/California's use of the mark.[14] Regardless of whether Nerds/Indiana's statements of the law regarding the *Calder* effects test for personal jurisdiction are accurate, because Nerds/Indiana has not supported its conclusory allegations that it has been injured, an effects test inquiry is unnecessary.[15] Absent any "effect," it is pointless to engage in an effects test inquiry.

(2) Nerds/California did not purposefully avail itself of Indiana law

The Seventh Circuit explains that the *Calder* effects test "is merely another way of assessing the defendant's relevant contacts with the forum State. The defendant must still purposefully avail [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985) (quotation omitted). Continuing its explanation, *Wallace* concludes that "[j]urisdiction is proper 'where the contacts proximately result from actions by the defendant *himself* that create a `substantial connection' with the forum State.'" *Id.* (quoting *Burger King*, 471 U.S. at 474 with emphasis in original).

Nerds/Indiana improperly characterizes the *Calder* effects test as if it replaces the inquiry into whether the defendant purposefully availed himself of the laws of the forum state. It does not. *Id.* The plaintiff must still make that threshold showing and, if it does, then the "effect" of that availment in the disputed forum may justify the court asserting personal jurisdiction over that defendant.

Here, Nerds/Indiana has not made the threshold showing that Nerds/California purposefully availed itself of the laws of Indiana—and made only two arguments that it has done

---

[14] Such conclusory allegations are suspect even in pleadings, and are certainly not "argument" in a brief. See also Nerds/Indiana's contradictory allegations at Dkt. 1 at ¶¶ 22, 24, 27 (Nerds/California's use of NERDS ON CALL is restricted to Northern California.).

[15] Notably absent from Nerds/Indiana's *Calder* effects test argument is the one-sentence in its complaint that asserts Nerds/Indiana maintains evidence "from NOC consumers of actual confusion as to the owner of the Mark." Dkt. 1 at ¶35. The absence of this alleged fact from the Nerds/Indiana "effects test" analysis is evidence that even it does not give that alleged "fact" much, if any, weight.

so: (1) by filing its federal application to register NERDS ON CALL and (2) by operating its callnerds.com website. As shown, neither of these activities are directed at Indiana. The registration application, in fact, <u>excepts</u> Indianappolis from the areas where Nerds/California may do business under the mark. As for the website, it is accessible throughout the world and does not mention—let alone target—Indiana or any customers that may reside in Indiana.

    (3)  The situs of the alleged injury is California

Nerds/Indiana has plead both hot and cold. To persuade this Court that Nerds/California is attempting to fraudulently procure a federal registration for its NERDS ON CALL mark, it plead that Nerds/California's use of its mark <u>is not</u> in interstate commerce (required for federal registration purposes) and that its use is restricted to Northern California. Dkt. 1 at ¶¶ 22, 24, 27, Count IX (Fraud). In the very next breath, however, Nerds/Indiana plead that Nerds/California <u>is</u> using the mark in interstate commerce and, specifically, that Indiana law proscribes Nerds/California's use of the mark. Dkt. 1 at ¶¶ 52, 53, 57, 58, 64, 69.

While alternative pleading is acceptable under Rule 8(d)(3), because Nerds/Indiana was required to make a prima facie case that Nerds/California purposefully availed itself of the laws of Indiana, it was required to first elect which of these two contradictory allegations is true. For jurisdictional inquiry purposes, this Court cannot presume that Nerds/California is both using its NERDS ON CALL mark in interstate commerce and not using the mark in interstate commerce, nor can it presume the truth of one allegation over the other. The only legally-permissible reconciliation is that Nerds/California's use of its mark is restricted to Northern California *and* that such use is in interstate commerce. See, discussion at pp. 4-5 (use of a trademark in one state can suffice as interstate commerce).

Two consequences flow from this finding: (1) the situs of the alleged injury is in Northern California, and (2) the proper forum for this dispute is a federal court in Northern California.

