UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

NERDS ON CALL, INC. (INDIANA), )
)
        Plaintiff, )
)
v. ) CASE NO. 1:07-cv-0535-DFH-TAB
)
NERDS ON CALL, INC. (CALIFORNIA), )
and RYAN ELDRIDGE, )
)
        Defendants. )

ENTRY ON DEFENDANTS' MOTION TO DISMISS

Both sides to this lawsuit provide on-site technical support to consumers and businesses for their computers and networks. Both parties use the NERDS ON CALL trademark. Plaintiff Nerds on Call, Inc. (Indiana) ("Nerds/Indiana") operates out of Indianapolis, Indiana. Defendants Nerds on Call, Inc. (California) ("Nerds/California") and Ryan Eldridge operate out of northern California. Although they provide similar services and use the same trademark, the two companies are completely separate and unrelated entities. Nerds/Indiana seeks relief against Nerds/California and Eldridge, alleging that Nerds/Indiana has prior and superior rights to the NERDS ON CALL trademark.[1]

---

[1]In keeping with trademark convention, the fully capitalized NERDS ON CALL refers to the trademark used by both companies and not to either specific company.

Nerds/California has moved to dismiss for lack of personal jurisdiction, improper venue, and insufficient service of process. In the alternative, Nerds/California has requested transfer to the Eastern District of California. As explained below, this court has personal jurisdiction over Nerds/California under the Seventh Circuit's interpretation of the "effects" test, venue is proper, and the imperfect service of process was sufficient under Indiana law because it was reasonably calculated to provide, and did provide, timely and actual notice of the proceedings without prejudice to defendants' interests. Transferring this case to the Eastern District of California would merely shift the inconvenience of litigation from one side to the other. Accordingly, Nerds/California's motion to dismiss is denied, as is its alternative request for transfer.[2]

*Relevant Facts*

Since 1995, Nerds/Indiana has used the NERDS ON CALL trademark in the business of providing on-site technical support to consumers and businesses. Bouchonnet Decl. ¶ 5. Nerds/Indiana's principal place of business during this time has been in or near Indianapolis. *Id.*, ¶ 3. In December 2005, Nerds/Indiana incorporated and filed with the Indiana Secretary of State as Nerds on Call, Inc. *Id.* (Nerds/Indiana previously used the name DocTR, Inc. See Minch Decl. Ex. A-4.)

---

[2]Nerds/California originally filed a "Motion to Dismiss" that made no mention of transfer. The issue of transfer was first raised (and fully argued) by Nerds/Indiana in its response. Nerds/California requested transfer in its reply. Both parties have had an opportunity to argue the issue.

In 2002, Nerds/California began operations as Internet Billing Services. Eldridge Decl. ¶ 2. According to Nerds/Indiana, in March 2004 Nerds/California began using the NERDS ON CALL trademark in the business of providing on-site technical support to consumers and businesses. Bouchonnet Decl. ¶ 9. Nerds/California operates a several-page web site at www.callnerds.com. That website contains some trouble-shooting information for common technical problems and allows users of the website to contact Nerds/California to seek more information or to request service. Bouchonnet Decl. Ex. B-1. All physical addresses displayed on www.callnerds.com are located in California. *Id.* The website bears the NERDS ON CALL trademark and lists a copyright date of 2004. *Id.* In December 2005, Nerds/California changed its corporate name on file with the California Secretary of State to Nerds on Call, Inc. Eldridge Decl. ¶ 2.

In mid-2004, Nerds/Indiana became aware that Nerds/California was also using the NERDS ON CALL trademark. Minch Decl. ¶ 6. In November 2004, Nerds/Indiana contacted Nerds/California and demanded that it cease and desist use of the trademark. *Id.* Nerds/California did not immediately respond to that letter. *Id.*

Shortly after receiving Nerds/Indiana's cease and desist letter, Nerds/California filed a federal trademark application for NERDS ON CALL. Minch Decl. Ex. A-2. The federal trademark application claimed use in connection with "in-home & on-site computer repair, set up and upgrades; hardware &

software installation; wired & wireless networking; computer diagnostics." *Id.* The application also claimed first use of the trademark, both anywhere or "in commerce," at least as early as March 2004. *Id.*[3]

In January 2005, Nerds/Indiana again contacted Nerds/California regarding the concurrent use of the NERDS ON CALL trademark. *Id.*, Ex. A-4 n.1. The parties were unable to reach an agreement.

