UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NERDS ON CALL, INC. (INDIANA),<br><br>Plaintiff,<br><br>vs.<br><br>NERDS ON CALL, INC. (CALIFORNIA)<br>and RYAN ELDRIDGE,<br><br>Defendants. | Case No.: 1:07-cv-0535-DFH-TAB |

## MEMORANDUM IN SUPPORT OF REQUEST FOR RECONSIDERATION OR CERTIFICATION FOR INTERLOCUTORY APPEAL

Defendants Nerds on Call, Inc., and Ryan Eldridge (collectively "Nerds/California") respectfully request that the Court reconsider its ruling denying Nerds/California's motion to dismiss.  Should the Court choose not to reconsider its ruling, or should it conclude the ruling was correct, Nerds/California requests that the Court certify its ruling for interlocutory appeal.

## INTRODUCTION

In denying the motion the Court made a manifest error of law by holding that the minimum contacts necessary to exercise specific jurisdiction over Nerds/California exist solely by application of the *Calder* "effects test" even though Nerds/California has literally <u>no</u> physical contacts in or with Indiana, has not "purposefully directed" any of its activities to Indiana residents, nor has entered Indiana directly or indirectly by placing its computer services in the stream of commerce.[1]

The controlling rule—even under the Seventh Circuit's interpretation of specific jurisdiction under the *Calder* effects test—is that a defendant must have minimum contacts with Indiana before this Court can assert jurisdiction over the defendant.  Ignoring that prerequisite, as the Court has done in this case, impermissibly grants plaintiffs in the Seventh Circuit the right to

---

[1]     Nerds/California requests reconsideration of only that portion of the Order holding that the Court may properly assert specific jurisdiction under the *Calder* effects test.  See, Order at Dkt. 47 at 7, n.5.

hale <u>any</u> defendant into this Court based solely on a bare assertion that the alleged tort caused an "effect" in this forum.

The Seventh Circuit has <u>not</u> extended *Calder* that far—nor could it consistent with due process.  Nerds/California respectfully suggests that a more thorough reading of the controlling law compels the conclusion that this Court improperly extended the *Calder* effects test to the point of <u>completely</u> untethering it from the requisite minimum contacts analysis.

The Court's first error was its use of the *Calder* effects test as a replacement for a minimum contacts analysis rather than as a basis to justify the <u>exercise</u> of specific jurisdiction so as not to "offend the traditional notions of fair play and substantial justice."  In short, once minimum contacts are established, then—and only then—can the alleged "effects" in the forum be used to support the exercise of jurisdiction.

The Court's second error was its reliance on Plaintiff's allegation that Nerds/California "infringed" the mark being enforced.  Unlike the wrongful use of a copyright or a patent—where such use <u>anywhere</u> in the United States is an infringement—it is not an "infringement" of a trademark to use another's mark in an area of the country geographically remote from where the plaintiff uses its mark.  It is incorrect, therefore, to assume as true that (1) an "effect" is felt in the forum where the plaintiff trademark owner resides or (2) the defendant "purposefully directed" its activities toward that forum merely because the plaintiff alleges trademark infringement.[2]   There is no support in the controlling law for those assumptions.

## ARGUMENT

### I.    Motions for Reconsideration

The inherent power of courts, the common law, and Rule 54(b) of the Federal Rules of Civil Procedure all permit courts to review and revise their interlocutory orders prior to the entry

---

[2]      "Infringement," moreover, is a legal conclusion.  The Court <u>may</u> rightly assume as true the facts Plaintiff relies on to support its "infringement" allegation but it cannot assume as true the legal conclusion that infringement has occurred—that legal leap lands over the line into deciding the merits of the claim.

of final judgment.[3]  *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 817 (1988) (inherent power); *Young v. Murphy*, 161 F.R.D. 61, 62 (N.D.Ill. 1995) ("Rule 54(b) is the proper vehicle for a motion to reconsider ... [an] order [that] is interlocutory in nature."); *Ramada Franchise Systems, Inc. v. Royal Vale Hospitality of Cincinnati, Inc*., 2004 WL 2966948, *3 (N.D.Ill. 2004) ("[t]he Court need not decide whether Defendants are invoking the inherent authority of the Court, the common law, Rule 54(b), or all three ... [i]t is simply enough to note that some procedural ground supports Defendant's' motion" for reconsideration).

District Courts routinely apply to reconsideration motions the standard set by the Seventh Circuit in *Bank of Waunakee v. Rochester Cheese Sales, Inc*., 906 F.2d 1185, 1191 (7th Cir.1990).  *Id.*  Under that standard, "[a] motion for reconsideration performs a valuable function where the Court has ... made an error not of reasoning but of apprehension." *Bank of Waunakee v. Rochester Cheese Sales, Inc*., 906 F.2d 1185, 1191 (7th Cir.1990).  See also, *Rothwell Cotton Co. v. Rosenthal & Co*., 827 F.2d 246, 251 (7th Cir.1987) (explaining that reconsideration motions "serve a limited function; to correct manifest errors of law or fact or to present newly discovered evidence.") (quoting *Keene Corp. v. International Fidelity Insurance Co*., 561 F.Supp. 656, 665-66 (N.D.Ill.1976), *aff'd*, 736 F.2d 388 (7th Cir.1984)).

