**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF INDIANA**
**INDIANAPOLIS DIVISION**

| | |
|---|---|
| NERDS ON CALL, INC. (INDIANA) ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:07-cv-0535-DFH-TAB |
| ) | |
| NERDS ON CALL, INC. (CALIFORNIA), ) | |
| and RYAN ELDRIDGE, Individually, ) | |
| ) | |
| Defendants. ) | |

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO RECONSIDER**

Comes now NERDS ON CALL, INC., Plaintiff (hereinafter "Nerds Indiana"), by

counsel, Theodore J. Minch, and, for and in support of its response to NERDS ON CALL,

INC.'S (CALIFORNIA) and RYAN ELDRIDGE'S (Nerds California and Ryan Eldridge will be

hereinafter referred to collectively as "Defendants") Motion to Reconsider, hereby respectfully

says and avers as follows:

**I.      PRELIMINARY STATEMENT.**

**A.      Uncontested Facts Acknowledged by Nerds Indiana and Defendants.**

The uncontested facts germane to the question of jurisdiction in this Case are these:  1)

Nerds Indiana is the senior user of the Mark; 2)  Nerds Indiana's principal place of business

since it first began using "NERDS ON CALL" (the "Mark") in 1995 has been in or near

Indianapolis, Indiana; 3)  Defendants maintain a multi page web site at www.callnerds.com that

contains trouble-shooting information for common technical problems and allows users of the

website to contact Defendants to seek more information or to request service; 4) Defendants'

website prominently displays the Mark; 5)  In November 2004, Nerds Indiana contacted

Defendants, in writing, and demanded that Defendants cease and desist use of the Mark; 6)

Defendants did not respond to Nerds Indiana's November, 2004 missive yet, shortly after receipt

1

Dockets.Justia.com

thereof, Defendants filed their first federal trademark application for the Mark claiming first use of the Mark, both anywhere or "in commerce," at least as early as March, 2004; 7) Nerds Indiana filed an opposition to Defendants' first federal trademark application and prevailed by way of default after Defendants failed to reply; and 8) Defendants then filed a second, concurrent use federal trademark application wherein Defendants sought registration of the Mark, again claiming first use of the Mark at least as early as March, 2004, throughout the entire United States, except for the state of Maryland, the District of Columbia, and a fifty (50) mile radius around Indianapolis, Indiana. Dkt. 47 at 2 - 6.

Defendants cannot, in good faith, contend that should Defendants' business activities be restricted to northern California, as alleged, the filing of Defendants' first and subsequent federal trademark applications was not purposely designed to restrict Nerds Indiana's, the acknowledged senior user of the Marks, ability to use the Mark in commerce beyond a fifty (50) mile radius around Indianapolis, Indiana. Though Nerds Indiana is the senior user of the Mark (in fact, Nerds Indiana has been using the Mark in interstate commerce as defined under Coca Cola v. Stewart since at least a decade prior to Defendants' admitted use of the Mark)[1], it is undeniable that as a result of Defendants' trademark applications, Nerds Indiana is restricted, under Indiana and federal law, from engaging in business under the "NERDS ON CALL" tradename. This Court carefully and correctly reasoned that on the strength of this basis and all the attendant implications arising therefrom, alone, *all* prerequisites for establishing jurisdiction in the Southern District of Indiana are met. Coca-Cola Co. v. Stewart, 621 F.2d 287, 290 (8th Cir. 1980); See generally Dkt. 47 at 4, 9 – 13.

---

[1] In filing the trademark applications discussed herein, Defendants effectively limit Nerds Indiana's ability to conduct business outside a fifty (50) mile radius around Indianapolis. Accordingly, Defendants have engaged in just the sort of activities that were defined engaging in interstate commerce in Coca-Cola v. Stewart. That is, Defendants allege that their business is restricted to Northern California yet Defendants rushed to the United States Patent and Trademark Office to file its trademark applications upon receipt of Nerds Indiana's November, 2004 correspondence and filed its first federal trademark application solely to preclude Nerds Indiana from obtaining federal trademark protection for the Mark despite the fact that, as admitted by Defendants, Nerds Indiana is the senior user of the Mark by over a decade of use. Dkt. 47 at 3 – 4.

