UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NERDS ON CALL, INC. (INDIANA), | Case No.: 1:07-cv-0535-DFH-TAB |
| Plaintiff, | |
| vs. | |
| NERDS ON CALL, INC. (CALIFORNIA) and RYAN ELDRIDGE, | |
| Defendants. | |

## RESPONSE TO REPLY TO REQUEST FOR RECONSIDERATION

Defendants Nerds on Call, Inc., and Ryan Eldridge (collectively "Nerds/California") respectfully respond to Nerds/Indiana's Reply to the pending Request For Reconsideration.

## ARGUMENT

### I.    Nerd/California's Trademark Registration Application

Nerds/Indiana's arguments in opposition raise essentially only one question relevant to the personal jurisdiction inquiry: Did Nerds/California "purposefully direct" its business activities toward the Southern District of Indiana by filing its trademark registration application for NERDS ON CALL knowing that Nerds/Indiana was using that same mark in the Southern District of Indiana?[1]

Nerds/Indiana answers in the affirmative and, based on that answer, concludes that such purposeful conduct "directed" at the Southern District of Indiana satisfies the Seventh Circuit's application of the *Calder* effects test which, in turn, permits this Court to properly assert specific personal jurisdiction over Nerds/California.  Dkt. 64 at pp. 2,3,4,9,13.

This syllogism, however, falters from the get-go: Nerds/California's concurrent use application to register NERDS ON CALL is, by definition, directed <u>everywhere</u> within the

---

[1]    Nerds/Indiana does <u>not</u> allege that Nerds/California began its use of NERDS ON CALL with knowledge that Nerds/Indiana was already using the mark.  The allegation is only that Nerds/California *filed its trademark registration application* knowing that the mark was already in use in Indiana by Nerds/Indiana—two facts that Nerds/California readily admit.  Dkt. 1 at ¶¶22 – 26.

1

United States except where Nerds/Indiana is doing business. "Everywhere" certainly includes those parts of the Southern District of Indiana where Nerds/Indiana is *not* currently doing business—but it also includes every other inch of the country as well.

Should Nerds/California's application mature to registration, Nerds/California could prevent Nerds/Indiana from using NERDS ON CALL in every part of the country where the latter has yet to establish trademark rights, including: parts of Southern Indiana and all of Western Texas, Northern Maine, Southern Florida, Central Alaska, and everywhere else. Why is the Southern District of Indiana being singled out by Nerds/Indiana as *the* part of the country where its use of NERDS ON CALL is in jeopardy and *the* forum that has personal jurisdiction over Nerds/California? Because that is where Nerds/Indiana resides.[2]

Which, as noted previously, flips the personal jurisdiction analysis on its head: a defendant is <u>not</u> susceptible to suit in a judicial district simply because that is where the plaintiff resides or because that is where the plaintiff allegedly feels the "effect" of the defendant's conduct. The plaintiff must establish that the defendant "purposefully availed itself of the privilege of conducting activities" in that district. *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1277 (7th Cir. 1997).

Nerds/Indiana muddies this personal jurisdiction analysis with a legally unsupported, emotion-based argument that it is simply not fair for Nerds/California to attempt to "preclude Nerds Indiana from engaging in business outside a fifty (50) mile radius around Indianapolis." Dkt. 64 at p.13. Of course that attempt is fair—not only is lawful competition the wellspring that nourishes the marketplace, by design it produces winners and losers. Should Nerds/California's

---

[2]     Nerds/Indiana cannot argue that Nerds/California has "purposefully directed" its business activities toward those parts of Indiana where Nerds/Indiana does business because Nerds/California's application specifically <u>excludes</u> those areas from the sought-after protection. Nerds/Indiana does not, however, allege any facts or provide any rationale why the rest of the Southern District of Indiana is any different from any other part of the country where its potential use of NERDS ON CALL would be put at jeopardy if Nerds/California's application mature to registration. Nerds/Indiana may laud its "decades long" use of NERDS ON CALL in Indianapolis, but it makes <u>no</u> claim that has expanded, or intends to expand, that use—including elsewhere within the Southern District of Indiana.

concurrent use application for NERDS ON CALL mature to registration, then Nerds/Indiana will "lose" the opportunity to do business under that mark in every part of the country where it has not yet established a business presence.[3] The "winners" would be Nerds/California and the consumers in those areas who were not being served by Nerds/Indiana—which includes those in the Southern District of Indiana who, perhaps one day, may be served by Nerds/California. But that day is not today.

