UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| NERDS ON CALL, INC. (INDIANA), ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | CASE NO. 1:07-cv-535-DFH-TAB |
| ) | |
| NERDS ON CALL, INC. (CALIFORNIA), ) | |
| and RYAN ELDRIDGE, ) | |
| ) | |
| Defendants. ) | |

ENTRY ON DEFENDANTS' MOTION FOR RECONSIDERATION

On May 27, 2008, this court issued an Entry denying defendants' motion to dismiss for lack of personal jurisdiction and improper service. *Nerds on Call, Inc. (Indiana) v. Nerds on Call, Inc. (California)*, 2008 WL 2225641 (S.D. Ind. May 27, 2008). Defendants Nerds on Call, Inc. (California) ("Nerds/California") and Ryan Eldridge then moved to reconsider the decision on personal jurisdiction. Defendants argue that the May 27th entry failed to consider adequately whether Nerds/California had sufficient minimum contacts with Indiana to allow for personal jurisdiction on plaintiff's claims in the Southern District of Indiana.

Upon reconsideration, this court reaches two conclusions that make exercise of personal jurisdiction inappropriate. First, both sides agree that Nerds/California conducts business only in California. Second, Nerds/California's website is not sufficiently interactive to support jurisdiction in Indiana. Plaintiff

Nerds on Call, Inc. (Indiana) ("Nerds/Indiana") has failed to come forward with any evidence that defendants intentionally directed any tortious activity toward Indiana, and the site of the alleged trademark infringement is California. Therefore, this court does not have jurisdiction over Nerds/California and Eldridge in this action. Defendants' motion for reconsideration is granted, and plaintiff's complaint is dismissed due to a lack of personal jurisdiction, with leave to amend.[1]

*Relevant Facts*

Both Nerds/California and Nerds/Indiana provide on-site computer and other technical assistance. Nerds/Indiana has sued Nerds/California and its officer, Ryan Eldridge, for allegedly infringing Nerds/Indiana's trademark rights to the mark NERDS ON CALL, as well as closely related state law torts. Nerds/California is based in Northern California. Nerds/Indiana is based in Indianapolis. For purposes of the court's reconsideration of defendants' motion to dismiss due to lack of personal jurisdiction, the court incorporates by reference the undisputed facts recounted in its May 27, 2008 Entry. See 2008 WL 2225641, at *1-*3.

Due to their increased relevance in deciding this motion for reconsideration, the facts about Nerds/California's website are recounted in more detail. Nerds/California maintains a website at www.callnerds.com. This website, like all

---

[1] As a result, defendants' recent motion to convert their motion to dismiss into a motion for summary judgment, Dkt. No. 67, is denied as moot.

public websites, is accessible in the state of Indiana. It contains a home page listing services for on-site repair and a toll free telephone number. There is a link for online support that includes a series of frequently asked questions and an opportunity to search for definitions of technology-related terms through the website webopedia.com. The site includes a "request service" page that requires a telephone number with a preset list of area codes that are found only in California. Finally, the site has a "contact us" page that lists the addresses of various stores, all located in California, as well as the toll free telephone number. Bouchonnet Decl. ¶¶ 7-9, attached exhibit pp. 4-11. A customer may not enter into a contract for service solely through the website.

*Standards of Review*

The personal jurisdiction issue is being decided without an evidentiary hearing. Nerds/Indiana need only make a prima facie case for personal jurisdiction, and it is entitled to the benefit of its allegations and any conflicts in evidentiary submissions. See *Purdue Research Found. v. Sanofi-Synthelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003). The original complaint's lack of factual allegations to support personal jurisdiction does not matter. Such allegations are not required, but the motion to dismiss put the burden on Nerds/Indiana to show that personal jurisdiction is proper. *Id.*

When federal law does not authorize nationwide service of process, a federal district court has personal jurisdiction over a non-resident defendant if a court of

the state in which it sits would have such jurisdiction. *Purdue Research*, 338 F.3d at 779; *RAR, Inc. v. Turner Diesel, Ltd.*, 107 F.3d 1272, 1275 (7th Cir. 1997). In Indiana, personal jurisdiction depends on whether the requirements of the state long-arm statute are met and whether federal due process requirements are satisfied. *Purdue Research*, 338 F.3d at 779; *Brockman v. Kravic*, 779 N.E.2d 1250, 1255 (Ind. App. 2002). Indiana Trial Rule 4.4(A) serves as Indiana's long-arm statute. It provides in part that "a court of this state may exercise jurisdiction on any basis not inconsistent with the Constitutions of this state or the United States." Because Indiana's long-arm statute is co-extensive with the limits of federal due process, the court applies federal due process standards. See, *e.g.*, *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 469-70 (1985).