As Nerds/Indiana accurately notes, without an injury there is no tort, and because a wrong does not become a tort until an injury has occurred, the location of the injury is essential

to an understanding of where the tort occurred. Dkt. 35 at p.11, note 3 (citing *Janmark, Inc. v. Reidy,* 132 F.3d 1200, 1202 (7th Cir. 1997)). So, if Nerds/California is only using its mark in Northern California that is where the trademark injury—and the alleged torts—must be occurring. Because those alleged wrongs are occurring outside Indiana, however, Nerds/Indiana was required to at least allege a link between those wrongs and Indiana and some effect that occurred in this supposedly proper forum. Nerds/Indiana made no such link nor any such allegations.

The case of *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship,* 34 F.3d 410 (7th Cir. 1994) does not compel a different result. The Seventh Circuit in *Indianapolis Colts* exercised personal jurisdiction over the defendant on the reasoning that:

> [I]n all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property ... was upheld, the defendant *had done more than brought about an injury to an interest located in a particular state.* The defendant had also 'entered' the state in some fashion, as by the sale (in *Calder*) of the magazine containing the defamatory material. *Well, we have that here too, because of the broadcasts, so we needn't decide whether the addition is indispensable.*

*Id.* at 412 (emphasis added). So *Indianapolis Colts* does <u>not</u> stand for the proposition that a court may properly exercise personal jurisdiction over a defendant merely because the injury to the plaintiff trademark owner's rights occurs in that particular forum—it is also necessary that the defendant "enter" that state in some fashion.[16] Because Nerds/California has not entered Indiana, either physically or via its website, *Indianapolis Colts* is distinguishable.

## II. <u>Venue</u>

Federal trademark law, set out at 15 U.S.C. section 1051 through 1127, does not contain a venue provision. Nerds/Indiana alleged in its complaint that venue is proper in this Court under

---

[16] Consistent with *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985), discussed supra at p.13.

15

28 U.S.C. §1391. Dkt. 1 at ¶8. In its opposition to the instant motion, Nerds/Indiana argues more specifically that venue is proper under 28 U.S.C. §1391(b)(2) because a substantial part of the events or omissions giving rise to its claim occurred in Indiana. Dkt. 35 at p.15.

Because a corporate defendant resides in every judicial district in which it is subject to personal jurisdiction, venue in each of those districts is proper. 28 U.S.C. §§1391(b) and (c).

If venue is improper, the court "<u>shall</u> dismiss, or if it be in the interest of justice, transfer such case to any district or division in which it could have been brought." 28 U.S.C. §1406(a) (emphasis added). See also, Rule 12(b)(3).

Venue is not proper in this judicial district because (1) Nerds/Indiana has not shown that this Court may exercise personal jurisdiction over Nerds/California,[17] and (2) Nerds/Indiana has not shown that a substantial part of the events giving rise to its claims occurred in Indiana.

As for the former, personal jurisdiction is lacking for all the reasons already discussed. As for the latter, Nerds/Indiana has certainly not shown—and cannot show—that the "events" it is complaining about, i.e., that Nerds/California has used NERDS ON CALL for the last four years to brand the services it has provided to its many customers in Northern California, (Dkt. 1 at ¶¶22, 23, 24, 27), substantially occurred in Indiana. It is undisputed that the services provided under the allegedly infringing mark <u>all</u> took place in California—notwithstanding Nerds/Indiana's conclusory allegation that "[p]laintiff has suffered the effects of Defendants' tortuous conduct in Indiana." Dkt. 35 at p.15 (<u>quoting</u> the declaration by the Nerds/Indiana owner).

### III. <u>Transfer</u>

Nerds/Indiana strenuously argues it has been wronged by Nerds/California, is entitled to enhanced monetary damages, that the right to use NERDS ON CALL is hotly disputed, and that irreparable injury will occur if the dispute is not resolved. Dkt. 1; Dkt. 35.