More than two years later, in March 2007, Nerds/Indiana filed with the Trademark Trial and Appeal Board an opposition to Nerds/California's federal registration. *Id.*, Ex. A-3. Nerds/California did not answer that opposition, and in July 2007 the registration was terminated on default judgment. *Id.*

In April 2007, Nerds/Indiana filed this lawsuit against Nerds/California in the Southern District of Indiana. The complaint listed nine causes of action under federal and state law, including trademark infringement, unfair competition, false

---

[3]Nerds/Indiana suggests that Nerds/California was inconsistent (or worse) by claiming use of the trademark in interstate commerce in the trademark applications, while also claiming during a pre-trial conference that the trademark was only used within California. Minch Decl. ¶ 4. This suggestion appears unfounded. The phrases "in commerce" and "use in commerce" are terms of art in federal trademark law. The Lanham Act defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. The federal Commerce Clause has an expansive reach, regulating numerous activities that take place within one state but that affect commerce between the states. See generally *Raich v. Gonzales*, 545 U.S. 1, 9 (2005) (Congress may regulate non-commercial intrastate growth and use of marijuana for medical purposes). A trademark used within a single state can be used "in commerce" for purposes of the Lanham Act. *E.g., Coca-Cola Co. v. Stewart*, 621 F.2d 287, 290 (8th Cir. 1980).

advertising, and conversion. All nine claims are based on Nerds/California's use of the NERDS ON CALL trademark.

In July 2007, while the trademark registration opposition was pending in the Trademark Trial and Appeals Board and the complaint was pending in this court, Nerds/California filed another federal trademark application for NERDS ON CALL. Minch Decl. Ex. A-1. This application was for use in connection with "installation, maintenance and repair of computers for homes and businesses." *Id.* The application requested registration throughout the entire United States, save for the state of Maryland, the District of Columbia, and a fifty mile radius around Indianapolis, Indiana. *Id.* The application claimed first use of the trademark, both anywhere or "in commerce," at least as early as March 2004. *Id.*[4]

Later in July 2007, Nerds/Indiana filed two federal trademark applications of its own for NERDS ON CALL. These applications were for use in connection with a number of technology services, including "installation, maintenance and repair of computer and Internet systems for home and business." The applications claimed first use of the trademark, both anywhere or "in commerce," at least as early as January 1995.

---

[4]According to Nerds/California, an unrelated third party uses the name and/or the trademark COMPUTER NERDS ON CALL within Maryland and the District of Columbia. Def. Reply at 5 n.7.

In mid-August 2007, Nerds/Indiana mailed the complaint and summons via certified mail to Nerds/California. Copies were mailed to Mr. Eldridge at his place of business and to Nerds on Call, Inc. (California) via the company's trademark counsel. Dkt. Nos. 7, 8. Both mailings were signed for and were apparently forwarded to the relevant parties. Both Mr. Eldridge and Nerds on Call, Inc. (California) appeared by counsel in this action in September 2007. Dkt. No. 9.

Nerds/California and Eldridge assert that all of their business contacts and dealings are in California, that they have no present or previous business contacts with Indiana, that they have undertaken no activities relative to Indiana, and that the only possible connection with Indiana is that Mr. Eldridge's father might have been born in the state. Eldridge Decl. ¶¶ 8-18, 24-32. Nerds/Indiana asserts that it has suffered in Indiana the effects of Nerds/California's allegedly wrongful conduct. Bouchonnet Decl. ¶ 10. Additional facts are noted below as needed.