These two expressions of the test for reconsideration—i.e., the court committed an error "not of reasoning but of apprehension" or that it made a "manifest error of law"—are functionally the same.  Under either, Nerds/California respectfully submits that the Court has fundamentally misunderstood and misapplied the controlling law regarding specific jurisdiction.

## II.   Due Process Requires Minimum Contacts

### A.   Relevant Facts

Nerds/California uses its allegedly infringing NERDS ON CALL mark <u>only</u> in California.  Dkt. 1 at ¶¶22, 24, 27 (Plaintiff admitting that Nerds/California's use "remains

---

[3]      The denial of a motion to dismiss is an interlocutory order.  *Varitalk, LLC v. Lahoti*, 2007 WL 1805086, *1 (N.D.Ill. 2007).

restricted to an area of Northern California."). It is also uncontroverted that Nerds/California has literally <u>no</u> physical contacts in or with Indiana. See, Dkt. 41 at p.1, n.2.

The precise issue raised by this motion, then, is whether the Court may properly assert specific jurisdiction over Nerds/California based <u>solely</u> on Plaintiff's assertion that an "effect" is felt in Indiana when Nerds/California uses its NERDS ON CALL mark in California.

B.   <u>Minimum Contacts Are <i>Always</i> Required</u>

The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful contacts, ties, or relations. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 471-72 (1985) (internal quotations omitted). By requiring fair warning that an activity may subject an individual to the jurisdiction of a foreign sovereign, due process permits the person to structure his conduct with some assurance as to where that conduct will and will not render him liable to suit. *Id.*

The "constitutional <u>touchstone</u>" is whether the defendant purposefully established minimum contacts in the forum State. *Id.* at 474 (emphasis added and internal quotations omitted); *Purdue Research Foundation v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 780 (7th Cir. 2003). Specifically, "it is <u>essential</u> in each case that there be some act by which the defendant purposefully avails itself" of the privilege of conducting activities within the forum State. *Burger King*, 471 U.S. at 474-75 (emphasis added); *Purdue,* 338 F.3d at 780; *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir. 1985).[4] It is well-established, moreover, that specific jurisdiction requires not only minimum contacts, but also that the plaintiff's claims "arise out of" or "be related to" those contacts. *Helicopteros Nacionales de Columbia, S.A. v. Hall,* 466 U.S. 408, 414 (1984).

If courts could rest their assertion of specific jurisdiction solely on a plaintiff's allegation that the defendant's wrongful act caused an "effect" in the forum state, then the Supreme Court

---

[4]    See also, *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997) ("<u>Crucial</u> to the minimum contacts analysis is showing that the defendant should reasonably anticipate being haled into court in the forum State because the defendant has purposefully availed itself of the privilege of conducting activities there.") (internal quotations omitted and emphasis added).

4

would have said so in *Calder* and there would now be an alternative body of specific jurisdiction law under the Due Process Clause based solely on the alleged "effect" of various wrongs caused in the forum State.  There is no such alternative body of law and the *Calder* "effects test" is not a substitute for establishing minimum contacts.  The law remains that a defendant must have minimum contacts with the forum state. *Purdue,* 338 F.3d at 780; *Wallace v. Herron*, 778 F.2d 391, 395 (7th Cir.1985).

Moreover, the unilateral activity <u>of the plaintiff</u> cannot suffice to establish a defendant's minimum contacts. *Burger King*, 471 U.S. at 474-75 (emphasis added);  *Purdue,* 338 F.3d at 780.  It is <u>the defendant's</u> conduct that matters.  *Id.*   In this case, Plaintiff's use of its allegedly infringed NERDS ON CALL mark in Indiana is not relevant, therefore, when considering whether the Court can assert specific jurisdiction over Nerds/California.

In addition, minimum contacts are <u>not</u> satisfied simply because it is foreseeable that the defendant's conduct may cause an injury in another State. *Burger King*, 471 U.S. at 474; *Purdue,* 338 F.3d at 780.  Instead, "the foreseeability that is critical to due process analysis ... is that the defendant's conduct <u>and connection with the forum State</u> are such that he should reasonably anticipate being haled into court there." *Id.* (emphasis added).[5]  Even assuming, then, that a foreseeable "effect" may occur in Indiana due to Nerds/California's use of NERDS ON CALL in California, that is insufficient to hale Nerds/California into an Indiana courtroom absent Nerds/California also having minimum contacts with Indiana.

C.   Standard When Specific Jurisdiction Is Contested

To establish specific jurisdiction under the minimum contacts analysis, a plaintiff <u>must</u> show that the defendant (1) purposefully availed itself of the privilege of conducting activities within the forum state and (2) that the exercise of personal jurisdiction over that defendant would comport with traditional notions of fair play and substantial justice. *Jennings v. AC Hydraulic*

---

[5]    The portion of the Court's Order, therefore, characterizing *Janmark* as standing for the proposition that  the "occurrence of foreseeable tort injury in the forum, standing alone, was sufficient for personal jurisdiction" is not only inaccurate, it is directly <u>contrary</u> to long-held Supreme Court precedent. See, Order at Dkt. 47 at p.11.  As will be discussed, moreover, minimum contacts existed in *Janmark*.