Simply stated, Defendants cannot have their "cake and eat it, too." That is, by affirmatively and aggressively seeking to exclude Nerds Indiana from doing business under the Mark by filing its federal trademark applications, as particularly demonstrated by Defendants' second "concurrent use" trademark application which specifically lists an area inside a fifty (50) mile radius of Indianapolis, in which the acknowledged senior user of the Mark can *lawfully* use the Mark. Despite Defendants' best argument, which is, that Defendants' use of the Mark is geographically "remote" as compared to Nerds Indiana's use of the Mark and Defendants' contacts with Indiana, as alleged by Defendants (but not admitted by Nerds Indiana), are nil, Defendants have purposefully, affirmatively, and systemically directed its activities at Indiana, including the vast majority of the Southern District of Indiana. Furthermore, Defendants have sought to take advantage of Indiana law where protection of its use of the Mark is concerned; as such, Defendants cannot possibly have been surprised by having to litigate matters relating to its use of the Mark in the Southern District of Indiana based upon its affirmative contact with the Southern District of Indiana by way of its federal trademark application which, if ultimately registered, would give Defendants unfettered rights to use the Mark in the Southern District of Indiana to the detriment of the senior user of the Mark, itself a lifelong resident of the Southern District of Indiana, and, as argued more fully herein, Indiana consumers.

**B.      This Court Properly Denied Defendants' Motion to Dismiss.**

In their motion to reconsider, Defendants argue that this Court has incorrectly applied the Calder holding; Defendants argument, succinctly, is that because Defendants (allegedly) have no contacts with Indiana and, as such, because Defendants (allegedly) have no contacts with Indiana, the Court should never reach the "effects" test under to Calder. See generally Dkt 53 at 2. Defendants further argue that, even if Defendants maintain minimum contacts with Indiana, Nerds Indiana has not demonstrated that either 1) an "effect" of Defendants' activities is felt in Indiana or 2) Defendants have purposefully directed its activities toward Indiana. Id.

This Court thoroughly dissected <u>Calder</u> in determining that the Southern District of Indiana properly had jurisdiction over Defendants in this Case. Dkt. 47 at 10, 11 n 6. In fact, the Entry Denying Defendants' Motion to Dismiss acknowledges that <u>Calder</u> and other Seventh Circuit interpretations of <u>Calder</u> are controlling and that this Court is therefore bound to follow Seventh Circuit law. In setting forth its detailed analysis of <u>Calder</u> and related Seventh Circuit precedent, contrary to Defendants' argument, this Court found that not only was Nerds Indiana harmed by Defendants' actions in the Southern District of Indiana, but that, by way of its trademark applications wherein Defendants assert they are the rightful owner in and to the Mark in interstate commerce excluding only a minute area consisting of a fifty mile radius around Indianapolis, Indiana and the District of Columbia in its entirety. Id. at 9 – 13. Specifically, in denying Defendants' Motion to Dismiss, this Court found that

> In evaluating the burden on the [D]efendants, the court finds the [D]efendants' second application to register the NERDS ON CALL trademark particularly relevant. Nerds / California [Defendants] assert[s] the right to exclusive use of the trademark throughout the United States, excepting only the District of Columbia and Maryland, and an area within a 50-mile radius of Indianapolis. The excluded area around Indianapolis excludes only a fraction of the Southern District of Indiana and the larger State of Indiana. In other words, although Nerds / California [Defendants] say[s] it is not now using the trademark anywhere in Indiana, Nerds / California [Defendants] is now asserting and seeking federal recognition of an exclusive right to use the trademark in most of the State of Indiana and most of the Southern District of Indiana. Since Nerds / California [Defendants] is now asserting that right to exclusive use of the mark in this jurisdiction, it does not seem unfair or unduly burdensome to expect it to litigate that issue in the jurisdiction where Nerds / California [Defendants] seek[s] to establish that exclusive right."

Dkt. 47 at 12.

Based upon the foregoing and despite Defendants' arguments to the contrary, this Court correctly applied <u>Calder</u> and related Seventh Circuit precedent on questions of jurisdiction in finding that not only was there injury to a Southern District of Indiana domicile in the Southern

District of Indiana as a direct and proximate result of Defendants' actions, Defendants actions in inflicting said harm as to Nerds Indiana were sufficient to satisfy the minimum contacts test under <u>Calder</u> and related Seventh Circuit precedent.

## II.    PROCEDURAL HISTORY.

On October 15, 2007, Defendants filed their Motion to Dismiss and Brief in Support of Defendants' Motion to Dismiss.  Dkt. 15, 16.  Defendants argued in their Motion to Dismiss that this matter should be dismissed or, in the alternative, transferred to the Eastern District of California because this Court did not have jurisdiction over Defendants, that the Eastern District of California was a more convenient forum, and that Defendants had not been properly served. See generally Dkt. 16 at 1 - 2.