Bringing this discussion back to the personal jurisdiction analysis underscores that filing a federal trademark application is not "purposefully directing" conduct toward any one particular judicial district. Indeed, even if Nerds/California's application matures to registration, its ownership of that registration would <u>not</u> be a sufficient basis to enjoin Nerds/Indiana from using NERDS ON CALL where it has historically used its mark <u>nor</u> in areas of the country it began use even *after* the registration issues but where Nerds/California has yet to do business. 5 McCarthy on Trademarks and Unfair Competition § 26:33 (4th ed.) ("McCarthy"). In short, registration plus use in a geographic area are <u>both</u> required before a court can enjoin another from using a junior user's registered mark. *Id.* In this way, the federal trademark registration scheme contains a type of "minimum contacts" requirement of its own before a junior user's registration can have any real effect in a particular geographic area.

In the end, jurisdiction over Nerds/California cannot be based simply on Nerds/Indiana's assertion that it feels the "effect" of losing the opportunity to serve *potential* customers in the Southern District of Indiana who reside <u>outside</u> the area where it currently does business.[4] Not only is that supposed link to this forum speculative, it once again improperly focuses the inquiry on Nerds/Indiana rather than on the contacts that Nerds/California allegedly has with this forum.

---

[3] Nerds/Indiana can continue, of course, to do business using NERDS ON CALL where it historically has used the mark and can do business anywhere else using any other mark. *Burger King of Florida, Inc. v. Hoots*, 403 F.2d 904, 906-907 (7th Cir. 1968) (owners of senior common law trademark rights may lawfully continue to do business within their historic zone of use under a mark that is subsequently federally registered by a junior user); *In re Beatrice Foods Co.*, 429 F.2d 466, 472 (C.C.P.A. 1970) (same effect with concurrent use registrations); McCarthy at §26.53 (same).

[4] Nerds/Indiana may have had a colorable argument if Nerds/California applied for an Indiana state registration for NERDS ON CALL because that would evidence an intent to target Indiana customers.

II.     Concurrent Use Of The Same Trademark

It is <u>not</u> peripheral to this personal jurisdiction analysis that fundamental trademark law permits, and indeed encourages, the concurrent use and registration of identical trademarks used in geographically distinct parts of the country.  McCarthy at §§20.82, 20.85.

The personal jurisdiction inquiry asks whether its assertion would offend our traditional notions of fair play and substantial justice:  the answer to that question by a trademark owner who has adopted the same mark as another but uses it in a geographically remote part of the country is that jurisdiction <u>would be</u> offensive because it is historically, as well as currently, lawful for a junior user to use and federally register that mark.  *Id.*   By relying on the historic right to use and register the mark, the junior user has conformed his conduct to accepted behavior and has taken no action that would lead it to believe it would be susceptible to suit in the district where the senior user happens to reside.  Specifically, following the law, and the rules established to attain a concurrent use trademark registration, is praiseworthy—not a legal or equitable basis to hale the junior user into a foreign jurisdiction in response to the complaint of an irate senior user who slept through years of opportunity to federally register its trademark.

III.    No Support For Minimum Contacts Allegation

Throughout its opposition Nerds/Indiana reiterates in various ways the assertion that "Defendants have purposefully, affirmatively, and systemically directed its activities at Indiana, including the vast majority of the Southern District of Indiana." Dkt. 64 at p.3.   If Nerds/Indiana then alleged sufficient facts to support that sweeping assertion, Nerds/California <u>would</u> be subject to personal jurisdiction in this forum.  But no such facts exist or are alleged.