Nerds/California clearly lacks the extensive contacts with Indiana needed to support general jurisdiction in the state, but Nerds/Indiana argues that the court may exercise specific jurisdiction over Nerds/California in this case. Specific jurisdiction applies when the controversy arises out of the defendant's contacts with the forum state. *Helicopteros Nacionales de Colombia, S.A. v. Hall*, 466 U.S. 408, 414 (1984). Specific jurisdiction requires an individualized evaluation of the facts of a case and "the relationship among the defendant, the forum, and the litigation." *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977).

A motion to reconsider an interlocutory decision is appropriate where the court has misunderstood a party, where the court has made a decision outside the

adversarial issues presented to the court by the parties, where the court has made an error of apprehension (not of reasoning), where a significant change in the law has occurred, or where significant new facts have been discovered. See *Bank of Waunakee v. Rochester Cheese Sales, Inc.*, 906 F.2d 1185, 1191 (7th Cir. 1990). On reconsideration, this court has re-examined the guiding precedent on the "effects test" with a specific emphasis on the type of "minimum contacts" needed to establish jurisdiction for a claim for an intentional tort. The court has also looked more closely at where the alleged tort occurred. Finally, this court considers whether Nerds/California's website makes defendants subject to jurisdiction in this district in this case.

*Discussion*

Jurisdiction was found in the May 27th entry based on the "effects test" articulated in *Calder v. Jones*, 465 U.S. 783 (1984). The court relied primarily on the Seventh Circuit's interpretation of *Calder* in *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Ltd. P'ship*, 34 F.3d 410 (7th Cir. 1994), and *Janmark, Inc. v. Reidy*, 132 F.3d 1200 (7th Cir. 1997). The crucial language of the May 27th entry states:

> If Nerds/California has intentionally infringed Nerds/Indiana's trademark (which the court must assume at this stage in the litigation), the injury to goodwill and reputation would occur within the Southern District of Indiana, where Nerds/Indiana operates. The alleged effects of that alleged intentional infringement support the exercise of specific personal jurisdiction over Nerds/California in Indiana.

This determination was based on broad language in *Indianapolis Colts* and *Janmark*. "There is no tort without injury, and the state in which the injury (and therefore the tort) occurs may require the wrongdoer to answer for its deeds even if events were put in train outside its borders." *Janmark*, 132 F.3d at 1202 (internal citations omitted). A literal interpretation of this language could lead to the conclusion that the victim of an alleged intentional tort can sue in any district where the injury occurs.

Defendants argue that the *Janmark* language should not be applied so broadly and that the "effects test" still requires more than just that the forum was the location of the alleged injury. They argue that at least a threshold finding of minimum contacts is necessary even before the court applies the effects test. In determining whether minimum contacts are present, defendants argue, the plaintiff must show that the defendant has "entered" the relevant jurisdiction in some fashion. First, defendants cite the Supreme Court's general statement that "the constitutional touchstone remains whether the defendant purposefully established 'minimum contacts' in the forum State." *Burger King Corp.*, 471 U.S. at 474. Second, they cite language from *Indianapolis Colts* where the court acknowledged that "in all the other cases that have come to our attention in which jurisdiction over a suit involving intellectual property . . . was upheld, the defendant had done more than brought about an injury to an interest located in a particular state. The defendant had also 'entered' the state in some fashion." *Indianapolis Colts*, 34 F.3d at 412. Third, defendants have reviewed applicable

case law upholding personal jurisdiction and have attempted to identify "entries" by the defendants in those cases that go beyond what plaintiff alleges here.

Although defendants' concept of "entry" is not completely persuasive, the court's further review of the case law persuades the court that jurisdiction is not proper because Nerds/Indiana has not shown that Nerds/California had minimum contacts for purposes of the claims plaintiff has pled in this case.