---

[17] Nerds/California does not distinguish Defendant Ryan Eldridge, an officer and principal shareholder of Defendant Nerds On Call, Inc., from the company in their joint argument against the exercise of specific personal jurisdiction over them both.

For its part, Nerds/California has counterclaimed seeking declarations that it has not infringed Nerds/Indiana's trademark rights in NERDS ON CALL, has not engaged in unfair competition, and that the appropriate district court should declare under 15 U.S.C. section 1199 the concurrent rights of the parties to use NERDS ON CALL and issue an Order to the Trademark Office to grant such a registration.[18]  Dkt. 32.

Defendants Nerds On Call, Inc. and Ryan Eldridge concede that each is subject to the personal jurisdiction of the United States District Court for the Eastern District of California because each is a resident of that judicial district and each routinely engages in business in that judicial district.  Both also concede that venue is appropriate in that judicial district.

Should this Court conclude that it cannot exercise personal jurisdiction over Nerds/California or that venue is improper in this district, the Court must either (1) dismiss the action entirely (including Nerds/California's claims) or (2) transfer the action to the Eastern District of California.  Rule 12(b)(2); *Goldlawr, Inc. v. Heiman*, 369 U.S. 463, 466-67 (1962) (court need not have personal jurisdiction over a defendant to transfer, rather the court may order transfer so that jurisdiction may be established in the transferee court.); 28 U.S.C. §1406(a); *Continental Ins. Co. v. M/V Orsula*, 354 F.3d 603, 607-08 (7th Cir. 2003).

In light of Nerds/Indiana's allegations of the harms it is suffering, the ongoing nature of the dispute between the parties, and Nerds/California's counterclaims, it would be <u>reasonable</u> to transfer this action to the Eastern District of California.  Nerds/California does not oppose that transfer.

**IV.  Conclusion**

Nerds/California has no offices, employees, property, customers, or vendors in Indiana.  Dkt. 16-1 at ¶¶ 8-17.  Nerds/California does not have an Indiana phone number, has never paid taxes in Indiana, has never applied for nor received a business license in Indiana, and is not qualified to do business in Indiana.  *Id.*  Nerds/California has never entered into a contract in

---

[18] Nerds/California denied in its Answer that it is subject to suit in this Court and filed its Answer and Counterclaims subject to all of its affirmative defenses.  Dkt. 32.

17

Indiana nor targeted any advertising to Indiana and, in any event, cannot provide any of its services in Indiana. *Id.*

As for Nerds/Indiana's arguments: (1) Nerds/California's federal trademark registration application is not a "contact" in Indiana and, in fact, expressly excepts Indianappolis, Indiana from its sought-after protection, (2) Nerds/California's website does not evidence that the company has purposefully availed itself of the protections provided by this forum's laws, and (3) while no "effects" were even identified, if there are any effects caused by Nerds/California's use of NERDS ON CALL those effects must be felt in Northern California, not Indiana.

Nerds/Indiana has not satisfied its burden to make a prima facie showing that this Court can properly assert specific personal jurisdiction over Nerds/California. For the reasons provided, Nerds/California respectfully requests that its motion to dismiss this action be granted or, in the alternative, that this action be transferred to the Eastern District of California.

DATED: January 29, 2007			SOMMER BARNARD, PC

							By:  /s/ JONATHAN POLAK
								Jonathan Polak

							Jonathan Polak, IN Bar #21954-49
							Sommer Barnard, PC
							One Indiana Square, Suite 3500
							Indianapolis, IN 46204
							Telephone: (317) 713-3500
							Fax: (317) 713-3699

							Attorney for Defendants Nerds On Call, Inc.
							and Ryan Eldridge

## CERTIFICATE OF SERVICE

The undersigned hereby certifies that a copy of the foregoing was filed electronically on January 29, 2008. Notice of this filing will be sent to the following counsel by operation of the Court's electronic filing system.

Theodore J. Minch
tjminch@sovichminch.com

/s/ JONATHAN POLAK
Jonathan Polak

722973_1