*Standards of Review*

Nerds/California and Eldridge have moved to dismiss for lack of personal jurisdiction pursuant to Federal Rule of Civil Procedure 12(b)(2). Without an evidentiary hearing on this issue, Nerds/Indiana need only make a prima facie showing that Nerds/California and Eldridge are subject to personal jurisdiction here, and Nerds/Indiana is entitled to the benefit of its allegations and any conflicts in evidentiary submissions. See *Purdue Research Found. v.*

*Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The absence of factual allegations in the original complaint to support personal jurisdiction does not matter. Such allegations are not required, but the motion to dismiss puts the burden on Nerds/Indiana to show that personal jurisdiction is proper. *Id.*[5]

Defendants have also moved to dismiss for improper venue pursuant to Federal Rule of Civil Procedure 12(b)(3). In ruling on a motion to dismiss under Rule 12(b)(3), the court follows the same standard as for a Rule 12(b)(2) dismissal, taking all the allegations in the complaint as true unless contradicted by the defendants' affidavits. *Turnock v. Cope*, 816 F.2d 332, 333 (7th Cir. 1987). The court resolves all factual conflicts and draws all reasonable inferences in the plaintiff's favor. *Id.* Nerds/Indiana bears the burden of establishing that the venue it has chosen is proper. *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969).

Defendants have also moved to dismiss for insufficient service of process under Federal Rule of Civil Procedure 12(b)(5). Under Rule 4(e)(1) and (h)(1)(A) of the Federal Rules of Civil Procedure, service of process that complies with Indiana law is sufficient for this case. Under Indiana law, defendants have has the burden

---

[5]In a footnote to its reply brief, Nerds/California requested a hearing in the event that Nerds/Indiana's declarations create disputed facts. Def. Reply 4 n.5. As explained below, personal jurisdiction here is founded on the Seventh Circuit's interpretation of the "effects" test. It is undisputed that Nerds/Indiana operates within Indiana so that the effects of the alleged wrongful conduct would be felt in Indiana, within the meaning of the effects test.

of showing that service of process was insufficient. See *Eaton v. Rickert*, 240 N.E.2d 821, 824 (Ind. 1968).

Finally, defendants have requested in the alternative a transfer to the Eastern District of California. A party seeking transfer under 28 U.S.C. § 1404(a) has the burden of establishing that the receiving forum "is clearly more convenient" than the originating forum. *Coffey v. Van Dorn Iron Works*, 796 F.2d 217, 219-20 (7th Cir. 1986).[6]

---

[6]There are two principal transfer statutes for civil cases, 28 U.S.C. § 1404(a) and 28 U.S.C. § 1406(a). Section 1404(a) governs situations where venue is proper in both the originating and receiving districts. Section 1406(a) applies when venue in the originating district is improper. See *Willis v. Caterpillar Inc.*, 199 F.3d 902, 905 (7th Cir. 1999). Because venue is proper in this district, as explained below, section 1404(a) is the relevant transfer statute.

*Discussion*

I.   *Personal Jurisdiction*

A federal district court has personal jurisdiction over a non-resident defendant if a court of the state in which it sits would have such jurisdiction. *Purdue Research*, 338 F.3d at 779; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997).  In Indiana, personal jurisdiction depends on whether the requirements of the state long-arm statute are met and whether federal due process requirements are satisfied.  *Purdue Research*, 338 F.3d at 779; *Brockman v. Kravic*, 779 N.E.2d 1250, 1255 (Ind. App. 2002).

Indiana Trial Rule 4.4(A) serves as Indiana's long-arm statute.  It provides that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States."  Both parties agree that Indiana's long-arm statute is co-extensive with the limits of federal due process, so the court applies federal due process standards.  See, *e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 469-70 (1985).

Due process requires that a non-resident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945), quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940).  Personal jurisdiction under Indiana Trial Rule 4.4(A) and the

due process clause may be either general or specific. *Alpha Tau Omega v. Pure Country, Inc.*, 185 F. Supp. 2d 951, 956 (S.D. Ind. 2002); see also *Anthem Insurance Cos. v. Tenet Healthcare Corp.*, 730 N.E.2d 1227, 1239-40 (Ind. 2000) (finding one defendant's business contacts sufficient to establish general jurisdiction). General jurisdiction makes a non-resident defendant amenable to suit within a particular forum, regardless of the subject matter of the suit, based on the defendant's continuous and systematic contacts with the forum. See *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414-16 (1984). Nerds/Indiana does not contend that Nerds/California should be subject to general jurisdiction in Indiana.

Specific jurisdiction over these defendants is available in this case, however. Evidence that a non-resident defendant has acted outside the forum state with the intent or plan to cause harmful effects within the forum state will ordinarily support personal jurisdiction in the forum state. See *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship*, 34 F.3d 410, 411-12 (7th Cir. 1994), citing *Calder v. Jones*, 465 U.S. 783 (1984) (holding that state in which victim of defendant's defamation lived had jurisdiction over defamation suit); see also *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (occurrence of foreseeable tort injury in the forum, standing alone, was sufficient for personal jurisdiction).