5

*A/S*, 383 F.3d 546, 549 (7th Cir. 2004) (internal citations omitted).

The plaintiff, by a preponderance of the evidence, must make a prima facie showing that personal jurisdiction exists—which <u>requires</u> "presenting evidence of specific facts that, when taken as true, are sufficient to support a finding of personal jurisdiction" and <u>requires</u> that the plaintiff "go beyond the pleadings and make affirmative proof." *Andersen v. Sportmart, Inc.,* 57 F. Supp.2d 651, 654 (N.D.Ind. 1999) (internal quotations omitted); *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.,* 88 F.Supp.2d 914, 920 (C.D. Ill. 1998) (preponderance of evidence).

D.    <u>Alleging An "Effect" Is Not A Substitute For Minimum Contacts</u>

Nerds/California respectfully suggests to the Court that the *Calder* "effects test" is relevant in its specific jurisdictional inquiry only with regard to whether the Court's <u>exercise</u> of specific jurisdiction comports with "fair play and substantial justice"—it is not a substitute for analyzing whether a defendant has minimum contacts with the forum.

As the Supreme Court explains, "[o]nce it has been decided that a defendant purposefully established minimum contacts within the forum State, these contacts may be considered in light of other factors to determine whether the assertion of personal jurisdiction would comport with 'fair play and substantial justice.'" *Burger King*, 471 U.S. at 476-77. The Court then listed various factors relevant to the "fair play and substantial justice" prong of the analysis, observed that "[t]hese considerations sometimes serve to establish the reasonableness of jurisdiction upon a lesser showing of minimum contacts," and cited *Calder v. Jones*, 465 US 783 (1984) as one of a handful of cases holding that specific jurisdiction was appropriate upon a lesser showing of minimum contacts. *Id.*

The *Calder* "effects test" comes into play, then, only <u>after</u> the defendant's minimum contacts with the forum have been established and then only with regard to whether the exercise of jurisdiction would be appropriate. The Seventh Circuit agrees—as it must—and explains that the *Calder* effects test "is merely another way of assessing the defendant's relevant contacts with the forum State. The defendant must still purposefully avail [himself] of the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its

6

laws." *Wallace*, 778 F.2d at 395 (citing *Burger King*) (quotation omitted).[6]

### III.   "Effects Test" Case Law

The minimum contacts inquiry "turns on a particularized assessment of the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner,* 433 U.S. 186, 204 (1977). That analysis is fact-specific. *Honeywell, Inc. v. Metz Apparatewerke,* 509 F.2d 1137, 1144 (7th Cir 1975). Prior cases serve only as a guide. <u>No</u> case within the controlling law holds that an "effect" in the forum State—standing alone—is sufficient to justify asserting specific jurisdiction. In each case the defendant had relevant contacts with the forum State.

#### A.   *Calder*

Actress Shirley Jones brought suit in California claiming she was libeled in a *National Enquirer* article written by defendants residing in Florida. *Calder v. Jones*, 465 U.S. 783, 784. The vehicle causing Ms. Jones' harm unquestionably <u>entered</u> California. *Id.* at 784-85 (the article "was published in a national magazine with a large circulation in California"—at almost twice the level of distribution as any other State). Moreover, the defendants "intentional, and allegedly tortious, actions were <u>expressly aimed</u> at California" and "they knew that the brunt of that injury would be felt by respondent in the State in which she lives and works and in which the *National Enquirer* has its largest circulation." *Id.* at 788-89. In short, California was "the focal point both of the story and of the harm suffered." *Id.* The Supreme Court concluded that "<u>(u)nder the circumstances</u>, petitioners must 'reasonably anticipate being haled into court there' to answer for the truth of the statements made in their article." *Id.* at 789-90 (emphasis added).

*Calder* does <u>not</u>, therefore, stand for the proposition that an "effect" in the forum State is all that is required to properly hale a defendant into that State's courtrooms. Unlike the *Calder* defendants' article, Nerds/California has not entered Indiana in any way—such as by offering its

---

[6]      See also, *Purdue,* 338 F.3d at 780 (discussing the *Burger King* "fair play and substantial justice" factors and noting that "[w]hen the defendant's minimum contacts with the forum are relatively weak (<u>although existent</u>), these considerations may militate in favor of the exercise of jurisdiction.") (parenthetical in original and emphasis added); *Lincoln Diagnostics, Inc. v. Panatrex, Inc.,* 2008 WL 2246960, *14 (C.D.Ill., 2008) (collecting "effects test" cases and noting that minimum contacts must still be shown).

NERDS ON CALL computer services in that State—nor has it "expressly aimed" its business activities toward Indiana, such as through its website. Contacts such as these (if they existed) would be analogous to the contacts relied upon in *Calder*. They are, however, wholly lacking.