On January 4, 2008, Nerds Indiana filed its Response to Defendants' Motion to Dismiss. Dkt. 35.  In support of its opposition to Defendants' Motion to Dismiss, Nerds Indiana argued that jurisdiction was proper in this Court because Nerds Indiana, a lifelong Indiana domicile, had been irreparably and significantly harmed in the Southern District of Indiana by virtue of Defendants' trademark applications which seek to preclude Nerds Indiana from using the mark NERDS ON CALL (hereinafter the "Mark") in a majority of the Southern District of Indiana and by virtue of Defendants' contacts with Indiana via Defendants' use of the Mark on Defendants' web site, www.callnerds.com, which is readily accessible in the Southern District of Indiana, and Defendants' attempt to benefit under Indiana law to the exclusion of Nerds Indiana via Defendants' federal trademark applications.  See generally, <u>Id.</u> at 7 – 15.

On January 29, 2008, Defendants filed its reply in support of Defendants Motion to Dismiss.  Dkt. 41.  In their reply, Defendants asserted and fully briefed its argument (which this

Court rejected) that Defendants have "… literally no contact with any person or business of Indiana." Id. at 1.

On May 27, 2008, this Court issued its Order denying Defendants' Motion to Dismiss. Dk. 43. In denying Defendants' Motion to Dismiss, this Court found that it had personal jurisdiction over Defendants pursuant to the Seventh Circuit's interpretation of the "minium contacts" *and* "effects" tests (emph. added), that venue was proper, and that Nerds Indiana's service of process, though imperfect, was sufficient under Indiana law because it was reasonably calculated to provide (and, ultimately, did provide) timely and actual notice of the proceedings in this Case without prejudice to Defendants' interests. Id. at 2. This Court further found that transferring this case to the Eastern District of California as moved by Defendants would merely shift the inconvenience of litigation from Defendants to Nerds Indiana. Id.

On June 24, 2008, Defendants filed their Motion to Reconsider. Dkt. 53. In Defendant's Motion to Reconsider, which is at issue here, Defendants contend that this Court's finding of jurisdiction in this Case was based solely on this Court's analysis of the "effects test," to the exclusion of the "minimum contacts" test and, as such, this Court entry denying Defendants' Motion to Dismiss was based upon a manifest error of law. More specifically, Defendants assert that this Court erred in determining that jurisdiction over Defendants proper in this District because: 1) this Court used the Calder "effects" test in lieu of a minimum contacts analysis and 2) this Court improperly relied upon Nerds Indiana's allegation that Defendants infringed upon the Mark thereby creating the "effects" required under Calder. Dkt. 53 at 2. Strictly speaking, Defendants continue to assert that they have no physical contacts in or with Indiana, have not "purposefully directed" any of its activities to Indiana residents, and have not entered Indiana

directly or indirectly by placing its computer services in the stream of commerce in Indiana. Id. at 1.

Defendants expressly acknowledge that the only issue for which they seek reconsideration is with regard to this Court's finding that that this Court may properly assert specific jurisdiction over Defendants herein under Calder and other Seventh Circuit holdings. Id. at 1, n. 1; See, Dkt. 47 at 7, n.5. Defendants do not contest the Court's finding that venue is proper and that Defendants had properly been served under Indiana law; Nerds Indiana's response, therefore, will be limited to discussion regarding personal jurisdiction under the minimum contacts and effects test analyses only.

## III. THIS COURT'S RULING THAT PERSONAL JURISDICTION IN INDIANA, SOUTHERN DISTRICT, IS PROPER WAS CORRECT.

### A. Standard of Review on Motions to Reconsider.

A motion for reconsideration serves the very limited function of correcting manifest errors or misunderstandings of law or fact or to present newly discovered evidence; the granting of a motion for reconsideration is within the discretion of the court. Covenant Media of Illinois v. City of Des Plaines, 496 F.Supp.2d 960 (N.D. Ill. 2007); Caisse Nationale De Credit Agricole v. CBI Indus., Inc., 90 F.3d 1264, 1269-70 (7th Cir.1996). Rarely do the problems underlying a motion to reconsider arise to such a level of error as to constitute the granting of such a motion. Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir.1990); Covenant Media of Illinois, 496 F.Supp.2d 960, 961.

A motion to reconsider, however, admittedly serves a valuable function where the court "has patently misunderstood a party, or has made a decision outside the adversarial issues presented to the Court by the parties, or has made an error not of reasoning but of apprehension." Id.; Bank of Waunakee, 906 F.2d at 1191 (7th Cir.1990).