A.      Nerds/California's website

Provided the opportunity by this Motion for Reconsideration, Nerds/Indiana chose not to argue <u>how</u> the Nerds/California website establishes minimum contacts with this forum.  Instead it reasserts the vacuous contention that the website "is readily accessible to Indiana consumers who can benefit therefrom." *Id.* at p.8.   <u>All</u> websites are readily accessible to Indiana consumers. The issue is whether the Nerds/California website is sufficiently interactive to permit

Nerds/California to service Indiana consumers.   On that point, Nerds/Indiana provides no facts or argument.

B.   Knowingly filing a trademark application for an identical mark

Nerds/Indiana apparently believes—and would like this Court to believe—that it is unfair, unethical, and just plain wrong for a person to knowingly file a trademark registration application for a mark that is also being used by someone else for the same goods or services.   It is not.   It is, instead, savvy competition. The practice is clearly <u>not</u> unlawful because the Lanham Act expressly provides for concurrent use registrations (15 U.S.C. §1052(d)), the Trademark Office has promulgated rules for concurrent use registrations (37 C.F.R. §§2.99, 2.133(c)), and the court tasked with having specialized knowledge of trademark law consistently approves the practice.[5]   In fact, it is public policy to *reward* those who first seek to register trademark rights. *In re Beatrice Foods Co.,* 429 F.2d at 474, n13;  McCarthy at §26.53, n14.

The rule that Nerd/Indiana <u>is trying to create</u> is that a court in a senior trademark user's home state may properly assert personal jurisdiction over a junior user if that user attempts to federally register its trademark rights with knowledge of the senior user's prior use.   The premise being that the senior user feels the "effect" of that registration in its home state.   There is, however, <u>no</u> such rule—nor should there be.   A court's assertion of jurisdiction cannot be based on assumption.   Without facts that show the junior user has taken some action in, or directed at, the forum that would likely confuse the senior user's consumer base, there is no basis to assume any effect in the forum or any intent or even desire on the part of the junior user to do business there.   We live in a very big country—and Nerds/California's onsite computer maintenance business may never expand beyond the West Coast.   But if and when it does offer its services to Midwest consumers, then—and only then—could this be a proper forum for Nerds/Indiana's claims.

---

[5]    See, e.g. *In re Beatrice Foods Co.,* 429 F.2d 466, 474 -76 (C.C.P.A. 1970);  *Bellsouth Corp. v. Datanational Corp.*, 60 F.3d 1565, 1568-69 (Fed. Cir. 1995). *Enterprises Rent-A-Car v. Advan. Rent-A-Car*, 330 F.3d 1333 (Fed. Cir. 2003).

C.     No "effects" alleged by Nerds/Indiana

First—and foremost—Nerds/Indiana fails to allege any particular "effect" that it feels due to Nerds/California's use of NERDS ON CALL in California and on its website.  Instead, Nerds/Indiana parrots the truism that "this Court had to accept as fact the alleged effects of Defendants' actions."  Dkt. 64 at p.9.  The problem, however, is that because <u>no</u> effects are alleged, this entire line of inquiry is ethereal argument.  In *Calder* actress Jones could allege her reputation was damaged by the magazine article, in *Indianapolis Colts* the football team could allege that its Indiana fans became confused when the "Baltimore CFL Colts" broadcast its games in the state, and in *Janmark* the shopping cart maker could allege it was harmed by tortuous interference with its business.  But what is the alleged "effect" here?  Merely saying that Nerds/Indiana feels an "effect" is empty rhetoric if the effect is not identified.

Nerds/Indiana then characterizes Nerds/California's analysis of effects test case law as "attempts to contort the holdings of key Seventh Circuit precedent."  Dkt. 64 at p.15.  Nerds/Indiana does not, however, attempt to untangle those alleged contortions.  Instead, it liberally cites to this Court's own analysis and ruling on the matter—the very ruling the Court is now reconsidering.  Nerds/Indiana does not, moreover, attempt to distinguish any of the thirteen cases cited by Nerds/California that hold alleging an "effect" alone is insufficient to establish personal jurisdiction over a defendant.  See, Dkt. 53 at p14, n11.   This dearth of analysis is unfortunate because it is a dialogue worth having.