*Calder* was a suit by actress Shirley Jones for libel after the National Enquirer ran a story alleging that she had gone to work drunk. The Enquirer was widely distributed in California, so neither the magazine nor its management contested personal jurisdiction in a California court. Only the individual author and editor of the story contested jurisdiction in California. Of these two, editor Calder had significantly fewer contacts. He had visited California on only a few occasions and never in connection with the Jones story. The fact that the Enquirer decided to sell there was outside his control, but the Court still found he was susceptible to suit in California: "Petitioners are correct that their contacts with California are not to be judged according to their employer's activities there. On the other hand . . . petitioners are primary participants in an alleged wrongdoing intentionally directed at a California resident, and jurisdiction over them is proper on that basis." *Calder*, 465 U.S. at 790. The individual defendants' "entry" in *Calder* was merely the intention to cause the harm in the jurisdiction of California. The fact that the Enquirer sold many magazines there was relevant only to the

point that Calder knew his actions were capable of harming the plaintiff in California. Their actual sale was outside Calder's control. The holding of *Calder*, therefore, is that minimum contacts are satisfied when tortious conduct is directly aimed at an individual state.

Defendants attempt to avoid the broad language of *Janmark* by arguing that the defendant in that case had also sold shopping carts in Illinois, where the suit was filed. The problem with that treatment of *Janmark* is that the sale of shopping carts had nothing to do with the alleged tort. The actual dispute dealt with action by the California defendant to persuade a New Jersey store to stop buying shopping carts from Janmark. In a specific jurisdiction analysis, the contacts must be relevant to the alleged cause of action. See *Shaffer*, 433 U.S. at 204. The tortious action, while having nothing to do with defendant's own sales of shopping carts in Illinois, was intentionally aimed at hurting an Illinois corporation in Illinois and consistent with *Calder* in that respect. *Janmark* suggests that the "entry" into a given jurisdiction can be merely the intentional aiming of tortious conduct. See 132 F.3d at 1202-03.

Defendants' attempts to define "entry" so narrowly are not entirely convincing, but their more general point about their lack of relevant contacts with Indiana is persuasive. Defendants stress that they in no way target Indiana. Their business is confined to California, and they have never had a customer from Indiana. Eldridge Decl. ¶¶ 5-17. On the first of these points, Nerds/Indiana

apparently agrees. The complaint acknowledges that Nerds/California's use of the NERDS ON CALL mark "was then and remains restricted to an area of Northern California." Complaint ¶ 24.[2] Similarly, Nerds/Indiana has not had customers in northern California.

Nerds/Indiana responds with three arguments. First, it argues under *Janmark* that the mere fact that it was an alleged victim of an intentional tort residing in Indiana is sufficient for jurisdiction here. If that is insufficient, Nerds/Indiana suggests two ways in which Nerds/California has "entered" Indiana: through the www.callnerds.com website, and through Nerds/California's federal trademark application. In the May 27th entry, the court adopted plaintiff's view on intentional torts to deny the motion to dismiss. But the court is now persuaded that the lack of evidence of intentional targeting at Indiana makes this conclusion incorrect. Defendants' alleged entries into Indiana also are not sufficient to allow for personal jurisdiction in Indiana.

The simple rejoinder to a requirement of intentional targeting is that in a trademark confusion case, knowledge of the plaintiff's trademark should be sufficient to show the defendant's intent. Nerds/California knew about Nerds/Indiana's use of the NERDS ON CALL mark in Indiana (at least after Nerds/Indiana's lawyer sent a cease-and-desist letter), so that any infringement

---

[2]The court will not delve now into how this fact affects Nerds/California's effort to secure a nationwide trademark registration for NERDS ON CALL.

was necessarily directed at Nerds/Indiana. Nerds/California allegedly knew that Nerds/Indiana did business in Indianapolis and would feel the effects in this jurisdiction. A broad reading of *Janmark* could lead to the conclusion that no more is needed.

But the broad proposition that a victim of an alleged intentional tort (or more specifically of alleged trademark infringement) can sue in it home jurisdiction simply because the injury was felt there is not accepted even in the Seventh Circuit. Shortly after *Calder* was decided, the Seventh Circuit decided *Wallace v. Herron*, 778 F.2d 391 (7th Cir. 1985), in which an Indiana resident sued a California law firm in Indiana for malicious prosecution. The Seventh Circuit found that jurisdiction in Indiana was not proper, even in light of *Calder*: "We do not believe that the Supreme Court, in *Calder*, was saying that any plaintiff may hale any defendant into court in the plaintiff's home state, where the defendant has no contacts, merely by asserting that the defendant has committed an intentional tort against the plaintiff." *Id.* at 394.