Nerds/Indiana has alleged that Nerds/California has knowingly and intentionally used the NERDS ON CALL trademark within the Southern District of Indiana, injuring Nerds/Indiana's goodwill and reputation in the NERDS ON CALL trademark. Bouchonnet Decl. ¶ 10. If Nerds/California has intentionally infringed Nerds/Indiana's trademark (which the court must assume at this stage in the litigation), the injury to goodwill and reputation would occur within the Southern District of Indiana, where Nerds/Indiana operates. The alleged effects of that alleged intentional infringement support the exercise of specific personal jurisdiction over Nerds/California in Indiana. See *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 1998 WL 207860, 1998 U.S. Dist. LEXIS 8128 (C.D. Ill. April 1, 1998) (following *Janmark* and finding allegation of trademark infringement causing harm in forum state, standing alone, sufficient to satisfy effects test).[7]

Even where minimum contacts are present, a defendant can escape jurisdiction by making a compelling case that forcing it to litigate in the forum state would be so unreasonable as to violate traditional notions of fair play and substantial justice. *Burger King*, 471 U.S. at 477; *Logan Productions, Inc. v. Optibase, Inc.*, 103 F.3d 49, 53 (7th Cir. 1996). In making this determination, courts are to consider: (1) the burden on the defendant; (2) the forum state's

---

[7]The holdings of *Indianapolis Colts, Janmark* and *Bunn-O-Matic* have been criticized by other courts, which have held that something more than mere effects should be required under *Calder*. See, *e.g.*, *Pavlovich v. Superior Court*, 58 P.3d 2, 9 (Cal. 2002) (criticizing *Janmark* and noting division among federal circuits). *Indianapolis Colts* and *Janmark* are binding precedent upon this court and must be followed.

interest in adjudicating the dispute; (3) the plaintiff's interest in obtaining the most efficient resolution of the controversies; (4) the interstate judicial system's interest in obtaining the most efficient resolution of controversies; and (5) the shared interest of the several states in furthering fundamental substantive social policies. *Burger King*, 471 U.S. at 466-67.

In evaluating the burden on the defendants, the court finds the defendants' second application to register the NERDS ON CALL trademark particularly relevant. Nerds/California asserts the right to exclusive use of the trademark throughout the United States, excepting only the District of Columbia and Maryland, and an area within a 50-mile radius of Indianapolis. The excluded area around Indianapolis excludes only a fraction of the Southern District of Indiana and the larger State of Indiana. In other words, although Nerds/California says it is not now using the trademark anywhere in Indiana, Nerds/California is now asserting and seeking federal recognition of an exclusive right to use the trademark in most of the State of Indiana and most of the Southern District of Indiana. Since Nerds/California is now asserting that right to exclusive use of the mark in this jurisdiction, it does not seem unfair or unduly burdensome to expect it to litigate that issue in the jurisdiction where Nerds/California seeks to establish that exclusive right.

In addition, Indiana has a significant interest in adjudicating the dispute over the use of the trademark within Indiana. The other factors identified in

*Burger King* are essentially neutral. Under the effects test as interpreted in *Indianapolis Colts* and *Janmark,* personal jurisdiction over Nerds/California is consistent with the federal due process clause. Because personal jurisdiction exists under the Seventh Circuit's interpretation of the "effects" test, it is unnecessary to consider the more involved question of whether Nerds/California's operation of www.callnerds.com confers personal jurisdiction over Nerds/California in Indiana. [8]

II.     *Venue*

Nerds/California also contends that the complaint must be dismissed under Rule 12(b)(3) because venue is improper. In cases asserting claims arising under federal law, 28 U.S.C. § 1391(b) governs venue. The plaintiff has the burden of establishing proper venue. *Grantham v. Challenge-Cook Bros., Inc.*, 420 F.2d 1182, 1184 (7th Cir. 1969).