        B.     *Wallace*

An Indiana resident sued three California attorneys and a California law firm for malicious prosecution. *Wallace*, 778 F.2d at 392. The suit was filed in Indiana. *Id.* The Seventh Circuit held the defendants were <u>not</u> subject to personal jurisdiction in Indiana because none had sufficient minimum contacts with the State—even though one entered Indiana to conduct a deposition, discovery requests were sent to the plaintiff in Indiana and, while in Indiana, the plaintiff was forced to respond to five complaints. *Id.* at 394. The Court <u>rejected</u> plaintiff's argument that specific jurisdiction was appropriate under *Calder* because the effect of the defendants' conduct was felt in Indiana. *Id.*

Thoroughly evaluating *Calder* while reaffirming the "constitutional touchstone" of minimum contacts, the Court concluded that "<u>the key</u> to *Calder* is that the effects of an alleged intentional tort are to be assessed as part of the analysis of the defendant's relevant contacts with the forum." *Id.* (emphasis added). As Nerds/California argues here, the Court stated that "[w]e do not believe that the Supreme Court, in Calder, was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." *Id.*

In *Wallace*, the Seventh Circuit found that the "defendants' contacts with Indiana in this case are significantly more attenuated than the Calder defendants' contacts with California" and then—mindful of the *Burger King* teaching that the *Calder* effects test may justify the exercise of specific jurisdiction upon "a lesser showing of minimum contacts"—the Court nonetheless held that the defendants "took no action that created the necessary connection with Indiana for them to reasonably anticipate being haled into court there." *Id.* at 395. In short, the Court's approach to specific jurisdiction remained anchored to the "constitutional touchstone" of minimum contacts.

Nerds/California's <u>nonexistent</u> contacts with Indiana are even more attenuated than the *Wallace* defendants' contacts with Indiana. Like those defendants, Nerds/California has taken no action that would lead it believe it could be haled into an Indiana courtroom—the only nexus with this forum being that the Plaintiff happens to reside here.

      C.    *Indianapolis Colts*

The Seventh Circuit found jurisdiction in *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Partnership,* 34 F.3d 410, 412 (7th Cir.1994) (J. Posner). Directly contrary to this Court's characterization of the holding of the case, the Seventh Circuit <u>expressly</u> did not to find jurisdiction based solely on the effects of the alleged infringement being felt in Indiana. *Id.* at 412. In fact, immediately after positing that "the state in which the injury occurs is the state in which the tort occurs, and someone who commits a tort in Indiana should, one might suppose, be amenable to suit there" (citing *Calder*), the Seventh Circuit held that:

> We need not rest on so austere a conception of the basis of personal jurisdiction. In Calder as in all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property (when broadly defined to include reputation, so that it includes Calder itself) was upheld, the defendant had done more than brought about an injury to an interest located in a particular state. <u>The defendant had also "entered" the state in some fashion</u>, as by the sale (in Calder) of the magazine containing the defamatory material. Well, <u>we have that here too, because of the broadcasts, so we needn't decide whether the addition is indispensable.</u>

*Indianapolis Colts*, 34 F.3d at 412 (emphasis added). Far from finding jurisdiction based solely on the effect of the tort being felt in Indiana, the Seventh Circuit merely posited that result ("someone who commits a tort in Indiana should, one might suppose, be amenable to suit there"), characterized that finding as an "austere ... conception of the basis of personal jurisdiction," noted that <u>no</u> case of which it was aware had ever found jurisdiction solely on an effect being felt in the forum and that in every case the defendant had actually entered the forum, held that the defendant entered Indiana by way of it football game broadcasts in the State, and expressly chose <u>not</u> to decide (because it had no need to decide) whether specific jurisdiction

required the defendant's entry into the State via the broadcasts. *Id.*   The Court's holding that specific jurisdiction was proper was based on the defendant's entry into Indiana and the effect of that entry on the plaintiff in Indiana. *Id.*

The controlling principle from the case is that the Seventh Circuit remains tethered to the requirement that a defendant must enter the forum in some manner before a court may properly assert specific jurisdiction.  A district court strays far from this controlling law by following the *Indianapolis Colts* suggestion that a defendant's entry into the forum may not be required—a conception of specific jurisdiction that Judge Posner posited and then characterized as "austere."

Unlike the disputed COLTS trademark which was being used in Indiana via television broadcasts, Nerds/California does not use—and Plaintiff admits that Nerds/California does not use—its NERDS ON CALL trademark in Indiana.

> D.   *Janmark*

The Seventh Circuit also found jurisdiction in *Janmark, Inc. v. Reidy*, 132 F.3d 1200, 1202 (7th Cir. 1997) (J. Easterbrook).

> (i)   Summary

In *Janmark*, the defendant sold mini-shopping carts nationwide—including in the forum state of Illinois—which it claimed were protected by copyright. *Janmark,* 132 F.3d at 1202; *Id.* at 1203 (noting defendant's "shipment of some shopping carts into Illinois").[7]   The defendant threatened Janmark, Inc., a competitor in Illinois that also sold shopping carts nationwide, with copyright infringement claims and, when Janmark resisted, it then threatened Janmark's customers with contributory infringement claims. *Id.*[8]   The defendant's threats induced one

---

[7]    The Seventh Circuit's brief synopsis of the facts should be put in their proper context by using the district court's findings. See, *Janmark, Inc. v. Reidy*, 1997 WL 43203 (N.D.Ill. 1997).  The district court noted that Janmark alleged in its complaint that the defendant "promotes and distributes its Homeless Carts in this jurisdiction." *Id.* at *2.  Because this allegation is presumed true and was acknowledged by the Seventh Circuit, it is indisputable that the defendant "entered" Illinois in a very relevant way.