Under Fed.R.Civ.P. 69(e), a party may "direct the district court's attention to newly discovered material evidence or a manifest error of law or fact . . . enabl[ing] the court to correct its own errors." Aybar v. Crispin-Reyes, 118 F.3d 10, 15 (1st Cir.1997). A motion for reconsideration should be granted only if the court has patently misunderstood a party or there is a significant change in the law or facts since the submission of the issues to the court by the parties. Reyes Canada v. Rey Hernandez, 224 F.R.D. 46, 48 (D.P.R. 2004) (citing Bank of Waunakee v. Rochester Cheese Sales, Inc., 906 F.2d 1185, 1191 (7th Cir.1990)).

Defendants' motion to reconsider identifies no patent misunderstanding by this Court of the parties' arguments nor do Defendants cite a significant change in the law or the facts since the issue regarding jurisdiction was first raised herein by Defendants.  Dkt. 53 at 1 – 2. Defendants' motion to reconsider does not assert any new facts, evidence or legal theories which may justify this Court's affirmative reconsideration of its entry on jurisdiction; rather, Defendants' merely flesh out, in greater detail, the argument previously made by Defendants in support of their motion to dismiss.  See generally, Id.  Defendants rely only upon the argument that under either the "error not of reasoning but of apprehension" or "manifest error of law" tests (which Defendants argue are one and the same), this "Court fundamentally misunderstood and misapplied the controlling law regarding specific jurisdiction."  Id. at 3.  Defendant's analysis of the standard upon review of a motion to reconsider ignores prevailing Seventh Circuit precedent cited, in detail, by this Court in its entry.  Further, Defendants' motion to reconsider ignore the fundamental tenet that a "motion for reconsideration should be granted only if the court has

patently misunderstood a party or there is a significant change in the law or facts since the submission of the issues to the court by the parties (neither of which exist in this Case under either party's analysis). Reyes Canada, 224 F.R.D. 46, 48 (citing Bank of Waunakee, 906 F.2d 1185, 1191.

Even accepting Defendants' theory of the standard of review for reconsideration, because this Court thoroughly, painstakingly, and, even under more scrutinized analysis, unerringly, set forth its analysis of the issues related to the question of jurisdiction in this Case, Defendants' motion must fail.  See generally Dkt. 47 at 9 – 13.  As argued herein, this Court made no "manifest error of law" as argued by Defendants.  To the contrary, this Court properly applied prevailing Seventh Circuit law where questions of jurisdiction are concerned in finding *both* 1) that Defendants' minimum contacts with this District via Defendants' trademark applications (which seek to preclude Nerds Indiana from using the Mark in the vast majority of this District despite Nerds Indiana's uncontested priority of use where the Mark is concerned) and the effects of Defendants' actions both on Nerds on Call and Indiana consumers together with Defendants' web site (which is readily accessible to Indiana consumers who can benefit therefrom), and 2) that the "effects" of Defendants actions are irreparable injury to Nerds Indiana, a lifelong domiciliary of Indiana, and Indiana consumers who will be deprived of the benefits of the free market via Defendants' exclusionary actions where Nerds Indiana is concerned.  Contrary to Defendants' contentions, this Court had to accept as fact the alleged effects of Defendants' actions for the purposes of determining jurisdiction in the Southern District of Indiana.  Dkt. 47 at 9 – 13; Purdue Research Found., 338 F.3d 773, 782; Hyatt Int'l Corp., 302 F.3d 707, 713.

In summary, even if Defendants have correctly applied the standard of reconsideration (which, Nerds Indiana contends, Defendants have not), based upon the foregoing, Defendants' argument that this Court committed a manifest error of law with regard to the finding of jurisdiction should fail on its face.

**B.      This Court Properly Found Jurisdiction over Defendants Exists in the Southern District of Indiana under Prevailing Seventh Circuit Law.**

As stated above and as acknowledged by this Court, because the question of jurisdiction is raised by way of Defendants' motion to reconsider and because this Court denied Defendants' motion to dismiss without evidentiary hearing, the Court must accept the uncontested allegations contained in Nerds Indiana's Complaint as true and resolve any factual conflicts as presented by the parties' supporting declarations and other evidence in Nerds Indiana's favor. Dkt. 47 at 11. Purdue Research Found., 338 F.3d 773, 782; Hyatt Int'l Corp., 302 F.3d 707, 713.  If the Court determines that Defendants' "manifest error" standard is the proper standard for review of an order by way of reconsideration (which, as argued above, Nerds Indiana does not herein concede), then, the burden is upon Defendants to show that this Court's entry denying Defendants' motion to dismiss was in manifest error of law.