IV.     The Parties' Long-Running Dispute

Nerds/Indiana correctly contends that since November 2004 the parties have been disputing their rights to use the NERDS ON CALL mark. Dkt. 1 at ¶26; Dkt. 64 at pp. 1,17.  Nerds/Indiana then courageously, but blindly, leaps over a spacious civil procedural divide by declaring that "Defendants simply cannot make the argument, in good faith, that it could not have anticipated being sued in Indiana as a result of its restrictive actions focused at Indiana commerce … ."  Dkt. 64 at p.17.  The jurisdictional argument being, apparently, that because (1) the parties openly dispute their respective trademark rights, (2) Nerds/California filed an

application to register its rights, and (3) Nerds/Indiana resides in Indiana, then Nerds/California should have anticipated that it would be sued in Indiana.

Well, no, Nerds/California did not anticipate—nor does it appreciate—being haled into an Indiana courtroom when it has done nothing to create any contacts in the state. No customers, contractors, suppliers, facilities, contracts, bank accounts, or even friends or relatives of the company's owners. Not to mention that its services are limited to the *onsite* maintenance of its customers' computers—and that the only place those customers reside is in California. What was anticipated was that Nerds/Indiana would properly assess those non-existent contacts and conclude that the long-held rules of due process precludes pleading that this Court can properly assert personal jurisdiction over Nerds/California—even under the most liberal interpretation of the Seventh Circuit's effects test case law.[6]

V.    *Coca-Cola Co. v. Stewart*

Nerds/Indiana relies on *Coca-Cola Co. v. Stewart* as if that out-of-circuit case controls this Court's personal jurisdiction analysis. Dkt. 64 at p.2. Little here need be said: the case is neither controlling nor analogous and addresses the question of whether a district court had *subject matter jurisdiction* over the trademark-related claims in dispute—not whether the court could properly assert personal jurisdiction over the defendant. Here, there is no question that this Court has subject matter jurisdiction over the parties' claims.

VI.   The Basis For This Court's Assertion Of Personal Jurisdiction

Nerds/Indiana contends the Court held that it could properly assert personal jurisdiction over Nerds/California because it found that Nerds/California had the requisite "minimum contacts" with this forum <u>and</u> that the "effects test" was satisfied. Dkt. 64 at pp. 6, 9 (citing Dkt. 47 at pp. 9-13). Nerds/California has searched the cited four pages in vain for any finding that Nerds/California has "minimum contacts" with this forum. In fact, Nerds/California takes the

---

[6]    It took very little time for Nerds/California to track down thirteen cases decided by district courts in the Seventh Circuit—including this one—holding that the allegation of an "effect" alone is an insufficient basis for a court in this Circuit to assert personal jurisdiction over a trademark defendant.

Court at its word when it writes that "[a]s explained below, personal jurisdiction here is founded on the Seventh Circuit's interpretation of the 'effects' test.  It is undisputed that Nerds/Indiana operates within Indiana so that the effects of the alleged wrongful conduct would be felt in Indiana, within the meaning of the effects test."  Dkt. 47 at p.7, n5.

It is that "effects test" holding that Nerds/California respectfully believes requires a second look.  As far as "minimum contacts," there was no finding on the matter which is why Nerds/California has requested that the Court address the issue by evaluating whether Nerds/California's website could form the basis for jurisdiction.

VII.     Case Law Cited By Nerds/Indiana

Nerds/Indiana correctly asserts that the Seventh Circuit broadly applies the effects test.  It then implies that some district courts have held that the allegation of "effects" alone can support the assertion of personal jurisdiction.  Dkt. 64 at p.16.   If true, those cases are wrongly decided.  In any event, the cases cited by Nerds/Indiana do not so hold.