When is an intentional tort claim more like the malicious prosecution claim in *Wallace* and when is it more like the tortious interference claim in *Janmark*? Judge Darrah's analysis in *Medallion Products, Inc. v. H.C.T.V., Inc.*, 2007 WL 3085913 (N.D. Ill. 2007), is instructive. In that case, the plaintiff filed suits against several defendants after a scam involving a product developed by Medallion that was sold through infomercials. Two defendants challenged jurisdiction. The first,

Broadcast Arts, had filmed the infomercial but had been active only in Florida. Jurisdiction in Illinois was rejected because "Broadcast Arts did not have an active role in bringing the alleged tortious actions into Illinois and causing injury there." *Medallion Products*, at *6. The second defendant, ICC, however, was the alleged mastermind of the scheme to harm the plaintiff in Illinois, and personal jurisdiction was found to be proper: "The alleged tortious acts and alleged injury would have occurred in Illinois based on ICC Defendants' active role in interfering with business relations of prospective economic advantage." *Id*. at *7. The first defendant did not direct its activities at Illinois, while the second allegedly intentionally tried to harm the plaintiff in Illinois.

Nerds/Indiana has relied on Judge Mills' decision in *Bunn-O-Matic Corp. v. Bunn Coffee Service Inc.*, 46 U.S.P.Q.2d 1375, 1998 WL 207860 (C.D. Ill. 1998). While *Bunn-O-Matic* arguably conflicts with Nerds/California's views of minimum contacts, it is consistent with this entry. The parties in *Bunn-O-Matic* had agreed that "the Court should assume . . . that Defendant intended to injure Plaintiff in Illinois." *Id*. at 1377. The court cannot make a similar assumption in this case.

In analyzing the contacts of Nerds/California, the court considers two possibilities that separate *Wallace* from *Janmark*. First, the alleged tort could dictate the location of the injury. In *Wallace*, the injury in the malicious prosecution case based on a false lawsuit in California occurred in California. The injury based on tortious interference with contract in *Janmark* occurred in Illinois

when the contract was cancelled there. The second and more pointed distinction is that proper minimum contacts are established when the alleged tortious conduct is directly targeted at a particular jurisdiction.

In effect, these two potential analyses may be one and the same. What the Seventh Circuit did in *Janmark* may have been simply to determine that an intentional tort whose injury occurs in another jurisdiction evinces an intent to target that jurisdiction. The court in *Wallace* recognized that libel, the tort at issue in *Calder*, was not a normal intentional tort and that the effects of libel in the forum state "are perhaps more pronounced than the 'effects' of most other intentional torts." *Wallace*, 778 F.2d at 395. *Janmark* also can be read to rely on this distinction. In that suit, the injury was in Illinois, but Janmark was specifically targeted by a California company who induced a New Jersey party to break its contract with Janmark. Yet the court in *Janmark* noted specifically that in analyzing injury, the crucial question was analyzing where the injury occurred and not the effect of the injury. A mere economic injury in Illinois based on a tort in New Jersey would have been insufficient. *Janmark* 132 F.3d at 1202 (a shopping cart pushed into the ocean in New Jersey, which would cause economic injury to Janmark in Illinois, would nonetheless be a tort taking place in New Jersey).

Nerds/Indiana has offered no evidence that Nerds/California acted with the intent to enter Indiana or to harm the plaintiff. Defendants have responded to the

complaint with a comprehensive affidavit stating that they had no contacts with Indiana. They did not have clients in Indiana, nor were they intending to in the immediate future. Eldridge Dec. ¶¶10-13. Nerds/Indiana's response is not sufficient. It alleges that Nerds/California could easily set up an independent contractor to service Indianapolis. Bouchonnet Decl. ¶8. It could, and if it did, jurisdiction would be proper in this district for claims arising from that contractor's activities. Beyond this hypothetical, Nerds/Indiana offers only conclusory statements that its mark has been infringed.

Nerds/Indiana claims that some of its customers in Indiana have been confused by the Nerds/California website, but Nerds/Indiana has not come forward with any evidence to that effect. The court realizes that a simple internet search for "nerds on call" could return the Nerds/California site. If a person has lived in Indiana and used Nerds/Indiana's services before, the person might be confused momentarily. Given trademark law's explicit approval of concurrent uses of marks in different geographic areas or product markets, see 15 U.S.C.A. §1052(d), this momentary confusion on the internet is not a sign of intentional targeting. The internet is available worldwide. Use of a locally established trademark on a website may cause momentary confusion among consumers. The solution to that problem is not to require that all trademarks be given worldwide effect even if their non-web use is limited to a narrow geographic area. Instead, users of the web simply need to understand that a worldwide web search may turn up results from distant businesses. See generally *Simon Property Group L.P. v.*

*mySimon, Inc.*, 104 F. Supp. 2d 1033, 1041-48 (S.D. Ind. 2000) (explaining court's rejection of proposed survey to test consumer confusion on internet). If the website in question does not independently create jurisdiction, it can hardly be used as a sign of intentional targeting. To do so would subject any trademark defendant who operates a website to personal jurisdiction in any jurisdiction where another entity uses a similar mark concurrently. The Supreme Court and Seventh Circuit decisions do not reach so far.