In a case arising under federal law, venue is proper in any district where a defendant resides if all defendants reside in the same state. 28 U.S.C. § 1391(b)(1). For purposes of venue, a defendant corporation is considered to reside in any district in which it is subject to personal jurisdiction. 28 U.S.C.

---

[8]The court's discussion of jurisdiction over the corporation applies equally to defendant Eldridge because the allegations of wrongful conduct apply equally to him. See *KnowledgeAZ, Inc. v. Jim Walter Resources, Inc.*, 452 F. Supp. 2d 882, 898 (S.D. Ind. 2006) (denying individual defendant's motion to dismiss where plaintiff alleged the defendant had personally participated in wrongdoing causing harm in Indiana).

§ 1391(c). That rule does not apply to defendant Eldridge. Nevertheless, venue over both defendants is proper in Indiana under section 1391(b)(2), which authorizes venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." See *Indianapolis Colts*, 34 F.3d at 412 (after holding that personal jurisdiction was available in Indiana for alleged trademark violations, it was "as clear or clearer that venue is proper in Indiana").

III.  *Service of Process*

Defendants also contend that the complaint must be dismissed under Rule 12(b)(5) because service of process was insufficient as to both defendants. Rule 4(e)(1) allows a defendant to be served with process pursuant to the law of the state in which the district court is located.

A.  *Service of Process Upon Eldridge*

Indiana Trial Rule 4.1(A)(1) provides that an individual may be served by certified mail to his or her residence or place of business or employment, so long as a receipt shows that the documents were received. The individual defendant does not need to sign the certified mail receipt himself, *Precision Erecting, Inc. v. Premier Auto Acceptance Corp.*, 638 N.E.2d 472, 474 (Ind. App. 1994), but the individual signing the receipt of service must be authorized to do so. *LaPalme v. Romero*, 621 N.E.2d 1102, 1106 (Ind. 1993). Indiana Trial Rule 4.15(F) provides that service of process should not be set aside as insufficient so long as service

was reasonably calculated to inform the defendant that a lawsuit has been filed. Indiana Trial Rule 4.15(F) is consistent with Indiana's policy of resolving cases on the merits where possible. See, *e.g.*, *Coslett v. Weddle Bros. Constr. Co.*, 798 N.E.2d 859, 861 (Ind. 2003) (affirming decision to set aside default judgment); *State v. Van Keppel*, 583 N.E.2d 161, 162 (Ind. App. 1991) (reversing denial of motion to set aside default judgment).

Nerds/Indiana attempted service of process upon Ryan Eldridge by sending the complaint and summons to his place of employment. Dkt. No. 8. Mr. Eldridge did not sign for the delivery, but one Erin Carrino did. *Id.* Erin Carrino was a recently-hired clerk, and she had no authority to sign for Mr. Eldridge's mail. Eldridge Decl. ¶¶ 34-37. Nerds/Indiana does not appear to have attempted any other service of process upon Mr. Eldridge.

Assuming that Ms. Carrino lacked authority to sign for Mr. Eldridge, Indiana's specific requirements for service under Trial Rule 4.1(A)(1) were not met. See *Robinson*, 886 F. Supp. at 1455-57 (person signing for service by certified mail must have authority to sign). However, Indiana Trial Rule 4.15(F) provides that service of process should not be set aside as insufficient so long as service was reasonably calculated to inform the defendant that a lawsuit has been filed. Sending service of process to a defendant's place of employment, directed to his attention, appears to be reasonably calculated to inform the defendant that a lawsuit has been filed. Mr. Eldridge became aware of the lawsuit and responded

promptly to it by retaining counsel in Indiana.  Under Indiana Trial Rule 4.15(F), any deficiency in service of process due to the happenstance of who signed the certified mail receipt (a matter outside of Nerds/Indiana's control) should not lead to dismissal, at least where Mr. Eldridge received actual notice of the lawsuit and suffered no prejudice from Ms. Carrino's role.