[8]    *Janmark,*, 1997 WL 43203, *1 (the defendant "made numerous telephone calls and faxes" to Janmark, Inc. in Illinois and "threatened to institute an infringement suit" unless Janmark, Inc. took a license to sell its mini-shopping carts.).  This conduct by the defendant, obliquely referenced by the Seventh Circuit, constitutes additional "contacts" with the State of Illinois.

such customer to cancel its orders with Janmark.  *Id.*

That cancellation led Janmark to file an interference with prospective economic advantage claim against the defendant and for a declaration that its shopping carts did not infringe defendants' copyright.  *Id.*  The defendant moved to dismiss on the ground that it was not subject to suit in Illinois.  In response to that argument, Janmark "observed that the reduction in [its] sales makes it poorer" due to the cancelled orders and that specific jurisdiction over the defendant was appropriate because the "effect" of that income loss was felt in Illinois.  *Id.*

The Seventh Circuit <u>disagreed</u> and explained that although a defendant's wrong may cause an income loss "effect" in the forum state that alone does not change the locus of the plaintiff's injury to the forum state.  *Id.* (stating that although Janmark's bank accounts in Illinois <u>would be</u> diminished if its shopping carts were pushed by the defendant into the ocean in New Jersey, that would <u>not</u> "relocate the tort from New Jersey to Illinois." ) (emphasis added).  The Seventh Circuit concluded that jurisdiction was appropriate nonetheless because the defendant's alleged tort was committed <u>in Illinois</u> when Janmark's customer cancelled its order.

(ii)    Analysis

Necessary for a proper understanding of *Janmark* is to recognize that the "effect" of the income loss on the plaintiff in the forum state—standing alone—did not substitute in the specific jurisdiction analysis for a finding that the alleged tort was committed in the forum state.

The *Janmark* defendant interfered with Janmark's prospective economic advantage <u>in Illinois</u> when it caused the Janmark customer in New Jersey to contact Janmark in Illinois and to cancel its orders for Janmark shopping carts made in Illinois.  *Id.* (no injury, and therefore no tort, occurred until the order was cancelled).  Like the *Calder* defendants, the *Janmark* defendant had contacts with the forum State,[9] its "intentional, and allegedly tortious, actions were expressly aimed" at the forum State, and it "knew that the brunt of that injury would be felt by respondent

---

[9]    Via its sales of competing shopping carts in Illinois and the messages and faxes that it sent to its Illinois competitor threatening to file suit.

in the State in which" it resides.  See, *Calder*, 465 US at 788-89.  Expressly aiming tortious conduct into a forum State is why the tort occurs there if an injury in that forum results. *Janmark*, 132 F.3d at 1202.  Assuming that such a defendant has contacts with the forum—even a "lesser showing of minimum contacts"—then it does not offend traditional notions of fair play and substantial justice to hale that defendant into the forum.  *Burger King*, 471 U.S. at 476 (citing *Calder* and other cases).  Under those circumstances, the defendant should "reasonably anticipate being haled into court there."

In *Janmark*, the Seventh Circuit noted that the defendant's contacts with Illinois did not rise to the level needed to base jurisdiction on the fact that the defendant was "transacting business" in the State.  *Janmark*, 132 F.3d at 1202-03.  Those contacts with Illinois via defendant's shopping cart sales and inquiries and demands to the Illinois plaintiff were, however, expressly acknowledged in *Janmark*.  This "lesser showing of minimum contacts" together with the facts that (1) the defendant expressly aimed its alleged tort at Illinois and (2) the tort caused injury there via the cancelled orders was sufficient for the Seventh Circuit to find jurisdiction.

The *Janmark* holding is not that an "effect" alone felt in the forum State suffices to hale the wrongdoer into that State's courtroom—which *Janmark* itself makes clear by its example of the plaintiff's income loss caused by a defendant if it pushed the plaintiff's carts into the ocean in New Jersey.  To extend the *Calder* effects test that far would nullify the Supreme Court's "minimum contacts" jurisprudence, would contradict *Wallace*, and would answer what *Indianapolis Colts* expressly left unanswered: that is, are "effects" enough?

The two-page *Janmark* decision—short on facts—is neither specific nor hefty enough to support such a radical departure from controlling law (even if it could).  *Janmark's* place in "effects test" law is an unfortunately murky application of *Calder*.  It is insufficient support for district courts to hale out-of-state defendants into foreign courtrooms based solely on the allegation that an effect is felt in that forum.[10]

---

[10]     The Seventh Circuit recognizes its need to properly guide district courts on specific jurisdiction questions.  See, *RAR*, 107 F.3d at 1279 ("In the absence of such contractual arrangements, however, due

(iii)     *Janmark* is distinguishable from the present case

Unlike Nerds/California, the *Janmark* defendant (1) entered the forum, (2) expressly aimed its alleged tort at the forum, and (3) directly induced another to cause an injury in the forum.  The *Janmark* defendant was also the aggressor—reaching out to the Illinois plaintiff with claims of copyright infringement and interfering with the Illinois plaintiff's relations with its customers.  Here, Nerds/California is minding its own business in California and has only reacted to <u>Plaintiff's</u> allegations of trademark infringement.  The facts in this case are more analogous to *Wallace* than *Janmark*.