Again, as a preliminary matter, the determination of personal jurisdiction consists of a two step analysis: (1) whether a particular defendant falls within Indiana's "long-arm" statute, and (2) whether the exercise of jurisdiction over said defendant comports with the requirements of Federal due process.  As Defendants agree, Indiana's long-arm statute is one (1) of the most broadly interpreted jurisdictional statutes in the United States. Having "been expanded to the full extent of the law;" Indiana's "long arm statute" allows "a court of this state [to] …exercise jurisdiction on any basis not inconsistent with the Constitutions of this State or the United

States." Id. at 779; Richards and O'Neil, LLP v. Conk, 774 N.E.2d 540, 550 n.6 (Ind. Ct. App. 2002) (Najam, J., concurring); and Ind. Trial R. 4.4(A).

### 1. Defendants' argument that this Court overlooked Defendants' minimum contacts with the State of Indiana is erroneous.

Nerds Indiana must only make a *prima facie* showing that Defendants are subject to personal jurisdiction in this District. Covenant Media of Illinois v. City of Des Plaines, 496 F.Supp.2d 960 (N.D. Ill. 2007); Purdue Research Found., 338 F.3d at 782. Defendant's argument suggests that the Court in finding jurisdiction somehow failed to determine that Defendants maintained at least minimum contacts with Indiana as a threshold question prior to the determination of whether the effects of Defendants' activities, as complained of, were felt in Indiana. See generally Dkt. 53. Defendants base their motion to reconsider, in part, upon their belief that the Court could not have found even minimal contacts with Indiana and, instead, because, according to Defendants, Defendants have no, let alone, minimal contacts, the Court could have only based its finding of jurisdiction wholly on the "effects test" as a replacement of the minimum contacts analysis. Dkt. 53 at 6 – 7. Defendants assertion in this regard is incorrect.

In fact, this Court carefully balanced both the effects of Defendant's complained of activities (which, again, for the purpose of the determination of jurisdiction in this Case, absent an evidentiary hearing, must be presumed to be true) *and* Defendants' contacts with this District. Purdue Research Found., 338 F.3d 773, 782; See generally Dkt. 47 at 9 – 13. Specifically, in its Entry denying Defendants' Motion to Dismiss, the Court held that "The holdings of Indianapolis Colts, Janmark and Bunn-O-Matic have been criticized by other courts, which have held that something more than mere effects should be required under Calder; though, as this Court acknowledged, this Court is bound to follow these Seventh Circuit holdings. Dkt. 47 at 10 - 11; Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship, 34 F.3d 410, 411-

12 (7th Cir. 1994) (holding that state in which victim of defendant's defamation lived had jurisdiction over defamation suit); Janmark, Inc. v. Reidy, 132 F.3d 1200, 1202 (7th Cir. 1997) (occurrence of foreseeable tort injury in the forum, standing alone, was sufficient for personal jurisdiction); See Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc., 1998 WL 207860, 1998 U.S. Dist. LEXIS 8128 (C.D. Ill. April 1, 1998) (following Janmark and finding allegation of trademark infringement causing harm in forum state, standing alone, sufficient to satisfy effects test); See, *e.g.*, Pavlovich v. Superior Court, 58 P.3d 2, 9 (Cal. 2002) (criticizing Janmark and noting division among federal circuits);"Indianapolis Colts and Janmark are binding precedent upon this court and must be followed."

In its entry denying Defendants' motion to dismiss, this Court correctly acknowledged that Seventh Circuit precedent, which this Court is bound to follow, requires minimal contact between a defendant and the jurisdiction in which the case has been brought in order to satisfy the principles of due process under Indiana law.[2] Dkt. 47 at 9. The limits of the Indiana long arm statute reaches the limits of federal due process and, as in this Case, where the effects of Defendants' activities, greatly impact a domiciliary or the citizens of the jurisdiction in which the Case has been brought. Id.; Dkt. 53 at 6 -7, n. 6.

Defendants correctly noted, minimum contacts inquiry "turns on a particularized assessment of the relationship among the defendant, the forum, and the litigation." Shaffer v. Heitner, 433 U.S. 186, 204 (1977). Likewise and also as argued by Defendants, the analysis with regard to the particularized relationship among the defendant, the forum, and the litigation is a fact-specific. Honeywell, Inc. v. Metz Apparatewerke, 509 F.2d 1137, 1144 (7th Cir 1975).

---

[2] Indiana's long arm statute, Indiana Trial Rule 4.4(A), states "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Nerds Indiana and Defendants agree that because Indiana's long arm statute reaches the limits of Federal due process, federal due process is the appropriate measure of fairness in the matter of jurisdiction in this Case. See, *e.g.*, Burger King Corp. v. Rudzewicz, 471 U.S. 462, 469-70 (1985).