The first case cited is *Riddell, Inc. v. Monica*, 2003 WL 21799935 (N.D.Ill.,2003).  Contrary to Nerds/Indiana's parenthetical characterization of the case's holding, the court found that the defendant "directed the mailing of an advertisement for its product to an individual with the Chicago Bears, in Illinois.  The court finds that defendants have established minimum contacts with Illinois. … Having determined that minimum contacts exist, the court next must consider whether it would offend traditional notions of fair play and substantial justice to exercise personal jurisdiction over defendants in this case."  *Id.* at *3-4.   In short, jurisdiction was based on the defendant's entry into the forum as required under the minimum contacts analysis—not because the "effects test" was satisfied.  The court *also* asserted that because the plaintiff resided in Illinois "it was foreseeable that defendants would be required to answer for such actions in Illinois," but that was not the basis for the assertion of personal jurisdiction. *Id.*

The second case cited is *International Molding Machine Co. v. St. Louis Conveyor Co.,* 2002 WL 1838130 (N.D.Ill.,2002).  In that case, the defendant's contacts with the forum state of Illinois were very extensive: the defendant contracted with the Illinois plaintiff to design and

manufacture a metal molding for use in the plaintiff's Illinois foundary, the parties regularly communicated regarding the project, defendant's employees visited the Illinois foundary, the defendant contracted with eight other Illinois-based companies over the previous 30 years, it subcontracted with several other Illinois-based companies, generated millions of dollars of revenue by virtue of its business in Illinois, advertised in magazines that entered Illinois, and belonged to two national trade organizations located in Illinois. *Id.* at *1.

The court forgo a general personal jurisdiction analysis because it found quite readily that specific personal jurisdiction <u>existed under minimum contacts</u>. *Id*. at *3. This is simply not an "effects test" case. Nerds/Indiana cites it, apparently, because the court noted in dicta that "specific jurisdiction can be proper when the injury occurs in Illinois, even if all of the other relevant conduct took place elsewhere." *Id.* at *4 (citing *Celozzi v. Boot,* 2000 WL 1141568 at *3 (N.D.Ill.2000)). Nerds/California finds no value in further discussing *International Molding*—or chasing down *Celozzi* or any other case that Nerds/Indiana has not evaluated on its merits.

The third case cited is *Bunn-O-Matic Corp. v. Bunn Coffee Serv., Inc.*, 88 F.Supp.2d 914 (C.D. Ill. April 1, 1998). Although Nerds/California discussed this case in its Motion for Reconsideration and provided a rationale for why it should not be followed, Nerds/Indiana did not respond to that analysis and merely cites it as persuasive authority. For the reasons already provided, the case should not be followed.

Respectfully submitted,

DATED: August 21, 2008                SEQUOIA COUNSEL PC

By:_____/s/ DANIEL N. BALLARD_____
            Daniel N. Ballard
            Attorneys for Nerds On Call, Inc. and Ryan Eldridge

Daniel N. Ballard, (CA Bar #219223) (Pro hac vice)
SEQUOIA COUNSEL PC
770 L Street, Suite 950
Sacramento, California 95814
Telephone: 916.449.3950
Facsimile: 916.200.0601
dballard@sequoiacounsel.com

**PROOF OF SERVICE**

The undersigned hereby certifies that a true and accurate copy of *Defendant's Reply To The Response to Defendant's Motion to Reconsider* was served upon the following counsel of record on this 21st day of August, 2008 via this Court's electronic service system only:

Jonathan G. Polak
Taft Stettinius & Hollister LLP
One Indiana Square, Suite 3500
Indianapolis, Indiana 46204
e-mail: jpolak@sommerbarnard.com

Theodore J. Minch
SOVICH MINCH, LLP
10099 Chesapeake Dr., Ste. 100
McCordsville, IN 46055
E-Mail: tjminch@sovichminch.com

By: _____ /s/ DANIEL N. BALLARD _____