On reconsideration, the court also concludes that the relevant alleged injury should be understood as having taken place in California, not in Indiana. Nerds/Indiana makes no allegation that Nerds/California is using the mark in Indiana. To the extent that Nerds/Indiana is arguing that it had rights to the mark in California that are infringed by Nerds/California's actions in California, jurisdiction is improper. "In trademark infringement actions, the situs of the injury is the location or locations where the infringing activity takes place, or where the unlawful use of the mark takes place." *Int'l Truck and Engine Corp. v. Dow-Hammonds Trucks Co.*, 221 F. Supp. 2d 898, 904 (N.D. Ill. 2002), citing *Beverly Hills Fan Co. v. Royal Sovereign Corp.*, 21 F.3d 1558, 1571 (Fed. Cir. 1994); see also *Amba Marketing Systems, Inc. v. Jobar International, Inc.*, 551 F.2d 784, 788 (9th Cir. 1977) (finding no personal jurisdiction in a trademark infringement case where company "may have suffered injury to its good will or reputation" in Arizona, but defendants took no action in Arizona). While Nerds/Indiana would feel the economic loss in Indiana, that fact alone is not sufficient for jurisdiction in

Indiana. See *Wallace* 778 F.2d at 394-395 (finding no personal jurisdiction in a malicious prosecution case where Indiana resident was suing California defendants; alleged wrongful prosecution took place in California and defendants' only contact with Indiana was sending legal documents related to the challenged suit); *Janmark* 132 F.3d at 1202 ("bad financial consequences for a firm in Illinois do not amount to a tort in Illinois").

This reasoning is obviously in some tension with some of the Seventh Circuit's language in *Indianapolis Colts*:

> The Indianapolis Colts use the trademarks they seek to defend in this suit mainly in Indiana. If the trademarks are impaired, as the suit alleges, the injury will be felt mainly in Indiana. By choosing a name that might be found to be confusingly similar to that of the Indianapolis Colts, the defendants assumed the risk of injuring valuable property located in Indiana. Since there can be no tort without an injury, *Midwest Commerce Banking Co. v. Elkhart City Centre*, 4 F.3d 521, 524 (7th Cir. 1993), the state in which the injury occurs is the state in which the tort occurs, and someone who commits a tort in Indiana should, one might suppose, be amenable to suit there. This conclusion is supported by the Supreme Court's decision in *Calder v. Jones*, 465 U.S. 783 (1984), holding that the state in which the victim of the defendant's defamation lived had jurisdiction over the victim's defamation suit.

34 F.3d at 411-12. But as helpful as this passage is for plaintiff Nerds/Indiana, the next sentence backed away from its broad implications: "We need not rest on so austere a conception of the basis of personal jurisdiction." *Id.* at 412. The court noted that the new team planned to broadcast games in Indiana. Because so many Indianapolis Colts fans lived in Indiana, "the largest concentration of consumers likely to be confused by broadcasts implying some affiliation between the

Indianapolis Colts and the Baltimore team is in Indiana." *Id.* The broadcasts could be seen as an attempt to target fans of the Indianapolis Colts in Indiana and therefore to cause harm in Indiana. This narrower basis for the ruling in *Indianapolis Colts* would not extend to support jurisdiction over defendants in this case. Accordingly, the court finds on reconsideration that the Seventh Circuit has not yet taken the effects test as far as it would need to reach to authorize jurisdiction over defendants in Indiana in this case.

*The Website as Basis for Jurisdiction*

This leaves the question whether the website itself provides a basis for jurisdiction over defendants in Indiana. Courts have developed a framework for evaluating whether a particular website serves as the necessary minimum contact to support jurisdiction where the website is viewed. The system boils down to defining websites as passive, active, or hybrid. Passive sites allow for no jurisdiction. Active sites allow for jurisdiction. Hybrid sites are dealt with on a case-by-case basis. See *Jennings v. AC Hydraulic A/S,* 383 F.3d 546, 550 (7th Cir. 2004) (passive site does not support jurisdiction where it is viewed); *Litmer v. PDQUSA,* 326 F. Supp. 2d 952, 956-57 (N.D. Ind. 2004) (reviewing cases for all three types of sites); *Zippo Mfg. Co. v. Zippo Dot Com, Inc.*, 952 F. Supp 1119, 1123-24 (W.D. Pa. 1997) (describing three types of sites for purposes of personal jurisdiction).