### B. *Service of Process Upon Nerds on Call, Inc. (California)*

Indiana Trial Rule 4.6(A)(1) provides that service of process upon a corporation may be made via an executive officer or a registered agent of the corporation.  Nerds/Indiana attempted service of process upon Nerds on Call, Inc. (California) by sending the complaint and summons to Daniel Ballard of the law firm Bullivant House Bailey.  Dkt. No. 7.  Mr. Ballard is Nerds/California's Sacramento-based trademark counsel, and Nerds/Indiana had been in contact with Mr. Ballard throughout the pre-litigation years of the dispute.  Minch Decl. ¶ 8. Mr. Ballard is not the registered agent of Nerds on Call, Inc. (California), and Nerds/California denies that Mr. Ballard had authority to accept service of process. Eldridge Decl. ¶ 22.  Nerds/Indiana does not appear to have attempted any other service of process upon Nerds on Call, Inc. (California).

Indiana's formal requirements for service of process in Trial Rule 4.6(A)(1) were not met.  Mr. Ballard was not a registered agent of Nerds on Call, Inc. (California), and service of process was not sent to Nerds on Call, Inc. (California)

via an executive officer. However, Indiana Trial Rule 4.15(F) again saves Nerds/Indiana. It was not unreasonable to believe that a defendant's trademark counsel would forward a trademark-based complaint and summons on to his or her client, at least where the attorneys had been dealing with one another for some time in the disputed matter, as was the case here. Additionally, the corporation's vice president, Mr. Eldridge, received a copy of the complaint and summons, even if the documents were addressed to him personally and not to the corporation. Given these circumstances, Indiana's preference for resolution on the merits, and the absence of any prejudice to Nerds/California, the court declines to dismiss the case on the basis of insufficient service of process.

IV. *Transfer*

Finally, Nerds/California contends in the alternative that this court should transfer the case to the Eastern District of California under 28 U.S.C. §1404(a), which governs transfer between district courts when both the originating court and the receiving court are proper venues. See *Willis v. Caterpillar, Inc.*, 199 F.3d 902, 905 n.4 (7th Cir. 1999). Venue is proper in the Southern District of Indiana. Both defendants reside in the Eastern District of California, which would also be a proper venue.

A party seeking transfer under section 1404(a) has the burden of establishing that the receiving forum "is clearly more convenient" than the

originating forum. *Coffey*, 796 F.2d at 219-20. Numerous factors, revolving around the private interests of the parties and the public interests of the court and the interests of justice are relevant when determining whether to grant transfer. See, *e.g.*, *IFC Credit Corp. v. Eastcom, Inc.*, 2005 U.S. Dist. LEXIS 279, *4 - *5 (N.D. Ill. 2005) (listing numerous specific factors to be considered). Merely shifting inconvenience from one side to another does not warrant a transfer. *E.g.*, *Moore v. AT&T Latin Am. Corp.*, 177 F. Supp.2d 785, 789 (N.D. Ill. 2001), citing *Promatek Med. Sys., Inc. v. Ergometrics, Inc.*, 1990 WL 19491, at *4 (N.D. Ill. Feb.15, 1990); accord, *Worldwide Financial LLP v. Kopko*, 2004 WL 771219, *2 (S.D. Ind. March 18, 2004); *Educational Visions, Inc. v. Time Trend, Inc.*, 2003 WL 1921811, at *7 (S.D. Ind. April 17, 2003) (denying motion to transfer that would have merely shifted inconvenience between parties).

Defendants' principal argument for transfer is that personal jurisdiction is lacking in the Southern District of Indiana, but the court has disagreed, as explained above. Defendants have not shown any other basis for transfer, such as easier access to relevant proof, the convenience of non-party witnesses, or relative congestion of court dockets. It would be more convenient for defendants to litigate in California, but that is not a persuasive basis for transfer under section 1404(a). Defendants have not identified any non-party witnesses who would be more accessible in California than in Indiana. And recall that defendants are now seeking the exclusive right to use the NERDS ON CALL trademark throughout much of the Southern District of Indiana. It would not be

contrary to the interests of justice to resolve in this jurisdiction this dispute between these parties over priority of trademark rights in territory that includes this jurisdiction.

*Conclusion*

For the reasons stated above, the court hereby denies defendants' Motion to Dismiss and alternative request for transfer.

So ordered.

Date: May 27, 2008

_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Theodore John Minch
SOVICH MINCH LLP
tjminch@sovichminch.com

Jonathan G. Polak
TAFT STETTINIUS & HOLLISTER LLP
jpolak@taftlaw.com

Trent J. Sandifur
TAFT STETTINIUS & HOLLISTER LLP
tsandifur@taftlaw.com