E.     *Bunn-O-Matic*

This Court finds support in a non-controlling district court opinion for the proposition that "[t]he alleged effects of [Nerds/California's] alleged intentional infringement support the exercise of specific personal jurisdiction over Nerds/California in Indiana." Order at Dkt. 47 at 11 (citing *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 46 U.S.P.Q 2nd 1375, 1998 WL 207860 (C.D. Ill. April 1, 1998)).

In *Bunn-O-Matic*, however, the defendant <u>entered</u> Illinois by (1) buying coffee-making equipment from the Illinois plaintiff, and (2) negotiating and entering into a trademark license with that plaintiff who would assert quality control over the defendant's continued use of the allegedly infringing BUNN and BUNN-1 trademarks.  *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F.Supp.2d 914, 917-918.   The defendant's "infringement" was due to its alleged breach of that negotiated license agreement.

Here, Nerds/California has <u>not</u> entered Indiana in any way, let alone entered into a contract with the Plaintiff.  Moreover, *Bunn-O-Matic* is an outlier case that also held a "passive" website supported the court's exercise of specific jurisdiction (contrary to the controlling law on the matter which is discussed in Nerds/California motion to dismiss) and which insufficiently,

---

process requires that potential defendants have some measure of control and warning regarding where they may be haled to court, and the clearer and more predictable we can make jurisdictional rules, the better that interest is served.").

and improperly, applied *Janmark*. Most district courts in the Seventh Circuit, including this one, that have evaluated effects test case law hold that "effects" alone <u>do not</u> support the exercise of specific jurisdiction.[11]

## IV.   Nerds/California Has Not <u>Purposefully Directed</u> Its Activities At Indiana

While "minimum contacts" does not require that a defendant have <u>physical</u> contacts with the forum State, it does require—at the very least—that the defendant "purposefully direct" its allegedly wrongful conduct toward residents of the forum state. As the Supreme Court explains:

> Although territorial presence frequently will enhance a potential defendant's affiliation with a State and reinforce the reasonable foreseeability of suit there, it is an inescapable fact of modern commercial life that a substantial amount of business is transacted solely by mail and wire communications across state lines, thus obviating the need for physical presence within a State in which business is conducted. <u>So long as a commercial actor's efforts are "purposefully directed" toward residents of another State</u>, we have consistently rejected the notion that an absence of physical contacts can defeat personal jurisdiction there.

*Burger King*, 471 U.S. at 476 (citing *Calder* and other cases).

Absent physical contacts, then, specific jurisdiction in a trademark case turns on whether the alleged infringer's disputed activities—wherever they occur—are <u>necessarily</u> and, as a matter of law, "purposefully directed" toward the plaintiff trademark owner in its home State.

---

[11]    *Rolls-Royce Corp. v. Avidair Helicopter Supply, Inc.,* 2007 WL 2710842, *3 (S.D.Ind.,2007) (no specific jurisdiction in trademark case absent minimum contacts); *Medallion Products, Inc. v. H.C.T.V., Inc.,* 2007 WL 3085913,*6 (N.D.Ill.,2007)("The effects test in *Calder* is not a substitute for the minimum contacts and purposeful availment inquiries"); *Digisound-WIE, Inc. v. Bestar Technologies, Inc.,* 2008 WL 2095605, *2 (N.D.Ill.,2008)("naked allegations" that defendant infringed a trademark "without more, is not sufficient to establish a prima face case of personal jurisdiction"); *Tamburo v. Dworkin,* 2007 WL 3046216, *7 (N.D.Ill.,2007) (same); *Caterpillar, Inc. v. Miskin Scraper Works, Inc.,* 256 F.Supp.2d 849, 851-52 (C.D.Ill.,2003)(reconciling *Baltimore Colts* and *Janmark* and holding that trademark infringer must enter Illinois for specific jurisdiction to attach); *Diagnostics, Inc. v. Panatrex, Inc.,* 2008 WL 2246960, *14 (C.D.Ill.,2008) (collecting effects test cases); *Neogen Corp. v. Neo Gen Screening, Inc.,* 109 F. Supp.2d 724, 731 (W.D.Mich. 2000); *Lincoln Diagnostics, Inc. v. Panatrex, Inc.,* 2008 WL 2246960, *14 (C.D.Ill., 2008); *Republic Tobacco, L.P. v. General Jack's, Inc.,* 2006 WL 385006, *3 (N.D.Ill.,2006); *Hot Wax, Inc. v. Stone Soap, Co., Inc.,* 1999 WL 183776, *3 (N.D.Ill.,1999); *Griffith v. Wood Bros.,* 2004 WL 2418296, *4 (N.D.Ill.,2004); *Hy Cite Corp. v. Badbusinessbureau.com, L.L.C.,* 297 F.Supp.2d 1154, 1165-67 (W.D.Wis.,2004)(distinguishing *Indianapolis Colts*); *International Medical Group, Inc. v. American Arbitration Ass'n,* 149 F.Supp.2d 615, 625 (S.D.Ind.,2001)(applying *Wallace*); *Kinslow v. Transcor America*, LLC 2006 WL 3486866 at *5 (N.D.Ill.,2006) (same).