Here, Defendants, by way of their federal trademark applications, the second of which particularized its "application" to the State of Indiana excluding only a fifty (50) mile radius around Indianapolis, and by way of Defendant's website, which Indiana consumers may take advantage of, has certainly sought to avail itself of the laws of this jurisdiction. Second, the instant litigation is directly related to Defendants' infringing activities which, contrary to Defendants' arguments, take place in the Southern District of Indiana. Specifically, there can be no greater threat to the free market and to consumer benefit than the abolition of the free market. By seeking to preclude Nerds Indiana from engaging in business outside a fifty (50) mile radius around Indianapolis, Defendants have engaged in conduct specifically and especially to the detriment of not only Nerds Indiana, a life long Indiana resident, but to Indiana consumers in general. That is, by way of Defendants' actions, Indiana consumers are, in effect, prohibited from enjoying the option of obtaining computer repair services from Nerds Indian and, likewise, Nerds Indiana is prohibited from offering said computer repair services around the State of Indiana in the vast majority of the Southern District of Indiana.

Defendants' analysis of the Calder case is well reasoned and accurate; however, in laying out the facts underlying Calder in great detail, Defendants actually bolster, not diminish, the appropriateness of this Court's interpretation and reliance on Calder together with prevailing Seventh Circuit law. Specifically, and as acknowledged by Defendants, there were a multitude of contacts between defendant Calder and California and, clearly, Plaintiff Jones was injured in California; however, the Court found that, despite said contacts with California and said injuries in California, jurisdiction turned on the finding that Calder, by way of its actions and, "(u)nder the circumstances," reasonably should have anticipated being haled into court in California to answer for their actions. Dkt. 53 at 7 - 8; Calder, 465 U.S. at 789 - 90.

Defendants correctly surmise that Calder "does not, therefore, stand for the proposition that an "effect" in the forum S[s]tate is all that is required to properly hale a defendant into that

State's courtrooms. Dkt. 53 at 7. As Defendants noted, <u>Calder</u> therefore stands for the proposition that, as in <u>International Shoe</u> and <u>Burger King</u>, a defendant must reasonably anticipate that the consequences of its actions will result in the submission to jurisdiction in some forum venue. <u>International Shoe Co. v. Washington</u>, 326 U.S. 310, 316 (1945); <u>Burger King Corp.</u>, 471 U.S. 462, 469-70.

Again, Defendants, by way of Defendants' own affirmative actions, seek to specifically and fundamentally prevent Nerds Indiana from doing business outside a fifty mile radius around Indianapolis and, as a consequence thereof, Defendants seek to affect commerce in the Southern District of Indiana, under *both* Indiana and federal law, through its overt activities which will restrict the otherwise free trade of the senior user of the Mark. This Court and, Defendants by way of Defendants federal trademark applications, affirmatively acknowledge that, just like the federal Commerce Clause, the business activities of one, though "geographically remote," can affect commerce between and among the individual states. See generally *Raich v. Gonzales*, 545 U.S. 1, 9 (2005). The Lanham Act, the principles of which this Case will, in part, be determined, defines "commerce" as "all commerce which may lawfully be regulated by Congress." 15 U.S.C. § 1127. There can be no plausible argument that the activities of Defendants, even if geographically remote (which Nerds Indiana does not agree), affected and are directed at the commerce of Indiana. As such, and as correctly determined by this Court, the tenets of <u>Calder</u> and other Seventh Circuit interpretation of jurisdictional analysis are met given the circumstances in this Case.

> 2. <u>Defendants' argument that even assuming Defendants are found to have minimum contacts with Indiana, there are no "effects" of Defendants' actions that satisfy the Seventh Circuit "effects" test is erroneous.</u>

As noted by Defendants, under the <u>Purdue</u> holding, which commented on the <u>Burger King</u> discussion of "fair play and substantial justice," the Seventh Circuit held that "[w]hen the

defendant's minimum contacts with the forum are relatively weak, these considerations may militate in favor of the exercise of jurisdiction." See Purdue, 338 F.3d at 780.

Pursuant to the "effects test," personal jurisdiction over a nonresident defendant, such as in the Case at bar, is proper when the defendant's tortious actions cause harm to the plaintiff in the forum state. Calder v. Jones, *465* U.S. 783, 788-790 (1984). Once again, in Calder, the United States Supreme Court held that because a Florida writer made allegedly defamatory statements against a California resident, the California courts had jurisdiction over the defendant because the defendant's "intentional conduct in Florida [was] calculated to cause injury to respondent in California." *Id.* at 791.