Nerds/California's site is a hybrid. A user can submit information to Nerds/California, so the site is not merely a passive one-way conduit for information from the seller, but a user cannot pay for services or directly contract business through the site. The critical point is that a visitor to the site can submit only identification information to schedule a future visit or service. The "Request Service" page limits allowable area codes to those in the California region served by Nerds/California. The "Contact Us" page lists Nerds/California's locations, all of which are in northern California. In theory someone could still call Nerds/California from Indiana or lie about a contact telephone number, but every indication on the site is that the services provided for a fee are limited to California. Even if someone did call, she would not be able to get service in Indiana. Both sides acknowledge that Nerds/California does not provide service outside of California. Nerds/California attests, and Nerds/Indiana does not deny, that no customer from Indiana has ever conducted business with Nerds/California through the website. Eldridge Dec. ¶¶10-13.

Nerds/Indiana also points to the information in the "Online Support" section, but that information, while potentially helpful to a user, is entirely passive. Nerds/Indiana could argue that the passive information under the contested trademark creates confusion in Indiana. The free advice is not coming form Nerds/Indiana and could conceivably have a negative (or positive) impact on plaintiff's reputation where it conducts business. But courts have consistently held that passive websites do not support jurisdiction. Given the nationwide

access that someone would have to a website, this decision is understandable and appropriate:

> With the omnipresence of the Internet today, it is unusual to find a company that does not maintain at least a passive website. Premising personal jurisdiction on the maintenance of a website, without requiring some level of "interactivity" between the defendant and consumers in the forum state, would create almost universal personal jurisdiction because of the virtually unlimited accessibility of websites across the country.

*Jennings*, 383 F.3d at 550. Nerds/California's website is not entirely passive, but those parts that are interactive seek and serve only California residents. The site does not support specific jurisdiction in Indiana in this case.

*The Trademark Application*

Nerds/Indiana's final argument for jurisdiction is that Nerds/California "entered" Indiana by filing a trademark petition claiming exclusive rights to the NERDS ON CALL mark everywhere in Indiana except for a 50-mile radius around Indianapolis. In the May 27th entry, this court used that assertion to justify the second prong of the jurisdictional analysis, that it would not be contrary to principles of fair play and substantial justice to exercise jurisdiction over defendants. The court does not retreat from that holding.

By itself, however, the trademark registration application does not satisfy minimum contacts for purposes of specific jurisdiction over the claims plaintiff has actually pled. In the application, Nerds/California claims the exclusive right to use

the NERDS ON CALL mark in the majority of the Southern District of Indiana. It would not be unfair to require Nerds/California to answer a lawsuit here concerning that claim. But the underlying claims Nerds/Indiana has actually pled are based not on the application but on Nerds/California's use of the mark in California. Nerds/Indiana dealt with the application in the appropriate venue when it successfully objected to Nerds/California's initial attempts for nationwide registration of the mark, including Indianapolis. The application for trademark registration would likely give this court jurisdiction over Nerds/California for claims directly related to the application. For instance, if Nerds/Indiana wanted to contest the issue of which company is the senior user of the NERDS ON CALL mark in Indiana, this court would likely exercise jurisdiction over Nerds/California despite its lack of other connections to this state. But no such claims are currently before the court.

*Conclusion*

For these reasons, defendants' motion for reconsideration (Docket No. 52) is granted. Rather than dismiss the entire suit, only the complaint is dismissed without prejudice. Nerds/Indiana may file an amended complaint no later than January 22, 2009, if it believes it can plead a claim that would allow the court to exercise jurisdiction over defendants. If no amended complaint is filed, the court will enter a judgment dismissing the action without prejudice.

So ordered.

Date: December 22, 2008

_David F Hamilton_
_____
DAVID F. HAMILTON, CHIEF JUDGE
United States District Court
Southern District of Indiana

Copies to:

Theodore John Minch
SOVICH MINCH LLP
tjminch@sovichminch.com

Jonathan G. Polak
TAFT STETTINIUS & HOLLISTER LLP
jpolak@taftlaw.com

Trent J. Sandifur
TAFT STETTINIUS & HOLLISTER LLP
tsandifur@taftlaw.com

Daniel N. Ballard
Sequoia Counsel PC
dballard@sequoiacounsel.com