The answer is a resounding "No" because of the fundamental trademark law principle that trademark rights are geographically limited to the areas in which the trademark owner uses its mark. *Hanover Star Milling Co. v. Metcalf,* 240 U.S. 403, 415 (1916).[12]   In short, as this Court has previously observed, "different companies can use very similar or identical trademarks if they use them in different geographic areas." *Simon Property Group L.P. v. mySimon, Inc*., 104 F.Supp.2d 1033, 1036-38 (S.D.Ind. 2000).

It does not follow, therefore, that the "junior" user of a trademark "purposefully directs" its activities at a forum State simply because the "senior" user of the trademark resides there.[13] Unlike the wrongful use of another's copyright or patent—which provide nationwide rights—the unlicensed use of another's trademark is not wrongful if that use occurs in an area geographically remote from where the senior user uses its trademark. See, 4 McCarthy on Trademarks and Unfair Competition, §26.2 at 26-6 (4th ed.) ("McCarthy").

For the purpose of deciding, then, whether a junior trademark user (with no physical contacts with the forum State) has minimum contacts with the forum State under a "purposely directed" analysis, it is not correct to assume—as the Court did in this case—that "the injury to goodwill and reputation would occur within" the forum where the plaintiff resides.  Order at Dkt. 47 at p.11.  Were this the rule, then senior trademark users would always be permitted to sue alleged infringers in the senior trademark owner's home State.  That is not the law[14] and would result in the very due process violation that *Wallace* warned about.  *Wallace*, 778 F.2d at 395 (noting that *Calder* does not allow an Indiana plaintiff to hale a California defendant into an Indiana courtroom solely on the allegation that the defendant committed an intentional tort).

---

[12]     See also, *United Drug Co. v. Rectanus Co*., 248 U.S. 90, 98-99 (1918); *General Baking Co. v. Goldblatt Bros.,* 90 F.2d 241, 242 (7th Cir. 1937); *Safeway Stores, Inc. v. Safeway Quality Foods*, 433 F.2d 99, 103-05 (7th Cir. 1970).

[13]     It likewise does not follow that the "effect" of the junior user's activities are necessarily felt in the senior trademark owner's home State.  Because this Court held that jurisdiction over Nerds/California was appropriate based solely on the alleged "effects" of its conduct in Indiana, the Court did not evaluate whether Nerds/California purposefully directed its activities toward Indiana via its website.

[14]     See the cases cited *supra* at fn. 11.

There is, in sum, no basis in law for a court to assume that a junior trademark user's use of a disputed mark "effects" the plaintiff in the forum State or that by such use the junior user is "purposefully directing" its activities toward the forum State.  The burden remains on the plaintiff to make a prima facie showing, by a preponderance of the evidence, that personal jurisdiction exists—which requires presenting evidence of specific facts that, when taken as true, are sufficient to support a finding of jurisdiction.  *Andersen,* 57 F. Supp.2d at 654; *Bunn-O-Matic*, 88 F.Supp.2d at 920.[15]

In its jurisdictional analysis, this Court cannot assume that Nerds/California's use of NERDS ON CALL in California "effects" the Plaintiff in Indiana, cannot assume as true that such use "infringes" Plaintiff's rights in the mark, and cannot assume that Nerds/California has "purposefully directed" its activities at Indiana simply because that is where the Plaintiff resides.

### V.   The Effect Of Filing A Trademark Registration Application

Nerds/California has not "entered" or "purposefully directed" its activities at Indiana by filing a trademark registration application for NERDS ON CALL.  It does not follow that by seeking federal registration for the trademark rights that it has created in NERDS ON CALL in California that Nerds/California is "entering" or "purposefully directing" its activities at Southern Indiana—or Southern Florida or Northern Maine or Western Texas or Central Alaska.

The only nexus this dispute has to Southern Indiana is that the Plaintiff happens to reside here.  If only that nexus was required to justify the exercise of jurisdiction over Nerds/California then Nerds/California would be amenable to suit wherever the Plaintiff happens to reside—or wherever it moves its business or does its business.  That flips the jurisdictional analysis on its head.  The unilateral activity of a plaintiff cannot establish a defendant's minimum contacts with a forum. *Burger King*, 471 U.S. at 474-75; *Purdue,* 338 F.3d at 780.

Trademark registration applications cause no harm—it is the infringement of a mark that

---

[15]     While this Court may properly assume as true any facts that Plaintiff has plead to support its allegation that Nerds/California "infringed" Plaintiff's rights in NERDS ON CALL, it should not assume as true Plaintiff's legal conclusion that "infringement" has occurred. *Bell Atlantic Corp. v. Twombly*, 127 S.Ct. 1955, 1965 (legal conclusions couched as "facts" are not presumed true.)

causes harm. *Country Mut. Ins. v. American Farm Bureau Fed.*, 876 F.2d 599, 600-01 (7th Cir. 1989) (if a mark is being improperly used then "filing an application for registration adds no injury"). Moreover, registration does not create the right to use a mark, that right comes from the association created between the mark and the goods it denotes. *Id.* Which is why "a trademark application is always subject to previously established common law trademark rights of another party." *Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.*, 188 F.3d 427, 435 (7th Cir. 1999). In short, trademarks are protected whether or not they are registered. *Vincent v. City Colleges of Chicago*, 485 F.3d 919, 924 (7th Cir. 2007).