Despite Defendants' arguments to the contrary and Defendants' attempts to contort the holdings of key Seventh Circuit precedent, the Seventh Circuit's interpretation of "effects test" is broad. Janmark, Inc., 132 F.3d 1200 (7th Cir. 1997).[3] Contrary to Defendants' argument and hope to the contrary, the Seventh Circuit broadly applied the "effects test" in the Indianapolis Colts case.[4] Dkt. 47 at 9; Indianapolis Colts, Inc., 34 F.3d 410, 411. Despite the defendants deminimus (if any) contacts with Indiana in that case, the court determined that Indiana was the proper venue because if the trademarks were indeed impaired, as the suit alleged, the injury

---

[3]In Janmark, an Illinois corporation sued the defendant, a California resident, over allegations related to the copyright design of a certain shopping cart; both Janmark and the Defendant sold their shopping carts around the world. *Id.* at 1202. Though defendant had no other contacts with Illinois, the Seventh Circuit held that Illinois could exercise jurisdiction over the defendants solely because "the injury and thus the tort occurred in Illinois." *Id.* at 1202. The Seventh Circuit found that without an injury there is no tort, and that a wrong does not become a tort until an injury has occurred, so the location of the injury is essential to an understanding of where the tort occurred. *Id.* Because the injury in the Janmark case took place in Illinois, the tort occurred in Illinois and was thus actionable in Illinois according to the Seventh Circuit. Id.

[4] In Indianapolis Colts, the Seventh Circuit reasoned that "[I]n Calder as in all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property (when broadly defined to include reputation, so that it includes Calder itself) was upheld, the defendant had done more than brought about an injury to an interest located in a particular state. Indianapolis Colts, 34 F.3d at 412. The Indianapolis Colts held that the mere broadcast into Indiana "affected" Indiana for purposes of establishing contacts and the alleged misuse of the intellectual property damaged the Indianapolis Colts, an Indiana resident. Similarly, and as argued herein,

would necessarily occur in Indiana. Id. Defendants herein had to know that the result of their actions as herein argued would most certainly subject them to jurisdiction in Indiana as the focus of Defendants' over actions were to restrict the trade of Nerds Indiana, the senior user of the Mark, to an area consisting of a fifty mile radius around Indianapolis and to impede free commerce for Indiana citizens. Id. at 411-412; Dkt. 1, ¶ 26.

Other Seventh Circuit opinions concur with the foregoing broad application of the effects test. See Riddell, Inc. v. Monica, 2003 WL 21799935, *3 (ND.Ill., July 25, 2003)(The court determined that the defendants were aware that plaintiff's principal place of business was in Illinois and, consequently that the injury resulting from defendant's actions would be felt most severely in Illinois. Under such circumstances, the court determined that it was foreseeable that defendants would be required to answer for such actions in Illinois and therefore personal jurisdiction over the defendants attached.); International Molding Manf. Co. v. St. Louis Conveyor Co., 2002 WL 1838130, *4 (N.D.Ill. Aug. 12, 2002)(Personal jurisdiction may be proper where the injury occurs in the district in question even if all other conduct relevant to the case took place outside the district.); Bunn-O-Matic Corp., 88 F. Supp. 2d 914, 920 (Court relied upon the Janmark holding in finding that a New York corporation could be held to personal jurisdiction in Illinois in an action for trademark infringement and unfair competition where the Plaintiff is an Illinois corporation and the injury to the Illinois plaintiff takes place in Illinois.). This Court correctly surmised that the Court must assume, at this stage of the litigation, absent an evidentiary hearing as to jurisdiction, that Nerds Indiana's allegations that Defendants have knowingly and intentionally used the Mark within the Southern District of Indiana and the corresponding injury suffered by Nerds Indiana in the Southern District of Indiana, are true. Dkt.

---

Defendants have done more than just broadcast their web site into Indiana, they have systemically engaged in commerce to the detriment and harm to an Indiana domiciliary and Indiana citizens.

47 at 10; Dkt. 35, Exhibit B, Bouchonnet Decl. ¶ 10.   Accordingly, the effects as alleged by Defendants together with the effects that Nerds Indiana has and will naturally suffer as a result of Defendants' attempts to restrict Nerds Indiana's use of the Mark despite its senior user status, support the finding of specific personal jurisdiction over Defendants in Indiana under prevailing Seventh Circuit precedent.  Dkt. 47 at 10; See Bunn-O-Matic Corp., 1998 WL 207860, 1998 U.S. Dist. LEXIS 8128 (C.D. Ill. April 1, 1998) (following Janmark and finding allegation of trademark infringement causing harm in forum state, standing alone, sufficient to satisfy effects test).