Plaintiff's admittedly senior rights in NERDS ON CALL, such as they are within the geographic area in which it uses the mark, are <u>not</u>, therefore, at risk from Nerds/California's application to federally register its rights in its NERDS ON CALL mark. Peaceful co-existence between identical mark owners in remote geographic areas has a very long pedigree (*Hanover Star* was decided in 1916) and is the very foundation of modern concurrent use registrations. See, 15 U.S.C. §1052(d); 37 C.F.R. §§2.99, 2.133(c) (concurrent use rules); *In re Beatrice Foods Co.,* 429 F.2d 466, 474 -76 (C.C.P.A. 1970). It is <u>not</u> correct, therefore, to conclude—under law or in equity—that Nerds/California has "purposefully directed" its activities at the Plaintiff in Indiana. Nerds/California and its customers are two thousand miles away from Plaintiff's on-site computer repair business in Indianapolis.

### VI.    Certification For Interlocutory Appeal

Should this Court chose not to reconsider Nerds/California motion to dismiss, then Nerds/California respectfully requests the Court certify its Order for interlocutory appeal. An interlocutory appeal may be certified for consideration by a district judge when a nonfinal order "involves a controlling question of law as to which there is substantial ground for difference of opinion and ... an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b).

An interlocutory appeal is allowed only when it presents: (1) a question of law; (2) that is controlling; (3) and contestable; and (4) the resolution of which will speed up the litigation.

*Ahrenholz v. Bd. of Trs. of the Univ. of Ill.,* 219 F.3d 674, 676 (7th Cir.2000).  Further, the only questions of law that are suitable for interlocutory appeal are those that are "pure" and "abstract."  *Id.* at 677.

A.      Question Of Law

The issue for appeal is whether a court may assert specific jurisdiction over a defendant when the plaintiff pleads only that the defendant has caused an "effect" in the forum State or whether specific jurisdiction under the *Calder* effects test requires a plaintiff to also plead that the defendant has minimum contacts with a forum State—either physical contacts, a "lesser showing of minimum contacts," or by "purposefully directing" its activities at the forum.   A related issue is whether a trademark infringement defendant necessarily, and as a matter of law, "purposefully directs" its allegedly infringing activity at the forum State where the plaintiff trademark owner resides.  Both of these issues are "pure" issues of law that do not rely for resolution on the particular facts of the present case.

B.      Controlling Question Of Law

The Seventh Circuit muddied the *Calder* effects test specific jurisdiction analysis by its memorandum-like *Janmark* decision.  Presenting the above issues to the Seventh Circuit will provide it the opportunity to articulate the correct analytical approach and to directly answer the question it left unanswered in *Indianappolis Colts*: is pleading "effects" enough?

C.      Contestable Question Of Law

The Seventh Circuit's discourse on, and its interpretation of, the *Calder* effects test in *Wallace*, *Indianappolis Colts,* and *Janmark* is difficult to reconcile with the Supreme Court's well-developed "minimum contacts" law.  Those two bodies of law should be reconciled to provide marketplace participants certainty with regard to whether they are subject to suit in a State within the Seventh Circuit.

D.      The Resolution Will Speed Up The Litigation

The Court's assertion of jurisdiction over Nerds/California is a fundamental issue that must be resolved before the extraordinary resources needed for a trial are expended—likely

unnecessarily, at least in this forum. The resolution of the issues presented for appeal will result in either a dismissal of the litigation, a change of venue to where Nerds/California is susceptible to suit, or a ruling that establishes the bright line rule that pleading "effects" in the forum State suffices for a court in the Seventh Circuit to assert jurisdiction over a defendant. If these issues are not presented for appeal at this time, their resolution will simply be postponed until after final judgment.

## **CONCLUSION**

Nerds/California respectfully requests that the Court reconsider whether the Plaintiff's pleading of "effects" alone suffices to hale Nerds/California into this Court. Nerds/California asserts it is not sufficient. After reconsideration, should the Court agree with Nerds/California, then we also request that the Court address whether the operation of Nerds/California's website subjects it to the jurisdiction of this Court. Nerds/California asserts that is not sufficient either and requests that the Court dismiss this case for lack of personal jurisdiction.

In the alternative, Nerds/California requests that the Court certify its Order for interlocutory appeal.

Respectfully submitted,

DATED: June 24, 2007                                BULLIVANT HOUSER BAILEY PC

By:      /s/ DANIEL N. BALLARD
                Daniel N. Ballard
                Attorneys for Nerds On Call, Inc. and Ryan Eldridge

Daniel N. Ballard, (CA Bar #219223) (Pro hac vice)
BULLIVANT HOUSER BAILEY PC
1415 L Street, Suite 1000
Sacramento, California 95814
Telephone: 916.930.2500
Facsimile:  916.930.2501
daniel.ballard@bullivant.com