Defendants simply cannot make the argument, in good faith, that it could not have anticipated being sued in Indiana as a result of its restrictive actions focused at Indiana commerce; to the contrary, Defendants had been placed on notice of Nerds Indiana's priority use of the Mark in 2004 and every action taken by Defendant thereafter were designed to restrict Nerds Indiana from rightfully using the Mark in Indiana and elsewhere.  As such, Defendants argument that litigating this case in Indiana violates the notions of fair play and substantial justice despite Defendants' overt activities focused at Indiana are simply in error.  See Burger King, 471 U.S. at 477; Logan Productions, Inc. v. Optibase, Inc., 103 F.3d 49, 53 (7th Cir. 1996).

**C.  Principles of Fair Play and Substantial Justice Permit the Exercise of Jurisdiction in Indiana, Southern District.**

After determining that minimum contacts exist, the Court must then determine whether the exercise of jurisdiction would offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over Defendants. Burger King, 471 U.S. at 477. In making this determination, the Court:

> [M]ay evaluate the burden on the defendant, the forum State's interest in adjudicating the dispute, the plaintiff's interest in obtaining convenient and effective relief, the interstate judicial system's interest in obtaining the most efficient resolution of [the underlying dispute], and the shared interest of the several States in furthering fundamental substantive policies.

Purdue Research Found., 338 F.3d at 781 (quoting Burger King, 471 U.S. at 477).

Nerds Indiana correctly argued in its brief in opposition to Defendants' motion to dismiss, that Defendants have not and cannot make any showing that its burden in litigating this case in Indiana is so great as to amount to a deprivation of due process, nor could it. "[P]rogress in communications and transportation has made the defense of a lawsuit in a foreign tribunal less burdensome." World-Wide Volkswagen Corp. V. Woodson, 444 U.S. 286, 294 (1980).

As argued in detail hereinabove, by virtue of the resulting restriction of free commerce by the consumers of Indiana and Nerds Indiana through Defendants' actions directed at Indiana, Indiana has a great interest in the adjudication of this case.  This Court is correct that due process requires that a non-resident defendant have "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Dkt. 47 at 11; International Shoe Co., 326 U.S. 310, 316, quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940).   Exercise of jurisdiction on the basis of Defendants' actions, as herein argued, comports with notions of fair play and substantial justice.

**IV.    DEFENDANTS' MOTION TO CERTIFY.**

Nerds Indiana has no position with regard to Defendants' request to certify the denial of Defendants' Motion to Dismiss or the denial of Defendants' Motion to Reconsider should the Court ultimately affirm the denial of Defendants' Motion to Dismiss on reconsideration.

**V.    CONCLUSION.**

Defendants' Motion to Reconsider should be denied because dismissal or transfer of this Case would (a) ignore controlling Seventh Circuit precedent with regard to the standard of review upon motions to reconsider, (b) ignore controlling Seventh Circuit precedent regarding questions of personal jurisdiction, (c) ignore the Court's earlier finding that Defendants' did maintain knowing and, at least, minimal contacts and activity within this forum (the State of Indiana, Southern District) and (d) ignore the irreparable and significant harm caused in this District to a lifelong domiciliary of this District. As such, Nerds Indiana hereby respectfully requests the Court deny Defendants' Motion to Reconsider.

WHEREFORE, Plaintiff NERDS ON CALL, INC. respectfully requests that the Court deny Defendant's Motion to Reconsider and for all other just and proper relief in the premises.

Dated: August 18, 2008                     Respectfully submitted,

                                             /s/ Theodore J. Minch_____
                                            Theodore J. Minch, #18798-49
                                            Attorney for Plaintiff Nerds on Call, Inc.
                                            SOVICH MINCH, LLP
                                            10099 Chesapeake Drive, Suite 100
                                            McCordsville, Indiana 46055
                                            (317) 335-3601 (t)
                                            (317) 335-3602 (f)
                                            e-mail – tjminch@sovichminch.com

## PROOF OF SERVICE

The undersigned hereby certifies that a true and accurate copy of Plaintiff's Response to Defendant's Motion to Reconsider was served upon the following counsel for record this 18th day of August, 2008 via this Court's electronic service system only:

Daniel N. Ballard, Esq.
SEQUOIA COUNSEL PC
770 L St., Suite 950
Sacramento, California 95814
Telephone: (916) 449-3950
Facsimile: (916) 200-0601
e-mail: dballard@sequoiacounsel.com

Jonathan G. Polak, #21954-49
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
e-mail: jpolak@sommerbarnard.com

*/s/ Theodore J. Minch*_____
Theodore J. Minch, #18798-49
SOVICH MINCH, LLP
Attorney for Plaintiff Nerds on Call, Inc.
E-Mail: tjminch@sovichminch.com